21 CV 6737 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAILA BEACH,

                                                    Plaintiff,

                        -against-

 THE CITY OF NEW YORK, ET AL.,

                                                    Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR JUDGMENT ON
THE PLEADINGS PURSUANT TO RULE 12(B)(6),
FED. R. CIV. P.**

*HON. SYLVIA HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Nadine Ibrahim*
*Tel:  (212) 356-5037*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................... iii

LEGAL STANDARD ............................................................................................... 4

ARGUMENT

      POINT I

           PLAINTIFF'S FALSE ARREST AND FIRST
           AMENDMENT RETALIATION CLAIMS FAIL
           AS A MATTER OF LAW ........................................................................ 7

      POINT II

           PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE
           FAIL ....................................................................................................... 10

           A.  Officers did not use excessive force during
               plaintiff's arrest .......................................................................... 10

           B.  Plaintiff cannot establish a claim for excessive
               force based on tight cuffing ......................................................... 12

      POINT III

           THE OFFICERS ARE ENTITLED TO
           QUALIFIED IMMUNITY ..................................................................... 13

           A.  The individual officers are entitled to qualified
               immunity on Plaintiff's false arrest and First
               Amendment retaliation claims. ................................................... 14

           B.  The individual officers are entitled to qualified
               immunity on Plaintiff's excessive force claims ................................. 15

      POINT IV

           PLAINTIFF'S FAILURE TO INTERVENE
           CLAIM FAILS ....................................................................................... 16

**Page**

POINT V

      PLAINTIFF'S MONELL CLAIM ALSO FAILS AS
      A MATTER OF LAW ............................................................ 16

      A.  Plaintiff's complaint fails to establish any
          municipal policy or practice was casually
          connected to her alleged injury............................... 18

      B.  Plaintiff failed to plausibly plead a claim against
          the City stemming from the NYPD's failure to
          train. ..................................................................... 20

POINT VI

      PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL
      AS A MATTER OF LAW ...................................................... 22

      A.  Plaintiff's claims must be dismissed because
          plaintiff failed to comply with N.Y. Gen. Mun.
          Law § 50-i. ........................................................... 22

      B.  Allowing Plaintiff to amend her pleading to
          comply with N.Y. Gen. Mun. Law § 50-i would
          be futile as her remaining state law claims still
          fail as a matter of law.......................................... 23

          (a)  Plaintiff's claims for assault and battery
               fail as a matter of law ................................. 23

          (b)  Plaintiff's claims for intentional and
               negligent infliction of emotional distress
               fail as a matter of law ................................. 23

          (c)  Plaintiff's claim for common law
               negligence fails as a matter of law ........................... 25

CONCLUSION................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Pages**

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004)...............................................................................................21

An v. City of New York,
    2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1, 2017)......................................................18

Aquino v. City of New York,
    16 Civ. 1577 (GHW),
    2017 U.S. Dist. LEXIS 10436 (S.D.N.Y. Jan. 25, 2017).......................................................16

Ashcroft v. Iqbal,
    556 U.S. 662 (2008).........................................................................................................4, 5

Bancroft v. City of Mount Vernon,
    672 F. Supp. 2d 391 (S.D.N.Y. 2009)..............................................................................13

Banushi v. City of New York,
    09 Civ. 2937 (KAM),
    2010 U.S. Dist. LEXIS 109903 (E.D.N.Y. Oct. 15, 2010) (KAM)........................................19

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).............................................................................................................5

Bernard v. United States,
    25 F. 3d 98 (2d Cir. 1994).................................................................................................25

Bovsun v. Sanperi,
    61 N.Y.2d 219 (1984) .......................................................................................................24

Bradley v. City of New York,
    08 Civ. 1106 (NGG),
    2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. June 18, 2009) ....................................................18

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994).................................................................................................13

Broder v. Cablevision Sys. Corp.,
    418 F.3d 187 (2d Cir. 2005)................................................................................................6

Brodeur v. City of New York,
    No. 99 Civ. 661 (WP),
    2002 U.S. Dist. LEXIS 4500 (S.D.N.Y. Mar. 18, 2002) .....................................................18

**Cases**                                                                   **Pages**

Busch v. City of New York,
    No. 00 CV 5211 (SJ),
    2003 U.S. Dist. LEXIS 27571 (E.D.N.Y Sep 30, 2003),
    citing Dineen v. Stramka, 228 F.Supp. 2d 447, 454 (S.D.N.Y. 1993)....................................25

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002)...............................................................................6

Chanko v. Am. Broad. Cos.,
    27 N.Y.3d 46 (N.Y. 2016) ...............................................................................24

City of Canton v. Harris,
    489 U.S. 378 (1989)..................................................................................17, 21

Connick v. Thompson,
    563 U.S. 51 (2011)........................................................................................20

Cuevas v. City of New York,
    07 Civ. 4169 (LAP),
    2009 U.S. Dist. LEXIS 114984 (S.D.N.Y. Dec. 7, 2009) ......................................19

Cugini v. City of N.Y.,
    941 F.3d 604 (2d Cir. 2019)..............................................................................12

DeLuca v. Access IT Group, Inc.,
    695 F. Supp.2d 54 (S.D.N.Y. 2010).....................................................................6

Devito v. Barrant,
    No. 03-CV-1927 (DLI) (RLM),
    2005 U.S. Dist. LEXIS 22444 (E.D.N.Y. Aug. 23, 2005)................................. 23-24

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)...............................................................................6

Dixon v. City of New York,
    2017 U.S. Dist. LEXIS 119042 (S.D.N.Y. July 27, 2017)
    (analyzing and applying Judge Schofield's decision in
    Delorbe-Bell v City of New York,
    No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363,
    2016 WL 1451581 (S.D.N.Y. Apr. 12, 2016)) ......................................................21

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)................................................................................18

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)...............................................................................14

**Cases**                                                                                                    **Pages**

Esmont v. City of New York,
    371 F. Supp. 2d 202 (E.D.N.Y. 2005) .................................................................12

Fabrikant v. French,
    691 F.3d 193 (2d Cir. 2012).................................................................................8

Farmer v. Cty. of Westchester,
    18 Civ. 2691 (NSR),
    2021 U.S. Dist. LEXIS 175597 (S.D.N.Y. Sep. 15, 2021)...................................18

Feinberg v. City of New York,
    No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098,
    2004 WL 1824373 (S.D.N.Y. Aug. 13, 2004).......................................................16

Foy v. City of New York,
    No. 03 Civ. 7318, 2004 U.S. Dist. LEXIS 18274,
    2004 WL 2033074 (S.D.N.Y. Sep. 10, 2004)......................................................16

Franks v. City of New York,
    13 Civ. 5264 (KAM),
    2017 U.S. Dist. LEXIS 49532 (E.D.N.Y. Mar. 31, 2017).....................................18

Galgano v. Cty. of Putnam,
    No. 16-CV-3572 (KMK),
    2020 U.S. Dist. LEXIS 116682 (S.D.N.Y. July 2, 2020) ....................................18

Ganek v. Leibowitz,
    874 F.3d 73 (2d Cir. 2017)..................................................................................15

Girden v. Sandals Int'l,
    262 F.3d 195 (2d Cir. 2001)................................................................................23

Graham v. City of New York,
    928 F. Supp. 2d 610 (E.D.N.Y. 2013) .................................................................13

Graham v. Connor,
    490 U.S. 386 (1989)............................................................................................10

Hansel v. Sheridan,
    991 F. Supp. 69 (N.D.N.Y. 1998)........................................................................23

Harris v. City of Newburgh,
    No. 16-CV-2731 (KMK),
    2017 U.S. Dist. LEXIS 159561 (S.D.N.Y. Sep. 27, 2017)............................... 20-21

**<u>Cases</u>**                                                                                    **<u>Pages</u>**

<u>Hirsch v. Complex Media, Inc.</u>,
   18 Civ. 5488 (CM),
   2018 U.S. Dist. LEXIS 209701 (S.D.N.Y. Dec. 10, 2018) ......................................................6

<u>Hope v. Pelzer</u>,
   536 U.S. 730 (2002).........................................................................................................13

<u>Horvath v. Daniel</u>,
   423 F. Supp.2d 421 (S.D.N.Y. 2006)................................................................................22

<u>Hunter v. Bryant</u>,
   502 U.S. 224 (1991).........................................................................................................14

<u>Hygh v. Jacobs</u>,
   961 F.2d 359 (2d Cir. 1992)..............................................................................................8

<u>Illinois v. Gates</u>,
   462 U.S. 213 (1983)...........................................................................................................8

<u>Iqbal v. Hasty</u>,
   490 F.3d 143 (2d Cir. 2007)..............................................................................................5

<u>Jaegly v. Couch</u>,
   439 F.3d 149 (2d Cir. 2006)..............................................................................................8

<u>Johnson v. Glick</u>,
   481 F.2d 1028 (2d Cir. 1973)..........................................................................................10

<u>Johnson v. Jamaica Hosp.</u>,
   62 N.Y.2d 523 (1984) .....................................................................................................25

<u>Johnston v. Port Auth. of N.Y. & N.J.</u>,
   No. 09-CV-4432 (JG) (CLP),
   2011 U.S. Dist. LEXIS 82815 (E.D.N.Y. July 28, 2011) ......................................................23

<u>Kennedy v. McKesson Co.</u>,
   58 N.Y.2d 500 (1983) .....................................................................................................25

<u>Kisela v. Hughes</u>,
   138 S. Ct. 1148 (2018).....................................................................................................15

<u>Lauer v. City of N.Y.</u>,
   240 A.D.2d 543, 659 N.Y.S.2d 57 (2nd Dep't 1997)...............................................................24

**Cases**                                                                              **Pages**

Leibovitz v. City of New York,
    15 Civ. 1722 (KAM),
    2015 U.S. Dist. LEXIS 84995 (E.D.N.Y. June 30, 2015) ......................................................19

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)...............................................................................................15

Liberian Cmty. Ass'n of Conn. v. Lamont,
    970 F.3d 174 (2d Cir. 2020)...........................................................................................14

Lynch ex rel Lynch v. City of Mount Vernon,
    567 F Supp 2d 459 [SD NY 2008].......................................................................................12

Malley v. Briggs,
    475 U.S. 335 (1986).........................................................................................................14

McLeod v. Llano,
    17 Civ. 6062 (ARR),
    2019 U.S. Dist. LEXIS 39925 (E.D.N.Y. Mar. 12, 2019) ....................................................19

Mercado v. City of New York,
    08 CV 2855 (HP),
    2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) ....................................................17

Mesa v. City of New York,
    2013 U.S. Dist. LEXIS 1097(S.D.N.Y. Jan. 3, 2013)...........................................................25

Michigan v. DeFillippo,
    443 U.S. 31 (1979)..............................................................................................................8

Miloslavsky v. AES Eng'g Soc'y, Inc.,
    808 F. Supp. 351 (S.D.N.Y. 1992),
    aff'd, 993 F.2d 1534 (2d Cir. 1993)......................................................................................8

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)..............................................................................16, 17, 18, 19, 22

Moore v. City of N.Y.,
    219 F. Supp. 2d 335 (E.D.N.Y. 2002) ...........................................................................23, 24

Morgan v. County of Nassau,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) ...................................................................................25

Mullenix v. Luna,
    136 S. Ct. 305 (2015)..........................................................................................................14

**Cases**                                                                                          **Pages**

Nieves v. Bartlett,
    139 S. Ct. 1715 (2019).................................................................................8

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005)........................................................................10

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)....................................................................................17

Parisi v. Suffolk County,
    No. 04 Civ. 2187 (ENV) (ETB),
    2009 U.S. Dist. LEXIS 112388 (E.D.N.Y. Nov. 20, 2009)......................14

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) (plurality opinion) ...................................................17

Pierson v. Ray,
    386 U.S. 547 (1967)......................................................................................8

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011) (collecting cases)...........................18

Plumhoff v. Rickard,
    134 S. Ct. 2012 (2014)................................................................................14

Provost v. City of Newburgh,
    262 F.3d 146 (2d Cir. 2001)........................................................................16

Rattner v. Planning Comm'n of Vill. of Pleasantville,
    156 A.D.2d 521, 548 N.Y.S.2d 943 [**6] (2d Dep't 1989)......................22

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997)..........................................................................8

Rivera v. City of N.Y.,
    392 F.Supp.2d 644 (S.D.N.Y. 2005)...........................................................24

Romano v. Howarth,
    998 F.2d 101 (2d Cir. 1993)........................................................................10

Rowell v. City of N.Y.,
    16 Civ. 6598 (AJN),
    2018 U.S. Dist. LEXIS 168203 (S.D.N.Y. Sept. 28, 2018)......................19

**Cases**                                                                               **Pages**

Sands v. City of New York,
No. 04 CV 5275 (BMC),
2006 U.S. Dist. LEXIS 72111 (E.D.N.Y. Oct. 3, 2006) ...........................................9

Saucier v. Katz,
533 U.S. 194 (2001) ...........................................16

Schy v. Vermont,
2 F. App'x 101 (2d Cir. 2001) ...........................................13

Segal v. City of New York,
459 F.3d 207 (2d Cir. 2006) ...........................................17

Singer v. Fulton County Sheriff,
63 F.3d 110 (2d Cir. 1995) ...........................................7, 8

Smart v. City of New York,
No. 08 Civ. 2203 (HB),
2009 U.S. Dist. LEXIS 30241 (S.D.N.Y. Apr. 1, 2009) ...........................................9

Swinton v. City of New York,
08 Civ. 3278 (RJD)(RML),
2011 U.S. Dist. LEXIS 32384 (E.D.N.Y. Mar. 28, 2011) ...........................................19

Sylvester v. City of New York,
889 N.Y.S.2d 508, 2009 N.Y. Misc. LEXIS 1474
(Sup. Ct. N.Y. County 2009) ...........................................23

Towner v. Town of Cohocton,
19 CV 6638, 2021 U.S. Dist. LEXIS 93520 (W.D.N.Y. May 17, 2021) ...........................................7

U.S. v. Scopo,
19 F.3d 777 (2d Cir. 1994) ...........................................9

Usavage v. Port Auth. of New York & New Jersey,
932 F Supp 2d 575 [SD NY 2013] ...........................................12

Vippolis v. Vill. of Haverstraw,
768 F.2d 40 (2d Cir. 1985) ...........................................17

Weyant v. Okst,
101 F.3d 845 (2d Cir. 1996) ...........................................8

White v. Pauly,
137 S. Ct. 548 (2017) ...........................................15

**Cases**                                                                                                    **Pages**

Wilson v. City of New York,
    No. 06 Civ. 0229 (ARR)(VVP),
    2010 U.S. Dist. LEXIS 92871 (E.D.N.Y. Sept. 3, 2010).......................................................16

## Statutes

34 R.C.N.Y. §4-07(i) ......................................................................................................9

34 R.C.N.Y. §4-12(o) .....................................................................................................9

42 U.S.C. § 1983 ...............................................................................................7, 16, 17

Fed. R. Civ. P. 8(a)(2) ....................................................................................................6

Fed. R. Civ. P. 12(b)(6).................................................................................................1

N.Y. Gen. Mun. Law § 50-i .................................................................................22, 23

N.Y. Gen. Mun. Law § 50-e .......................................................................................22

## Other Authorities

New York City Charter Title 34, Chapter 4-12 (o)....................................................20

U.S. Const. Art. III, Section 2......................................................................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MAILA BEACH,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR JUDGMENT ON THE
PLEADINGS**

21 CV 6737 (ALC)

## PRELIMINARY STATEMENT

Plaintiff's complaint alleges several causes of action that are not properly pled, that are not legally cognizable, or otherwise cannot survive the instant motion to dismiss. As a result, Defendants hereby respectfully submit their Memorandum of Law in Support of their motion for judgment on the pleadings and the dismissal with prejudice of plaintiff's complaint, and for such further relief as the Court deems just and proper, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

On April 24, 2021, at approximately 7:00 pm plaintiff was protesting on the Brooklyn Bridge. (Complaint, ¶ 11). Plaintiff alleges that "Defendant officers threw plaintiff to the ground and attacked plaintiff with their arms, hands and batons and beat plaintiff about her head and body". (Complaint at ¶ 13). Prior to officers "lunging and attacking plaintiff, she advised them that she is epileptic and prone to seizures" and that she takes medication for her condition. (Complaint

---

[1] All of the facts set forth herein are drawn from the Complaint, and are adopted only for the purposes of this motion to dismiss.

at ¶ 12). Immediately after beating plaintiff, they restrained her using excessively tightened zip ties and refused to loosen them when asked. (Complaint at ¶ 14). Plaintiff further alleges that during her arrest, officers "pulled plaintiff's shirt over her head exposing her stomach and bra" and that officers refused to pull her shirt back down while laughing and harassing her. (Complaint at ¶ 15). Defendant Officers then lifted plaintiff off of the ground and pushed plaintiff across the Brooklyn Bridge with her shirt pulled behind her neck, again refusing to pull he shirt down and continuing to mock her. (Complaint at ¶ 16). "As plaintiff was walking across the bridge with her shirt lifted over her head, Defendant Officers then pulled her pants down to her ankles exposing plaintiff's buttocks and genitals." (Complaint at ¶ 17). "Plaintiff again pleaded with the Defendant Officers to pull her pants back up and they refused while continuing to mock and humiliate her". (Complaint at ¶ 18). "While standing nearly naked in public amongst several officers, Defendant officers demanded and forced plaintiff to walk from the middle of the Brooklyn Bridge to its end". (Complaint at ¶ 19). Defendant Officers forced plaintiff to stand nearly naked for approximately fifteen minutes before they pulled her shirt down and pants up. (Complaint at ¶ 21). Defendant Officers haphazardly clothed plaintiff before putting her in the transport van, and despite plaintiff advising Defendant Officers that her pants were falling down again because they did not actually pull them up completely, they refused to help her or find a female police officer to help. (Complaint at ¶ 21). Upon arriving at the 79th precinct for processing and exiting the transport van, plaintiff's pants fell to her ankles. Defendant Officers continued to ridicule plaintiff as they forced her to stand with her buttocks and genitals exposed, before finally finding a female police officer to assist her. (Complaint at ¶ 22).

The videos from the officers' body-worn cameras, produced to plaintiff pursuant to this Court's Order on January 25, 202, very clearly contradict plaintiff's version of events. The videos

demonstrate that plaintiff was walking in the middle of the Manhattan bound roadway of the Brooklyn bridge at the time of her arrest. (Declaration of Nadine Ibrahim dated July 1, 2022(hereinafter "Ibrahim Decl."), Body worn camera footage AXON Body 2 Video 2021-04-24 2231 depicting plaintiff's arrest annexed hereto as Exhibit A (hereinafter "Exhibit A")). Plaintiff is seen on the ground being held down with minimal force as officers try to cuff her; no officer is seen hitting or kicking her. (Exhibit A at 15:26). Plaintiff can be seen moving her body and arms around as an officer tells her "stop resisting." (Exhibit A at 15:28). Plaintiff is heard mentioning something about her shirt, but is not heard mentioning anything about epilepsy while on the ground. (Exhibit A at 15:48). The video clearly shows that officers promptly pulled down plaintiff's shirt as she stood up. (Exhibit A at 16:13). As two officers help plaintiff up to her feet and begin to walk her to the police van, she is seen with her shirt pulled down to cover her and her pants completely on. (Exhibit A at 16:29). As the officers are escorting plaintiff to the van, her pants begin to slowly ride down as she yells "my pants are falling down." ( See Ibrahim Decl., Body worn camera footage AXON Body 2 Video 2021-04-24 2246 depicting plaintiff's walk to the transport van and annexed here to as Exhibit B (hereinafter "Exhibit B")). Officers continue the very brief walk to the police van, and pull up plaintiff's pants for her after donning gloves within 79 seconds of plaintiff's first complaint. (Exhibit B at 1:33).  As plaintiff climbs into the police van, her loose fitting pants start to ride down once again and an officer immediately pulls them up for her. (Exhibit B at 4:49). Plaintiff then is then for the very first time heard saying "be careful with my head I have fucking epilepsy you fucking bitches."(Exhibit B at 4:46). The body worn camera recording is continuous from the time that the officers picked her up off the ground to the time the officers placed her in the transport van. (Exhibit B).

The officer in the transport van with plaintiff had his BWC activated and recording continuously for the all of plaintiff's ride in the van until she is given a c-summons. (See Ibrahim Decl., Body worn camera footage AXON Body 2 Video 2021-04-24 2246 depicting plaintiff's walk to the transport van and annexed here to as Exhibit C (hereinafter "Exhibit C")). Plaintiff is heard complaining about her handcuffs approximately 30 minutes after her arrest. (Exhibit C at 37:10). The officer responds "as soon as we get off the bridge, we'll be able to do it, I'm sorry." (Exhibit C at 37:18). Officers proceed to explain to plaintiff that because she was cuffed with the flex cuffs so they need to wait until they get a chance to pull over as they cannot just adjust them, they need to cut them off and re-cuff her. (Exhibit C at 40:10). Approximately 24 minutes after plaintiff complained about her cuffs, officers pulled the van over to change plaintiff's cuffs (Exhibit C at 1:01:00). Plaintiff was brought out of the van and plaintiff's pants are clearly on in the video as she steps out of the van. After plaintiff's cuffs are changed, officers helped her get back into the transport van and asked if her cuffs were more comfortable.(Exhibit C at 1:1:00). Plaintiff is not heard complain about anything for the remainder of the ride, instead she can be heard laughing and joking with the other arrestees. (Exhibit C). Plaintiff can be seen getting out of the transport van fully clothed and an officer can be seen adjusting her cuffs and asking her if she is good. (Exhibit C at 1:24:30). Plaintiff can then be seen walking into the precinct, again fully clothed. (Exhibit C at 1:25:23). An officer is then seen standing in a line with plaintiff, who is fully clothed. (Exhibit C at 1:26:49). A couple minutes later, a female officer approaches plaintiff and adjusts her pants for her (Exhibit C at 1:28:30). The female officer can be seen standing with plaintiff for the remainder of the video. (Exhibit C).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2008) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Id</u>. (quoting <u>Twombly</u>, 550 U.S. at 557).

 Two working principles determine whether a complaint may survive a motion to dismiss. <u>Ashcroft</u>, 556 U.S. at 678-679.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  <u>Id</u>.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  <u>Id</u>. (quoting <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'" Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'"). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint." Chambers, 282 F.3d at 152-53. "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents…[and] [t]o be integral to a complaint, the plaintiff must have 1) actual notice of the extraneous information and 2) relied upon the documents in framing the complaint." DeLuca v. Access IT Group, Inc., 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers at 153). "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself. See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005). Where a video is incorporated by reference or integral to the complaint, it may be considered upon a motion to dismiss, and the "[c]ourt need not accept the party's characterizations" of it. See Hirsch v. Complex Media, Inc., 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at *6-7 (S.D.N.Y. Dec. 10, 2018).

Here, there are three videos, Exhibits A, B, and C to the Ibrahim Decl., which are integral to plaintiff's complaint as they undeniably and accurately depict the very events described in

plaintiff's complaint and are continuous from the moment of plaintiff's arrest until plaintiff is inside the precinct waiting in line to be processed. See Towner v. Town of Cohocton, 19 CV 6638 (CJS), 2021 U.S. Dist. LEXIS 93520, at *5 (W.D.N.Y. May 17, 2021) ("the video is integral to the Amended Complaint, since it captures the very event for which plaintiff was arrested and prosecuted). One body worn camera videos undeniably demonstrates that plaintiff was arrested while unlawfully in the Manhattan bound roadway of the Brooklyn Bridge and was not kicked, punched or hit with batons during her arrest. See Exhibit A. Another video undeniably shows that plaintiff's pants inadvertently started to fall down as officers walked her to the transport van and officers promptly adjusted her pants after donning gloves. See Exhibit B. Further, the last video undeniably shows that officers never ignored plaintiff's complaints of tight cuffs, changed plaintiff's cuffs as soon as reasonably practical, and plaintiff was fully clothed every time she got on and off the transport van. See Exhibit C. Additionally, plaintiff had actual notice of the existence of these body-worn camera videos as the officers that approached her had visible body worn camera devices. Under these circumstances, defendants submit that these videos should be considered in deciding the deendants' motion to dismiss.

## ARGUMENT

### POINT I

### PLAINTIFF'S FALSE ARREST AND FIRST AMENDMENT RETALIATION CLAIMS FAIL AS A MATTER OF LAW

The elements of a false arrest claim under Section 1983 "are substantially the same as the elements of a false arrest claim under New York law." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise

privileged. *Id.* (internal quotations and citations omitted). However, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted). Further, probable cause is also a defense to a claim of First Amendment retaliation. Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."); Fabrikant v. French, 691 F.3d 193, 215 (2d Cir. 2012) (The existence of probable cause "will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her.").

Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)). Probable cause requires only a probability, not an actual showing, of criminal activity. Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 354 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Moreover, the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. Pierson v. Ray, 386 U.S. 547, 555 (1967). Thus, whether the suspect was later acquitted of the charges for which he was arrested is irrelevant to a determination of probable cause at the time of arrest. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). Additionally, if there is probable cause to arrest, the arrest is not unlawful by virtue of the fact that the arresting officer did not identify a particular charge supported by said probable cause at the time of the arrest. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

Plaintiff's presence on the roadway of the Brooklyn Bridge is prohibited under New York Law, therefore, there was probable cause for plaintiff's arrest. See, e.g., Smart v. City of New York, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13-15 (S.D.N.Y. Apr. 1, 2009) (holding an arrest lawful because officer observed plaintiff sitting in double-parked car and "it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator.") (citing U.S. v. Scopo, 19 F.3d 777, 781-782 (2d Cir. 1994)) (other citations omitted); Sands v. City of New York, No. 04 CV 5275 (BMC), 2006 U.S. Dist. LEXIS 72111, at *10-*15 (E.D.N.Y. Oct. 3, 2006) (dismissing plaintiff's false arrest claim because there was probable cause to arrest plaintiff for littering, despite fact that littering is only punishable by a fine).

34 R.C.N.Y. §4-12(o) Use of roadways, in pertinent part, states as follows: "(1) Pedestrians, horses, bicycles and limited use vehicles prohibited.  In order to provide for the maximum safe use of the expressways, drives, highways, interstate routes, bridges and thruways set forth in §4-07 subdivision (i) of these rules and to preserve life and limb thereon, the use of such highways by pedestrians, riders of horses and operators of limited use vehicles and bicycles is prohibited, unless signs permit such use." Plaintiff's own complaint admits that she was protesting on the Brooklyn Bridge. (Complaint, ¶¶ 1, 11). As such, there can be no argument that probable cause was lacking and plaintiff's claims for false arrest and first amendment retaliation should be dismissed with prejudice.

## POINT II

## PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE FAIL

**A.    Officers did not use excessive force during plaintiff's arrest**

To establish that an officer used excessive force, a plaintiff must "show that [the officer's] actions were objectively unreasonable in light of the facts and circumstances confronting him." Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005) (internal quotation marks and alteration omitted).  More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (citations and internal quotations omitted).  It is clear that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The Second Circuit has held that "a de minimis use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  Thus, a plaintiff must demonstrate that the amount of force used was more than de minimis. See Romano, 998 F.2d at 105.

Here, plaintiff's arrest was supported by probable cause as previously discussed *supra,* therefore, officers were entitled to use reasonable force to take plaintiff into custody. As evidenced by the body-worn camera videos, any force used by the officers is de minimis at best. The videos show that officers brought plaintiff to the ground in order to handcuff her. One officer is seen holding plaintiff down with minimal force as he waits for another officer to give him the cuffs. As soon as plaintiff is cuffed, officers can be seen helping her to her feet immediately. Contrary to

plaintiff's complaint, no officer is seen kicking or punching plaintiff. Plaintiff's claims that officers punched plaintiff several times and beat her as she screamed at them that she suffered from seizures is blatantly false. Additionally, no officer is even seen with a baton drawn, let alone hitting plaintiff with it. Therefore, plaintiff cannot establish that the minimal force used to arrest her was objectively unreasonable.

To the extent plaintiff's claim for excessive force is based on her frivolous claims of sexual assault, the body-worn camera videos very clearly and directly contradict any claims of any officer intentionally removing any of plaintiff's clothing, mocking plaintiff, or forcing plaintiff to stand in the nude for any extended period of time. To the contrary, the officers were extremely courteous to plaintiff during their interactions with her. Exhibit A shows that plaintiff's shirt rode up in the course of her resisting arrest and officers pulled it down for her to cover her bra as soon as plaintiff stood up. Exhibits A also definitively shows that no officer intentionally pulled down plaintiff's pants in the course of her arrest as her pants were on when she stood up. Then, as officers were walking plaintiff to the transport van, her pants began falling down inadvertently and she alerted officers to that fact. Plaintiff can even be heard saying "my pants are falling down," several times. Officers continued to walk her to the transport van for an additional 79 seconds, before donning gloves and pulling up plaintiff's pants. The officer's body-worn camera was continuously recording from the time the officers helped plaintiff up until the time she was put into the van, therefore, it is clear from the videos that no officer intentionally unclothed plaintiff and that her loose fitting pants fell down inadvertently. Further, as plaintiff was getting into the transport van, her loose fitting pants began to fall down again, and an officer immediately pulled them up again before she got onto the van.

**B.    Plaintiff cannot establish a claim for excessive force based on tight cuffing**

Further, to establish a claim for unreasonable handcuffing, a Court must find: that "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists." Cugini v. City of N.Y., 941 F.3d 604, 612-13 (2d Cir. 2019)(quoting Esmont v. City of New York, 371 F. Supp. 2d 202 (E.D.N.Y. 2005)). "There is consensus among courts in the [Second] [C]ircuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort" (Lynch ex rel Lynch v. City of Mount Vernon, 567 F Supp 2d 459, 468 [SD NY 2008]). Those injuries most common in handcuffing cases which satisfy the "injury" requirement are "scarring and nerve damage" (Usavage v. Port Auth. of New York & New Jersey, 932 F Supp 2d 575, 592 [SD NY 2013]).

Here, plaintiff's claims under a theory of unreasonable handcuffing fail for several reasons. First, it is clear from the BWC videos that the officers did not ignore her pleas. She first began complaining about her cuffs being too tight around 37 minutes after she was placed into the police van on the way to the precinct. Once she asked officers to loosen her cuffs, an officer repeatedly apologized to her and told her they would replace her cuffs once it was safe to stop, after they got off the bridge. During that time, she continually berated officers, called them names, and threatened to "sue the fuck out of them." (Exhibit C). An officer again repeatedly apologized and explained that they needed to "get away from the craziness" and that they'd replace her cuffs once they got off the Brooklyn Bridge. Id. Once they got off the bridge, and officers deemed it safe to stop, they immediately pulled the police van over and replaced her cuffs as promised. The officers removed her cuffs, allowed her to stretch her hands for a few moments, then placed new cuffs on her and even asked her if these cuffs were good to ensure she is not in pain. Under case law of this

circuit, plaintiff cannot establish an excessive force claim relating to being allegedly painfully cuffed for 24 minutes after she informed officers her cuffs were too tight. See Schy v. Vermont, 2 F. App'x 101, 101-02 (2d Cir. 2001) (holding that painful handcuffing for two-hour period does not violate the Constitution). Additionally, plaintiff's complaint does not allege any serious or permanent injuries stemming from tight cuffing, other than temporary bruising and soreness. Therefore, the facts as claimed by plaintiff fail to rise to the level required to sustain a claim for excessive force based on tight cuffing.

## POINT III

### THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known… or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citations and internal quotation marks omitted).

"The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law." Graham v. City of New York, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013); see also, Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("as is true of federal law, an officer's entitlement to qualified immunity under New York law depends on the reasonableness of his

13

actions. The only difference between the federal and state doctrines is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution.")

"Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 186 (2d Cir. 2020) (quotations omitted). Plaintiffs must show with a high degree of specificity that the rule they seek to apply prohibited the official's conduct. *Id.* at \*186-7 (quoting Mullenix v. Luna, 136 S. Ct. 305, 309 (2015)). The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curium) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Similarly, the Supreme Court has "repeatedly told courts... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014) (omission in original) (citation and internal quotation marks omitted)

A. **The individual officers are entitled to qualified immunity on Plaintiff's false arrest and First Amendment retaliation claims.**

In the context of a false arrest claim, an officer making an arrest without probable cause is nonetheless entitled to qualified immunity if he can establish that there was "arguable probable cause" for the arrest, defined by the Second Circuit as "[existing] 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004); Parisi v. Suffolk County, No. 04 Civ. 2187 (ENV) (ETB), 2009 U.S. Dist. LEXIS 112388, \*29-30 (E.D.N.Y. Nov. 20, 2009). "An officer's actions are objectively

unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

Here, there was probable cause for plaintiff's arrest, as discussed *supra*. However, even assuming *arguendo* that probable cause is somehow lacking, the officers are entitled to qualified immunity because they at the very least had arguable probable cause for plaintiff's arrest. It was objectively reasonable for the officers to believe probable cause existed to arrest a pedestrian standing in the middle of an active roadway, the use of which by pedestrians is prohibited by law. Additionally, plaintiff cannot argue that no officer of reasonable competence could have arrested an individual standing in the middle of an active roadway on a very busy bridge and blocking the flow of traffic. As a result, plaintiff's claims for false arrest and First Amendment retaliation must be dismissed because these officers are entitled to qualified immunity.

**B.    The individual officers are entitled to qualified immunity on Plaintiff's excessive force claims**

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)  (internal quotation omitted). The Supreme Court held that for a right to be "clearly established," there must be at least one identified case "where an officer acting under similar circumstances…was held to have violated the Fourth Amendment." Ganek v. Leibowitz, 874 F.3d 73, 81 (2d Cir. 2017) (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017)).

Here, there was no clearly established law that was violated by the officers in effectuating plaintiff's arrest. Further, the complaint does not even specify what the excessive force used even was, outside of very vague allegation that officers used their "arms, hands and batons and beat plaintiff about her head and body," which the videos proved were clearly false as discussed *supra*.

## POINT IV

## PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS

There can be no failure to intervene claim where there was no constitutional violation. Feinberg v. City of New York, No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.") (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)); accord Foy v. City of New York, No. 03 Civ. 7318, 2004 U.S. Dist. LEXIS 18274, 2004 WL 2033074, at *3 (S.D.N.Y. Sep. 10, 2004). As a result, any un-named police officers cannot be liable. See Wilson v. City of New York, No. 06 Civ. 0229 (ARR)(VVP), 2010 U.S. Dist. LEXIS 92871, at *23–25 (E.D.N.Y. Sept. 3, 2010) (Non-arresting officer is not liable for false arrest for failing to intervene when an officer reasonably believes that the plaintiff's rights are not being violated); Provost v. City of Newburgh, 262 F.3d 146, 155–56 (2d Cir. 2001) (Officer is not liable for false arrest and excessive force despite being a few feet from the constitutional violation). Because plaintiff's constitutional rights were not violated, plaintiff's failure to intervene claim must fail.

## POINT V

## PLAINTIFF'S MONELL CLAIM ALSO FAILS AS A MATTER OF LAW

"In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978). In order to hold a municipality liable as a

"person" within the meaning of §1983, a plaintiff must establish that the municipality itself was somehow at fault.  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see  Monell, supra, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact."  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

"The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . .  Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights."  Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted).  "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation."  Mercado v. City of New York, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (quoting Monell, 436 U.S. at 691, 694).

A claim for municipal liability cannot stand where there is no causal connection between the plaintiff's alleged constitutional violation and the alleged unlawful custom. See, e.g., Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to

train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); Galgano v. Cty. of Putnam, No. 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even where a plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not violated as a result of the application of that custom or practice the claim fails. See U.S. Const. Art. III, Section 2; An v. City of New York, 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (standing, including injury in fact, required to bring Monell claim).

**A.    Plaintiff's complaint fails to establish any municipal policy or practice was casually connected to her alleged injury.**

In order to plead a plausible claim for municipal liability for use of a form of excessive force, a plaintiff must "allege that the practice, custom, or usage was so widespread and so persistent that it has the force of law." Farmer v. Cty. of Westchester, 18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597, at *31 (S.D.N.Y. Sep. 15, 2021); see also, Brodeur v. City of New York, No. 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7 (S.D.N.Y. Mar. 18, 2002) (dismissing claim when complaint "flatly assert[ed] a policy but contain[ed] no factual allegations sufficient to establish a municipal policy or custom").

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Bradley v. City of New York, 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9 (E.D.N.Y. June 18, 2009) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)). Courts routinely dismiss boilerplate assertions of municipal liability. Plair v. City of New York, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Moreover, wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. Franks v. City of New York, 13 Civ. 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at *14 (E.D.N.Y. Mar.

31, 2017); <u>Leibovitz v. City of New York</u>, 15 Civ. 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at *12-14 (E.D.N.Y. June 30, 2015); <u>Banushi v. City of New York</u>, 09 Civ. 2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at *35-37 (E.D.N.Y. Oct. 15, 2010) (KAM); <u>Swinton v. City of New York</u>, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory plaintiff's claim that [ADA's] inflate charges); <u>Cuevas v. City of New York,</u> 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in <u>Iqbal</u>").

Here, plaintiff's complaint fails to even identify any unconstitutional specific policy or practice of NYPD, or how such policy casually connected to plaintiff's alleged injuries. Instead, plaintiff only makes a wholly conclusory allegation that the NYPD had a policy "where they encouraged their officers to use excessive force"(Complaint, ¶¶107). Plaintiff also relies on a few research reports in support of such claim, as well as "numerous documented incidents," without properly specifying which ones, or how they are connected to plaintiff's underlying constitutional claim.  (Complaint, ¶¶30-37)  "'Research reports may be used to bolster <u>Monell</u> claims, but only if those reports are sufficiently connected to the specific facts of the case and are of recently recent vintage." <u>McLeod v. Llano</u>, 17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *19 (E.D.N.Y. Mar. 12, 2019) (internal quotations omitted); <u>see also</u> <u>Rowell v. City of N.Y.</u>, 16 Civ. 6598 (AJN), 2018 U.S. Dist. LEXIS 168203, at *20 (S.D.N.Y. Sept. 28, 2018) (dismissing complaint where plaintiff did not sufficiently connect Commission to Combat Corruption reports to his specific allegations).

**B.**     **Plaintiff failed to plausibly plead a claim against the City stemming from the NYPD's failure to train.**

As an initial matter, as set forth above in Section II(A), plaintiff has not shown any nexus between the alleged constitutional violation she suffered and these theories of liability. Plaintiff was unlawfully protesting on the Manhattan bound roadway of the Brooklyn Bridge, in violation of Title 34, Chapter 4-12 (o) of New York City Charter (Complaint, at ¶¶ 11). As a result, plaintiff was unlawfully blocking traffic and was not lawfully entitled to protest on the roadway of the Brooklyn Bridge. Further, plaintiff's complaint is full of wholly boilerplate allegations regarding mass arrests, alleged "kettling" of protesters and training of SRG. (See Complaint ¶ 29-37). However, plaintiff's complaint is devoid of any allegations that she was arrested as part of a mass arrest, devoid of any allegations that she was subjected to 'kettling', and devoid of any allegations that SRG even had any role whatsoever in her arrest. Plaintiff does not even allege that many other, or indeed any other, individuals were arrested with her. As a result, plaintiff's claims for failure to train regarding mass arrests or failure to train SRG are merely boilerplate assertions of municipal liability and therefore fail as a matter of law.

Plaintiff also alleges that the NYPD failed to train on the use of proportional force, without any specificity, in connection with the arrest of protesters. (Complaint, at ¶ 30). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. (internal quotation marks omitted). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (internal quotation marks omitted); Harris v. City of Newburgh, No. 16-

CV-2731 (KMK), 2017 U.S. Dist. LEXIS 159561, at *15 (S.D.N.Y. Sep. 27, 2017) (citing *Connick* for same).

Plaintiff conclusorily alleges that the City of New York has a history of using excessive force against protesters. (Complaint, at ¶¶ 26-28). However, plaintiff does not cite to any specific incidents, let alone adjudications of excessive force; rather, plaintiff seeks to support a failure to train claim as a failure to train on force generally. This is improper. In order to state a failure to train claim against a municipality, a plaintiff ultimately must identify "a **specific** deficiency in the city's training program and establish that that deficiency is '**closely related** to the ultimate injury,' such that it 'actually caused' the constitutional deprivation.'" Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (emphasis added) (quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989)). Plaintiff here does not cite to a specific training deficiency, but alleges, in effect, that the entirety of the NYPD's training on the use of reasonable force is deficient. But see, Dixon v. City of New York, 2017 U.S. Dist. LEXIS 119042, at *34 (S.D.N.Y. July 27, 2017) ("Judge Schofield concluded that the OIG Report undermined — rather than bolstered — plaintiff's failure to train claim, because it 'describes NYPD training courses titled Use of Force and Policing Professionally and notes that the number of hours the NYPD spends on 'use-of-force scenario-based training' is 'roughly on par' with the national average.") (analyzing and applying Judge Schofield's decision in Delorbe-Bell v City of New York, No. 15-CV-2344 (LOS), 2016 U.S. Dist. LEXIS 49363, 2016 WL 1451581, at *3-4 (S.D.N.Y. Apr. 12, 2016)).

As a result, plaintiff's claim for failure to train is based on allegations that have no nexus to her alleged constitutional violations. Further, the one claim that does relate to her own experience and alleged constitutional violation, *i.e.* plaintiff was allegedly subjected to excessive

force, is improperly pled in an overly broad manner without citing to a "specific deficiency" related to use of force. Thus, plaintiff's <u>Monell</u> claims against the City of New York should be dismissed.

**POINT VI**

**PLAINTIFF'S STATE LAW CLAIMS ALSO**
**FAIL AS A MATTER OF LAW**

**A.    Plaintiff's claims must be dismissed because plaintiff failed to comply with N.Y. Gen. Mun. Law § 50-i.**

"[N.Y. Gen. Mun. Law §] 50-e requires that a Notice of Claim be filed within ninety days of the incident giving rise to the claim.  A plaintiff must plead in the complaint that: 1) the Notice of Claim was served; 2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and 3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  <u>Horvath v. Daniel</u>, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006) "Under §50-I, unless the plaintiff has complied with the Notice of Claim requirement the action cannot commence." <u>Id</u>.  "'Notice of claim requirements are construed strictly by New York state courts.'" <u>Id</u>. (internal quotations omitted). he burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement. <u>Rattner v. Planning Comm'n of Vill. of Pleasantville</u>, 156 A.D.2d 521, 548 N.Y.S.2d 943 [**6]  (2d Dep't 1989). <u>Horvath v. Daniel</u>, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

Plaintiff's complaint fails to plead that she has satisfied the above notice of claim requirements.  As such, plaintiff's state law claims should be dismissed as a matter of law for this reason alone.

22

**B.**    **Allowing Plaintiff to amend her pleading to comply with N.Y. Gen. Mun. Law § 50-i would be futile as her remaining state law claims still fail as a matter of law.**

### (a) Plaintiff's claims for assault and battery fail as a matter of law

Under New York law, "an 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." Girden v. Sandals Int'l, 262 F.3d 195, 203 (2d Cir. 2001). Under New York Law, a "'battery' is an intentional wrongful physical contact with another person without consent." Id. However, "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest." Johnston v. Port Auth. of N.Y. & N.J., No. 09-CV-4432 (JG) (CLP), 2011 U.S. Dist. LEXIS 82815, at *35-36 (E.D.N.Y. July 28, 2011) (granting summary judgment to defendants against plaintiff's claim of assault). Additionally, to sustain a cause of action to recover damages for assault . . . there must be some evidence of force exercised in excess of what is inherent in an arrest. Sylvester v. City of New York, 889 N.Y.S.2d 508, 2009 N.Y. Misc. LEXIS 1474, at *8-9 (Sup. Ct. N.Y. County 2009). As discussed *supra,* because plaintiff's arrest was lawful, the officers are privileged to use the necessary force to effect the arrest. Here, the videos clearly show no force was used that was in excess of what was reasonably necessary and inherent in effectuating plaintiff's lawful arrest. Therefore, plaintiff's assault and battery claims must be similarly dismissed.

### (b) Plaintiff's claims for intentional and negligent infliction of emotional distress fail as a matter of law

Claims for infliction of emotional distress are meant to address claims not specifically addressed by other available causes of action and are generally not allowed where a claim falls under more traditional tort liability. Moore v. City of N.Y., 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution) (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (McAvoy, Chief Judge)); Devito v. Barrant, No.

03-CV-1927 (DLI) (RLM), 2005 U.S. Dist. LEXIS 22444, at *30 (E.D.N.Y. Aug. 23, 2005) (dismissing claims of negligent and intentional infliction of emotional distress because "'the conduct underlying the claim[s] falls within the ambit of traditional tort liability' and is included in plaintiff's claims for assault and battery") (quoting Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002)). Furthermore, "public policy bars claims sounding in intentional infliction of emotional distress against a government entity." Rivera v. City of N.Y., 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005) (quoting Lauer v. City of N.Y., 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997)). Here, both of plaintiff's emotional distress claims fail because the conduct claimed is encompassed by plaintiff's claims for assault and battery.

An intentional infliction of emotional distress claim has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and inquiry; and (iv) severe emotional distress. Chanko v. Am. Broad. Cos., 27 N.Y.3d 46, 56 (N.Y. 2016). Here, as discussed *supra,* plaintiff's allegations of extreme and outrageous conduct, i.e. that she was stripped nearly naked and forced to walk across the Brooklyn Bridge and stand there for15-20 minutes in the nude while officers mocked and humiliated her (See Complaint ¶ 113-115), are directly contracted by videos of the incident, and therefore this claim should be dismissed.

Under New York law, a plaintiff may establish a claim of negligent infliction of emotional distress in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory." A plaintiff may recover for a purely emotional injury under the "bystander" theory when: (1) he is threatened with physical harm as a result of defendant's negligence; and (2) consequently he suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family. Bovsun v. Sanperi, 61 N.Y.2d 219, 230-31 (1984). Under the "direct duty" theory a plaintiff has a

cause of action for negligent infliction of emotional distress if he suffers an emotional injury from defendant's breach of a duty which unreasonably endangered his own physical safety. <u>Kennedy v. McKesson Co.</u>, 58 N.Y.2d 500, 504 (1983). The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society. <u>Johnson v. Jamaica Hosp.</u>, 62 N.Y.2d 523, 526-27 (1984). Here, the bystander theory is inapplicable because plaintiff does not allege to have witnessed the death or serious bodily injury of a member of their immediate family. Similarly, the direct duty theory is inapplicable because plaintiff has not alleged a special duty specific to plaintiff. <u>See</u> <u>Morgan v. County of Nassau</u>, 720 F. Supp. 2d 229, 242-43 (E.D.N.Y. 2010). Therefore, this claim must also be dismissed.

### (c) Plaintiff's claim for common law negligence fails as a matter of law

It is well established in this circuit that "[W]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." <u>Busch v. City of New York</u>,  No. 00 CV 5211 (SJ), 2003 U.S. Dist. LEXIS 27571, at *21 (E.D.N.Y Sep 30, 2003), citing <u>Dineen v. Stramka</u>, 228 F.Supp. 2d 447, 454 (S.D.N.Y. 1993). In addition, it is established that New York law does not provide an alternate theory of liability for negligence in these cases and "plaintiff may seek recover only through the traditional tort remedies." <u>Mesa v. City of New York</u>, 2013 U.S. Dist. LEXIS 1097(S.D.N.Y. Jan. 3, 2013); <u>See also</u> <u>Bernard v. United States</u>, 25 F. 3d 98, 102 (2d Cir 1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest"). Here, plaintiff's complaint brings excessive force and assault and battery claims and therefore, her negligence claim with respect to the same conduct fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, the defendant's motion to dismiss should be granted in its entirety and plaintiff's Complaint dismissed with prejudice.

Dated:        New York, New York
                July 1, 2022

                                HON. SYLVIA HINDS-RADIX
                                Corporation Counsel of the
                                  City of New York
                                Attorney for Defendants
                                100 Church Street, Room 3-196
                                New York, New York 10007
                                (212) 356-3519

                          By:      /s/ *Nadine Ibrahim*
                                  Nadine Ibrahim
                                  Senior Counsel