21 CV 6737 (ALC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAILA BEACH,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET AL.,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Nadine Ibrahim*
*Tel: (212) 356-3519*
*Matter No. 2021-031983*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ III

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

LEGAL STANDARD ...................................................................................................... 5

ARGUMENT

      POINT I

            PLAINTIFF'S FALSE ARREST AND FIRST
            AMENDMENT RETALIATION CLAIMS FAIL
            AS A MATTER OF LAW ........................................................................ 7

      POINT II

            PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE
            FAIL ...................................................................................................... 9

      POINT III

            THE OFFICERS ARE ENTITLED TO
            QUALIFIED IMMUNITY ..................................................................... 12

            A.  The individual officers are entitled to qualified
                immunity on Plaintiff's false arrest and First
                Amendment retaliation claims. .......................................... 14

            B.  The individual officers are entitled to qualified
                immunity on Plaintiff's excessive force claim ................. 15

      POINT IV

            PLAINTIFF'S FAILURE TO INTERVENE
            CLAIM FAILS ...................................................................................... 16

      POINT V

            PLAINTIFF'S MONELL CLAIM ALSO FAILS AS
            A MATTER OF LAW .......................................................................... 17

**Page**

A.  Plaintiff's complaint fails to establish any municipal policy or practice was casually connected to her alleged injury...................................... 18

B.  Plaintiff failed to plausibly plead a claim against the City stemming from the NYPD's failure to train. ..................................................................... 19

POINT VI

PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL AS A MATTER OF LAW ....................................... 21

A.  Plaintiff's claims for assault and battery fail as a matter of law ..................................................... 21

B.  Plaintiff's claims for intentional and negligent infliction of emotional distress fail as a matter of law   ....................................................................... 22

POINT VII

DEFENDANTS     ARE     ENTITLED     TO REASONABLE COSTS.......................................... 23

CONCLUSION..................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Pages**

Alyeska Pipeline Service Co. v. Wilderness Society,
    421 U.S. 240 ..........................................................................................................23

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004).....................................................................................21

An v. City of New York,
    2017 U.S. Dist. LEXIS 84364 (S.D.N.Y. June 1, 2017).........................................18

Aquino v. City of New York,
    16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436
    (S.D.N.Y. Jan. 25, 2017)..........................................................................................17

Ashcroft v. Iqbal,
    556 U.S. 662 (2008)...................................................................................................5

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007)................................................................................................5-6

Bowler v. United States INS,
    901 F. Supp. 597 (S.D.N.Y. 1995) ..........................................................................24

Bradway v. Gonzales,
    26 F.3d 313 (2d Cir. 1994).......................................................................................12

Broder v. Cablevision Sys. Corp.,
    418 F.3d 187 (2d Cir. 2005)........................................................................................6

Brown v. City of N.Y.,
    2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. Apr. 20, 2016),
    aff'd 862 F.3d 182 (2d Cir. 2017)............................................................................13

Brown v. City of New York,
    798 F.3d 94 (2d Cir. 2015)........................................................................10, 15, 16

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002).......................................................................................6

Chanko v. Am. Broad. Cos.,
    27 N.Y.3d 46 (N.Y. 2016) .......................................................................................22

City of Canton v. Harris,
    489 U.S. 378 (1989).........................................................................................17, 21

**Cases**                                                                    **Pages**

Connick v. Thompson,
    563 U.S. 51 (2011)...........................................................................20

Crowell v. Kirkpatrick,
    400 Fed. App'x 592 (2d Cir. 2010) ....................................................15

Cugini v. City of N.Y.,
    941 F.3d 604 (2d Cir. 2019)..............................................................12

Dawson v. City of Yonkers Police Dep't,
    2001 U.S. Dist. LEXIS 12908, 2001 WL 969005
    (S.D.N.Y. 2001) ...............................................................................10

DeLuca v. Access IT Group, Inc.,
    695 F. Supp.2d 54 (S.D.N.Y. 2010).....................................................6

DiFolco v. MSNBC Cable L.L.C.,
    622 F.3d 104 (2d Cir. 2010)................................................................6

Dwares v. City of New York,
    985 F.2d 94 (2d Cir. 1993)................................................................18

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)..............................................................14

Farmer v. Cty. of Westchester,
    18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597
    (S.D.N.Y. Sep. 15, 2021) ..................................................................18

Feinberg v. City of New York,
    No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098,
    2004 WL 1824373 (S.D.N.Y. Aug. 13, 2004) ....................................16

Ganek v. Leibowitz,
    874 F.3d 73 (2d Cir. 2017)................................................................15

Garcia v. Doe,
    779 F.3d 84 (2d Cir. 2014)...........................................................13, 14

Girden v. Sandals Int'l,
    262 F.3d 195 (2d Cir. 2001)..............................................................21

Graham v. City of New York,
    928 F. Supp. 2d 610 (E.D.N.Y. 2013) ...............................................13

**Cases**                                                                                          **Pages**

Graham v. Connor,
    490 U.S. 386 (1989)........................................................................................................10

Hirsch v. Complex Media, Inc.,
    18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701
    (S.D.N.Y. Dec. 10, 2018)...............................................................................................7

Hope v. Pelzer,
    536 U.S. 730 (2002)........................................................................................................12

Hunter v. Bryant,
    502 U.S. 224 (1991)........................................................................................................13

Hygh v. Jacobs,
    961 F.2d 359 (2d Cir. 1992)..............................................................................................8

Illinois v. Gates,
    462 U.S. 213 (1983)..........................................................................................................8

Iqbal v. Hasty,
    490 F.3d 143 (2d Cir. 2007)..............................................................................................6

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)..............................................................................................8

Johnson v. City of N.Y.,
    No. 18-CV-5623 (ALC), 2020 U.S. Dist. LEXIS 102870
    (S.D.N.Y. June 11, 2020)...............................................................................................12

Johnson v. Glick,
    481 F.2d 1028 (2d Cir. 1973)..........................................................................................10

Johnson v. Jamaica Hosp.,
    62 N.Y.2d 523 (1984).....................................................................................................23

Johnston v. Port Auth. of N.Y. & N.J.,
    No. 09-CV-4432 (JG) (CLP), 2011 U.S. Dist. LEXIS
    82815 (E.D.N.Y. July 28, 2011).....................................................................................21

Kennedy v. McKesson Co.,
    58 N.Y.2d 500 (1983).....................................................................................................23

Kisela v. Hughes,
    138 S. Ct. 1148 (2018)....................................................................................................15

**Cases**                                                                                          **Pages**

Malley v. Briggs,
    475 U.S. 335 (1986)............................................................................................13, 15

McLeod v. Llano,
    17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925
    (E.D.N.Y. Mar. 12, 2019) .........................................................................................19

Mercado v. City of New York,
    08 CV 2855 (HP), 2011 U.S. Dist. LEXIS 140430
    (S.D.N.Y. Dec. 5, 2011)............................................................................................18

Michigan v. DeFillippo,
    443 U.S. 31 (1979)......................................................................................................8

Mitchell v. Forsyth,
    105 S. Ct. 2806 (1985) .............................................................................................13

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)...............................................................................17, 18, 19, 21

Moore v. City of N.Y.,
    219 F. Supp. 2d 335 (E.D.N.Y. 2002) .....................................................................22

Morgan v. County of Nassau,
    720 F. Supp. 2d 229 (E.D.N.Y. 2010) .....................................................................23

Mullenix v. Luna,
    136 S. Ct. 305 (2015)...............................................................................................13

Nieves v. Bartlett,
    139 S. Ct. 1715 (2019)...............................................................................................8

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005)........................................................................................9

Oklahoma City v. Tuttle,
    471 U.S. 808 (1985)..................................................................................................17

Olivieri v. Thompson,
    803 F.2d 1265 (2d Cir. 1986).....................................................................................24

Pembaur v. City of Cincinnati,
    475 U.S. 469 (1986) (plurality opinion) ...................................................................17

Pierson v. Ray,
    386 U.S. 547 (1967)....................................................................................................8

**Cases**                                                                                       **Pages**

Plair v. City of New York,
    789 F. Supp. 2d 459 (S.D.N.Y. 2011) (collecting cases).......................................................18

Plumhoff v. Rickard,
    134 S. Ct. 2012 (2014)...............................................................................................14

Ricciuti v. New York City Transit Auth.,
    124 F.3d 123 (2d Cir. 1997).........................................................................................8

Rivera v. City of N.Y.,
    392 F.Supp.2d 644 (S.D.N.Y. 2005)........................................................................22

Romano v. Howarth,
    998 F.2d 101 (2d Cir. 1993).......................................................................................10

Saucier v. Katz,
    533 U.S. 194 (2001)..................................................................................................16

Segal v. City of New York,
    459 F.3d 207 (2d Cir. 2006).......................................................................................18

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)......................................................................................7-8

Smart v. City of New York,
    No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241
    (S.D.N.Y. Apr. 1, 2009)...............................................................................................9

Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
    682 F.3d 170 (2d Cir. 2012) (per curiam)................................................................24

Stewart Park & Reserve Coalition v. Slater,
    352 F.3d 545 (2d Cir. 2003).......................................................................................23

Sylvester v. City of New York,
    889 N.Y.S.2d 508, 2009 N.Y. Misc. LEXIS 1474
    (Sup. Ct. N.Y. County 2009) ....................................................................................22

Towner v. Town of Cohocton,
    19 CV 6638, 2021 U.S. Dist. LEXIS 93520
    (W.D.N.Y. May 17, 2021) ...........................................................................................7

Tracy v. Freshwater,
    623 F.3d 90 (2d Cir. 2010).........................................................................................15

**Cases**                                                                                    **Pages**

U.S. v. Scopo,
    19 F.3d 777 (2d Cir. 1994).............................................................................9

United States v. International Bhd. of Teamsters,
    948 F.2d 1338 (2d Cir. 1991)...............................................................24, 25

Vippolis v. Vill. of Haverstraw,
    768 F.2d 40 (2d Cir. 1985)...............................................................................17

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).............................................................................8

White v. Pauly,
    137 S. Ct. 548 (2017)......................................................................................15

Wood v. Moss,
    134 S. Ct. 2056 (2014) ............................................................................ 12-13

**Statutes**

34 R.C.N.Y. §4-07 subdivision (i)...............................................................................9

34 R.C.N.Y. §4-12(o) .................................................................................................9

28 U.S.C. § 1927.........................................................................................23, 24, 25

42 U.S.C. § 1983..............................................................................................7, 17

Fed. Rule Civ. Proc. 8.............................................................................................5, 6

Fed. Rule Civ. Proc. 8(a)(2).......................................................................................6

Fed. Rule Civ. Proc. 12(b)(6).................................................................................1, 2

**Other Authorities**

U.S. Const. Art. III, § 2..............................................................................................18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MAILA BEACH,

                                                    Plaintiff,

                        -against-

THE CITY OF NEW YORK, ET AL.,

                                                    Defendants.

------------------------------------------------------------------------ x

**DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF MOTION
FOR JUDGMENT ON THE
PLEADINGS**

21 CV 6737 (ALC)

## PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint  alleges causes of action that are not properly pled, that are not legally cognizable, or otherwise cannot survive the instant motion to dismiss. Defendants hereby respectfully submit their Memorandum of Law in Support of their motion for judgment on the pleadings and dismissal with prejudice of plaintiff's First Amended Complaint, and for such further relief as the Court deems just and proper, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS[1]

On April 24, 2021, at approximately 7:00 pm on the Brooklyn Bridge, plaintiff was peacefully protesting.  (First Amended Complaint (hereinafter "FAC"), ¶ 15).  Plaintiff alleges that "Defendants Dowling, Dominguez, Collado and Police Officer John Does #1-6 unlawfully detained and assaulted Plaintiff.  Id.  While present on the roadway of the Brooklyn Bridge, NYPD officers issued a dispersal order to the group of protestors.  (FAC at ¶ 16).  Plaintiff alleges that

---

[1] All of the facts set forth herein are drawn from the First Amended Complaint, and are adopted only for the purposes of this motion to dismiss.

"Police officer John Doe #1 lifted his bike up, shoved it into the crowd of protestors and simultaneously yelled "move back" causing chaos and commotion amongst the protestors." (FAC at 17). While Defendant John Doe #1 shoved his bike into the crowd, Defendant Sergeant Roberto Dominguez indiscriminately sprayed oleoresin capsicum ("OC spray" or "pepper spray") at the crowd and pepper sprayed plaintiff at close range in her face. (FAC at ¶ 18). Officer then grabbed plaintiff and threw her to the ground. (FAC at ¶ 19). Plaintiff told the officers that "she is epileptic and prone to seizures" and that she takes medication for her condition. *Id*. Plaintiff alleges officers "assaulted plaintiff with their arms, hands, and batons and beat plaintiff about her head and body." (FAC at ¶ 21).

Plaintiff further alleges that during her arrest, officers "pulled plaintiff's shirt up thereby exposing her stomach and bra" and that officers refused to pull her shirt back down while continuing to arrest her. (FAC at ¶ 22). Defendant Officers arrested plaintiff and "deliberately tightened the flex cuffs to the point where plaintiff lost feeling in her fingers." (FAC at ¶ 23). "Defendant Officers John Does #5 and 6 then lifted plaintiff off of the ground and pushed plaintiff across the Brooklyn Bridge to a police transport van while her shirt remained lifted up." (FAC at ¶ 24). "While walking to the transport van, Defendant Officer #5 pulled plaintiff's pants down to exposing her buttocks." (FAC at ¶ 25). Defendant Officers #5 and 6 pulled plaintiff's pants halfway up causing her buttocks to remain exposed for before several offices as she entered the NYPD transport van." (FAC at ¶ 26). Plaintiff was issued a summons for "Pedestrian on Highway Prohibited on Roadway." (FAC at ¶ 27).

The videos from the officers' body-worn cameras, produced to plaintiff pursuant to this Court's Order on January 25, 2022 and pursuant to plaintiff's FOIL request, very clearly contradict plaintiff's version of events. The videos demonstrate that plaintiff was walking in the middle of

the Manhattan bound roadway of the Brooklyn bridge at the time of her arrest.  (Declaration of Nadine Ibrahim dated September 8, 2022 (hereinafter "Ibrahim Decl."), Body worn camera footage AXON Body 2 Video 2021-04-24 2229 depicting plaintiff's actions prior to her arrest annexed hereto as Exhibit A (hereinafter "Exhibit A")).  Plaintiff and others are depicted standing in the middle of the roadway of the Brooklyn Bridge and refusing to move, despite the audible lawful commands from NYPD to move back and continue walking over the bridge.  (Exhibit A at 14:43).  Plaintiff finally starts slowly walking backwards, and a few moments later, she is seen locking arms with other protesters and stops moving again while still on the roadway of the Brooklyn bridge.  (Exhibit A at 16:57).  An officer is then heard giving plaintiff verbal commands to move back and then attempting to move plaintiff back after she refuses to move.  (Exhibit A at 17:05).  As the officer is attempting to move plaintiff back, plaintiff pushes back on the officer and holds her ground.  (Exhibit A at 17:09).  The officer once again tries to move plaintiff back, along with the two other protesters with whom she is locking arms, but once again plaintiff and the other two protestors stand their ground, refusing to move and push back on the officer.  (Exhibit A at 17:13).  Officers for a third time ask plaintiff and the other protestors to move back, and plaintiff and the others finally start very slowly walking backwards.  (Exhibit A at 17:18).  Plaintiff and the other protestors then stop moving again as an officer can be seen attempting to move them back with his bike.  (Exhibit A at 17:23).  Plaintiff is once again seen pushing back against an officer as officers try to move the protestors off the bridge.  (Exhibit A at 17:30).  An officer then deploys his OC spray to assist other officers in arresting plaintiff and the protestors with whom she is interlocking arms and who were refusing to move.  (Exhibit A at 17:33).

Plaintiff is then arrested by officers.  (See Ibrahim Decl., Body worn camera footage AXON Body 2 Video 2021-04-24 2231 depicting plaintiff's arrest and annexed here to as Exhibit

B (hereinafter "Exhibit B")).  Plaintiff is seen on the ground being held down with minimal force as officers try to cuff her; no officer is seen hitting or kicking her.  (Exhibit B at 15:16).  Plaintiff can be seen moving her body and arms around as an officer tells her "stop resisting."  (Exhibit B at 15:25).  Plaintiff is heard mentioning something about her shirt several times, but is not heard mentioning anything about epilepsy while on the ground.  (Exhibit B at 15:48).  The video clearly shows that officers promptly pulled down plaintiff's shirt as she stood up.  (Exhibit B at 16:13).  As two officers help plaintiff up to her feet and begin to walk her to the police van, she is seen with her shirt pulled down to cover her and her pants completely on.  (Exhibit B at 16:29).

As the officers are escorting plaintiff to the van, her pants begin to slowly ride down inadvertently.  (See Ibrahim Decl., Body worn camera footage AXON Body 2 Video 2021-04-24 2242 depicting plaintiff's walk to the transport van and annexed here to as Exhibit C (hereinafter "Exhibit C")).  Plaintiff is first seen walking with an officer holding each of her arms as she yells "my pants are falling down."  (Exhibit C at 6:16).  The officers are seen continuing to walk her by holding both her arms.  (Exhibit C at 6:19).  Plaintiff's pants are seen starting to inadvertently fall down on their own and no officer is seen pulling her pants down or touching them in any fashion. (Exhibit C at 6:23).

The two officers escorting her plaintiff continued to walk her  to the police van.  (See Ibrahim Decl., Body worn camera footage AXON Body 2 Video 2021-04-24 2246 depicting plaintiff's walk to the transport van and annexed here to as Exhibit D (hereinafter "Exhibit D")).  Officers continued the very brief walk to the police van, and pulled up plaintiff's pants for her after donning gloves within 79 seconds of plaintiff's first complaint.  (Exhibit D at 1:34-2:53).  As plaintiff climbed into the police van, her loose fitting pants started to ride down once again and an officer immediately pulled them up for her.  (Exhibit D at 4:49).  Plaintiff then is then for the very

first time heard saying "be careful with my head I have fucking epilepsy you fucking bitches." (Exhibit D at 4:46). The body worn camera recording is continuous from the time that the officers picked her up off the ground to the time the officers placed her in the transport van. (Exhibit D).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (quoting Twombly, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).

Two working principles determine whether a complaint may survive a motion to dismiss. Ashcroft, 556 U.S. at 678-679. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. (citing Twombly, 550 U.S.

at 556).  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)).  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – "that the pleader is entitled to relief.'"  Id. (citing Fed. Rule Civ. Proc. 8(a)(2)).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a court may consider 'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit'").  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document integral to the complaint."  Chambers, 282 F.3d at 152-53.  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents…[and] [t]o be integral to a complaint, the plaintiff must have 1) actual notice of the extraneous information and 2) relied upon the documents in framing the complaint."  DeLuca v. Access IT Group, Inc., 695 F. Supp.2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers at 153).  "Insofar as the complaint relies on the terms" of a document either annexed or deemed incorporated by reference, the court "need not accept its description," but may look to the document itself.  See Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  Where a video is incorporated by reference or integral to the complaint, it may be considered upon a motion to dismiss, and the "[c]ourt need not accept the party's

characterizations" of it.  See Hirsch v. Complex Media, Inc., 18 Civ. 5488 (CM), 2018 U.S. Dist. LEXIS 209701, at *6-7 (S.D.N.Y. Dec. 10, 2018).

Here, there are four videos, Exhibits A, B, C, and D to the Ibrahim Decl., which are integral to plaintiff's FAC  as they undeniably and accurately depict the very events described in plaintiff's complaint and are continuous from the moment of plaintiff's arrest until plaintiff is inside the transport van.  See Towner v. Town of Cohocton, 19 CV 6638 (CJS), 2021 U.S. Dist. LEXIS 93520, at *5 (W.D.N.Y. May 17, 2021) ("the video is integral to the Amended Complaint, since it captures the very event for which plaintiff was arrested and prosecuted).  The first body worn camera video undeniably demonstrates that plaintiff was arrested while unlawfully in the Manhattan bound roadway of the Brooklyn Bridge and refusing lawful orders to keep moving off the bridge.  See Exhibit A.  The second video shows that plaintiff was not kicked, punched or hit with batons during her arrest.  See Exhibit B.  The other two videos undeniably shows that plaintiff's pants inadvertently started to fall down as officers walked her to the transport van and officers promptly adjusted her pants after donning gloves.  See Exhibit C and Exhibit D.  More importantly, plaintiff relied on these videos in drafting her FAC.  See Dkt. No. 33, p.1 ("Plaintiff's First Amended Complaint will incorporate facts obtained from viewing all of the obtained BWC footage as provided for by Defendants").  Under these circumstances, defendants submit that these videos should be considered in deciding the defendants' motion to dismiss.

## ARGUMENT

### POINT I

**PLAINTIFF'S FALSE ARREST AND FIRST AMENDMENT RETALIATION CLAIMS FAIL AS A MATTER OF LAW**

The elements of a false arrest claim under Section 1983 "are substantially the same as the elements of a false arrest claim under New York law."  Singer v. Fulton County Sheriff, 63 F.3d

110, 118 (2d Cir. 1995).  Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  *Id.* (internal quotations and citations omitted).  However, "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation omitted).  Further, probable cause is also a defense to a claim of First Amendment retaliation.  Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Probable cause to arrest exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (citing Hygh v. Jacobs, 961 F.2d 359, 366 (2d Cir. 1992)).  Probable cause requires only a probability, not an actual showing, of criminal activity.  Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Moreover, the validity of an arrest does not depend upon an ultimate finding of guilt or innocence.  Pierson v. Ray, 386 U.S. 547, 555 (1967).  Thus, whether the suspect was later acquitted of the charges for which he was arrested is irrelevant to a determination of probable cause at the time of arrest.  Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).  Additionally, if there is probable cause to arrest, the arrest is not unlawful by virtue of the fact that the arresting officer did not identify a particular charge supported by said probable cause at the time of the arrest. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006).

Plaintiff's presence on the roadway of the Brooklyn Bridge is prohibited under New York Law, therefore, there was probable cause for plaintiff's arrest.  See, e.g., Smart v. City of New York, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13-15 (S.D.N.Y. Apr. 1, 2009) (holding an arrest lawful because officer observed plaintiff sitting in double-parked car and "it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator.") (citing U.S. v. Scopo, 19 F.3d 777, 781-782 (2d Cir. 1994)) (other citations omitted).

34 R.C.N.Y. §4-12(o) Use of roadways, in pertinent part, states as follows: "(1) Pedestrians, horses, bicycles and limited use vehicles prohibited.  In order to provide for the maximum safe use of the expressways, drives, highways, interstate routes, bridges and thruways set forth in §4-07 subdivision (i) of these rules and to preserve life and limb thereon, the use of such highways by pedestrians, riders of horses and operators of limited use vehicles and bicycles is prohibited, unless signs permit such use."  Plaintiff's own complaint admits that she was present on the roadway of the Brooklyn Bridge. (FAC, ¶¶ 16).  As such, plaintiff was in prima facie violation of a New York law and there can be no argument that probable cause was lacking.  Thus, plaintiff's claims for false arrest and first amendment retaliation fail as a matter of law and should be dismissed with prejudice.

## POINT II

### PLAINTIFF'S CLAIMS OF EXCESSIVE FORCE FAIL

To establish that an officer used excessive force, a plaintiff must "show that [the officer's] actions were objectively unreasonable in light of the facts and circumstances confronting him." Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005) (internal quotation marks and alteration omitted).  More specifically, "[d]etermining whether the force used to effect a particular

seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (citations and internal quotations omitted). It is clear that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). The Second Circuit has held that "a de minimis use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

In the context of force to effect an arrest, the use of more invasive alternatives does necessarily constitute excessive force. Brown v. City of New York, 798 F.3d 94, 103 (2d Cir. 2015) ("the availability of a less aggressive way of accomplishing an arrest [does not] necessarily mean that the technique that was used is thereby shown to have been excessive"). Rather, "[p]olice officers must be entitled to make a reasonable selection among alternative techniques for making an arrest." Id. Courts have made clear that the use of pepper spray may be reasonable to subdue an individual who is actively resisting arrest or poses a threat to public or officer safety. See Dawson v. City of Yonkers Police Dep't, 2001 U.S. Dist. LEXIS 12908, 2001 WL 969005, *4 (S.D.N.Y. 2001) ("it was reasonable for the officers to use force and pepper spray to subdue [plaintiff]" where he resisted arrest by kicking and punching).

Here, plaintiff's arrest was supported by probable cause as previously discussed *supra,* therefore, officers were entitled to use reasonable force to take plaintiff into custody. As evidenced by the body-worn camera videos, officers gave plaintiff and the other protesters several orders to continue walking over the bridge, yet plaintiff stopped in the middle of the bridge and was refusing to move. The unlawful blocking of the roadway of the Brooklyn Bridge by plaintiff and this crowd

created a public safety risk as well as a traffic congestion.  Therefore, officers attempted to move plaintiff and the crowd back by yelling "move back" as the officers moved forward with their bikes.  Instead of moving back as the officers instructed, plaintiff and other protesters locked arms, held their ground and began pushing back on the officers.

It is important to note that since plaintiff was locked arms with the protestors around her, it would have been unreasonable for officers to simply arrest plaintiff standing up.  As evidenced in the BWC videos, protestors were interfering with arrests by physically pulling each other from officers to avoid arrest.  It is reasonable for officers to believe the same would have happened with the arrest of plaintiff, which would create a more dangerous situation for all involved.  Further, while the FAC alleges that plaintiff was "pepper sprayed at a close range in the face," the complaint itself admits that this was immediately prior to plaintiff's arrest.  Additionally, the FAC does not allege that the pepper spray was used on plaintiff more than one time, or that it caused plaintiff any injury at all.  Based on these circumstances, the use of OC spray by officers was reasonable and clearly directed at the goal of effecting plaintiff's arrest.

Further, the videos show that officers brought plaintiff to the ground in order to handcuff her.  One officer is seen holding plaintiff down with minimal force as he waits for another officer to give him the cuffs.  As soon as plaintiff is cuffed, officers can be seen helping her to her feet immediately.  Contrary to plaintiff's complaint, no officer is seen kicking or punching plaintiff. Plaintiff's claims that officers punched plaintiff several times and beat her as she screamed at them that she suffered from seizures is blatantly false.  Plaintiff is heard in the video yelling about her shirt, but is never heard saying anything that would lead officers to believe that she suffered from epilepsy.  Further, no officer is even seen in the videos with a baton drawn, let alone hitting plaintiff with it.  As a matter of fact, the FAC does not even allege any specific injuries plaintiff allegedly

suffered as a result of her interaction with police.  While plaintiff claims in the FAC that "defendants deliberately tightened the flexcuffs to the point where plaintiff lost feeling in her fingers and her hands became numb," plaintiff fails to plead any allegations that she suffered more than a temporary injury or that defendants ignored her pleas to loosen the cuffs which is fatal to her claim.  See Cugini v. City of N.Y., 941 F.3d 604, 612-13 (2d Cir. 2019) (to establish a claim for unreasonable handcuffing, a Court must find: that "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists"); Johnson v. City of N.Y., No. 18-CV-5623 (ALC), 2020 U.S. Dist. LEXIS 102870, at *8-9 (S.D.N.Y. June 11, 2020) ("[T]here is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort.").  Therefore, plaintiff cannot establish that the minimal force used to arrest her was objectively unreasonable and her excessive force claim must be dismissed.

## POINT III

## THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known… or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).  Qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."  Hope v. Pelzer, 536 U.S. 730, 739 (2002).  The Supreme Court has made clear that qualified immunity can be established by the facts alleged in a complaint.  See Wood v.

Moss, 134 S. Ct. 2056 (2014).  Indeed, because qualified immunity protects officials not merely from liability but from litigation, the issue should be resolved when possible on a motion to dismiss, "before the commencement of discovery," to avoid subjecting public officials to time consuming and expensive discovery procedures.  Mitchell v. Forsyth, 105 S. Ct. 2806 (1985); Garcia v. Doe, 779 F.3d 84, 97 (2d Cir. 2014).  "The standard for determining whether police officers enjoy immunity for false arrest and assault and battery actions is the same under state law as it is under federal law."  Graham v. City of New York, 928 F. Supp. 2d 610, 625 (E.D.N.Y. 2013).

Qualified immunity is an affirmative defense as to which defendants bear the burden of proof.  Brown v. City of N.Y., 2016 U.S. Dist. LEXIS 53365, at *17 (S.D.N.Y. Apr. 20, 2016), aff'd 862 F.3d 182, 191 (2d Cir. 2017).  To prevail, they must show that a reasonably competent officer would have concluded that taking the same actions they did was reasonable under the totality of the facts and circumstances.  Id.  The opposite is similarly true: that for plaintiff to defend this motion, it must be "obvious that no reasonably competent officer would have concluded" that bringing plaintiff to the ground in the attempt to handcuff her or administering pepper spray in this scenario was an unlawful use of force.  See Malley, 475 U.S. at 341.  Plaintiff must show with a high degree of specificity that the rule they seek to apply prohibited the official's conduct.  Mullenix v. Luna, 136 S. Ct. 305, 309 (2015).  The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curium) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).  Similarly, the Supreme Court has "repeatedly told courts... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the

13

official acted reasonably in the particular circumstances that he or she faced."   Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014).

A.     **The individual officers are entitled to qualified immunity on Plaintiff's false arrest and First Amendment retaliation claims**

In the context of a false arrest claim, an officer making an arrest without probable cause is nonetheless entitled to qualified immunity if he can establish that there was "arguable probable cause" for the arrest, defined by the Second Circuit as "[existing] 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'"   Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).   It is well established that a police officer aware of facts creating probable cause to suspect a prima facie violation of a criminal statute is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.   Garcia, 779 F.3d at 93 (2d Cir. 2014).

In Garcia, plaintiffs similarly brought false arrest claims after being arrested for protesting on the roadway of the Brooklyn Bridge.   Id.   On appeal, the Second Circuit Court of Appeals reversed the decision of the district court and ordered dismissal of plaintiffs' claims on the grounds of qualified immunity.   Id.   The Court found that no clearly established law would make it clear to a reasonable officer that it would be unlawful to arrest individuals who were in prima facie violation of a straightforward statutory prohibition because those individuals may have believed, based on inferences drawn from ambiguous behavior by the police, that they were authorized to violate the statute.   Id at 96.

Here, the officers are entitled to qualified immunity because, similar to Garcia, plaintiff was in prima facie violation of a traffic law and there is no clearly established law that would lead a reasonable officer to believe plaintiff's arrest was unlawful.   Id.   As a result, plaintiff's claims

for false arrest and First Amendment retaliation must  be dismissed because the individual officers are entitled to qualified immunity.

**B.    The individual officers are entitled to qualified immunity on Plaintiff's excessive force claim**

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018).  The Supreme Court held that for a right to be "clearly established," there must be at least one identified case "where an officer acting under similar circumstances…was held to have violated the Fourth Amendment." Ganek v. Leibowitz, 874 F.3d 73, 81 (2d Cir. 2017) (quoting White v. Pauly, 137 S. Ct. 548, 552 (2017)).  Qualified immunity attaches unless it is the right plaintiff claims was "so clearly established" in this context such that "it is obvious that no reasonably competent officer would have concluded" the amount of force used during plaintiff's arrest violated the law. Malley, 475 U.S. at 341.

The Second Circuit has held that actions that are comparable to pepper-spraying to effect the arrest of a noncompliant individual did not constitute excessive force. See Crowell v. Kirkpatrick, 400 Fed. App'x 592, 595 (2d Cir. 2010) (holding that officers' tasing was objectively reasonable when plaintiffs who were being arrested for minor trespass crimes and refusing to release themselves for arrest but were "not threatening the safety of any other person"); Brown, 862 F.3d at 191 (granting qualified immunity where noncompliant plaintiff received pepper spray prior to, and in furtherance of, the officers' attempts to accomplish the handcuffing).  In scenarios where the use of pepper-spray may have risen to the level of constitutional violation, the arrestee, unlike plaintiff here, was fully "handcuffed and was offering no physical resistance of police commands." Tracy v. Freshwater, 623 F.3d 90 (2d Cir. 2010).

Here, the force in question here is the officers' alleged use of his OC spray to subdue plaintiff prior to her arrest, and then subsequently taking her to the ground and arresting her. The relevant inquiry here is whether every reasonable police officer would view the force used by the officer in this case, in the circumstances in which that force was applied, as excessive according to clearly established law. See Brown, 862 F.3d at 192. There is no precedential decision of the Supreme Court or the Second Circuit Court that "clearly establishes" that officers utilizing pepper spray in an effort to arrest specific protestors who were locking arms, pushing back against officers, and refusing to move off of an active roadway were in violation of the Fourth Amendment. To the contrary, there are precedential decisions holding that the use of OC spray on an uncooperative subject was not held to be in violation of the Fourth Amendment. Further, as discussed *supra*, the videos clearly show that officers did not "assault plaintiff with their arms, hands, and batons and beat plaintiff about her head and body" during her arrest, and that any force used was *de minimis* at best. Therefore, the officers are entitled to qualified immunity and plaintiff's claims must be dismissed.

### POINT IV

### PLAINTIFF'S FAILURE TO INTERVENE CLAIM FAILS

There can be no failure to intervene claim where there was no constitutional violation. Feinberg v. City of New York, No. 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, 2004 WL 1824373, at *4 (S.D.N.Y. Aug. 13, 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.") (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Because plaintiff's constitutional rights were not violated, as discussed herein, plaintiff's failure to intervene claim must fail.

## POINT V

## PLAINTIFF'S MONELL CLAIM ALSO FAILS
## AS A MATTER OF LAW

"In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." Aquino v. City of New York, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017).   A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Dep't of Social Services, 436 U.S. 658, 694-95 (1978).  In order to hold a municipality liable as a "person" within the meaning of § 1983, a plaintiff must establish that the municipality itself was somehow at fault. Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see Monell, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, see Monell, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of those with whom municipal employees will come into contact." See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

"The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . .  Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985)

(internal quotation marks and citation omitted).  "To establish <u>Monell</u> liability, the causal link must

be strong; that is, the policy must be the 'moving force' behind a constitutional violation."

<u>Mercado v. City of New York</u>, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23

(S.D.N.Y. Dec. 5, 2011) (quoting <u>Monell</u>, 436 U.S. at 691, 694).

 A claim for municipal liability cannot stand where there is no causal connection between

the plaintiff's alleged constitutional violation and the alleged unlawful custom.  <u>See, e.g., Segal v.

City of New York</u>, 459 F.3d 207, 219 (2d Cir. 2006) ("<u>Monell</u> does not provide a separate cause

of action . . .; it extends liability to a municipal organization where that organization's failure to

train, or the policies or customs that it has sanctioned, led to an independent constitutional

violation.").  Stated differently, even where a plaintiff identifies an unconstitutional custom or

practice, if that plaintiff's rights were not violated as a result of the application of that custom or

practice the claim fails.  <u>See</u> U.S. Const. Art. III, Section 2; <u>An v. City of New York</u>, 2017 U.S.

Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017).

**A. Plaintiff's complaint fails to establish any municipal policy or practice was casually connected to her alleged injury**

 In order to plead a plausible claim for municipal liability for use of a form of excessive

force, a plaintiff must "allege that the practice, custom, or usage was so widespread and so

persistent that it has the force of law."  <u>Farmer v. Cty. of Westchester,</u> 18 Civ. 2691 (NSR), 2021

U.S. Dist. LEXIS 175597, at *31 (S.D.N.Y. Sep. 15, 2021).  "The mere assertion . . . that a

municipality has such a custom or policy is insufficient in the absence of allegations of fact tending

to support, at least circumstantially, such an inference."  <u>Dwares v. City of New York</u>, 985 F.2d

94, 100 (2d Cir. 1993)).  Courts routinely dismiss boilerplate assertions of municipal liability.  <u>Plair

v. City of New York</u>, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (<u>collecting cases</u>).

Here, plaintiff's FAC fails to even identify any unconstitutional specific policy or practice of NYPD, or how such policy was the "driving force" of plaintiff's alleged injuries. Instead, plaintiff only makes a wholly conclusory allegations that the NYPD had a policy "where they encouraged their officers to use excessive force"(FAC, ¶60). Plaintiff relies in her FAC on a few research reports in support of such claim, as well as "numerous documented incidents," without properly specifying which incidents or how they relate to plaintiff's incident or underlying constitutional claim. (FAC, ¶54) "'Research reports may be used to bolster <u>Monell</u> claims, but only if those reports are sufficiently connected to the specific facts of the case and are of recently recent vintage." <u>McLeod v. Llano</u>, 17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *19 (E.D.N.Y. Mar. 12, 2019). Therefore, plaintiff cannot proceed under this theory.

Further, plaintiff alleges that NYPD has "a policy and practice of failing to provide meaningful opportunities to comply with dispersal orders at protests." (FAC, ¶45). Plaintiff cites several reports published in the aftermath of the George Floyd protests to support her claim. (FAC, ¶¶32-37). While defendants dispute the existence of such a policy or practice, even if such a policy existed, it would not be casually connected to plaintiff's claims. As evidenced by the BWC videos, plaintiff was clearly given orders to disperse and provided a meaningful opportunity to disperse, but instead plaintiff locked arms with other protesters and refused to continue walking off the Brooklyn Bridge, even pushing back on officers. The videos also showed that those protestors who followed police orders and continued walking off the bridge were not arrested. Therefore, plaintiff cannot prove a <u>Monell</u> claim based on either alleged policy or practice.

**B.    Plaintiff failed to plausibly plead a claim against the City stemming from the NYPD's failure to train**

As an initial matter, as set forth above in Section II(A), plaintiff has not shown any nexus between the alleged constitutional violation she suffered and these theories of liability. Plaintiff's

FAC is full of wholly boilerplate allegations regarding mass arrests, alleged "kettling" of protesters and failure to training of SRG.  (See FAC ¶¶ 55-59).  However, plaintiff's FAC is devoid of any allegations that she was arrested as part of a mass arrest, devoid of any allegations that she was subjected to 'kettling', and devoid of any allegations that SRG even had any role whatsoever in her arrest.  Plaintiff's allegation that 6 other protestors were also arrested that evening is a far cry from a mass arrest.  As a result, plaintiff's claims for failure to train regarding mass arrests, or failure to train SRG are merely boilerplate assertions of municipal liability and therefore fail as a matter of law.

Plaintiff also alleges that the NYPD failed to train on the use of proportional force while policing protests and bases her allegation on findings of the Department of Investigation Report (hereinafter "DOI report") cited in her complaint. (FAC, at ¶ 57).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011).  For municipal liability to attach on a failure to train theory, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. at 62.

Plaintiff conclusory alleges that the City of New York has a history of using excessive force against protesters.  (FAC, at ¶¶ 50).  However, plaintiff does not cite to any specific incidents, let alone adjudications of excessive force; rather, plaintiff seeks to support a failure to train claim as a failure to train on force generally.  This is improper. In order to state a failure to train claim against a municipality, a plaintiff ultimately must identify "a **specific** deficiency in the city's training program and establish that that deficiency is '**closely related** to the ultimate injury,' such

that it 'actually caused' the constitutional deprivation.'" <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004) (emphasis added) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 391 (1989)).  Plaintiff here does not cite to a specific training deficiency, but alleges, in effect, that the entirety of the NYPD's training on the use of reasonable force is deficient.  Furthermore, plaintiff's use of the DOI report to prove her claims is futile.  The NYPD had already completed many of the recommendations in that report prior to plaintiff's arrest, including re-training thousands of officers on protest policing in the Summer and Fall of 2020.[2]

As a result, plaintiff's claim for failure to train is based on allegations that have no nexus to her alleged constitutional violations.  Thus, plaintiff cannot establish a municipal liability claim and her <u>Monell</u> claim against the City of New York should be dismissed.

**POINT VI**

**PLAINTIFF'S STATE LAW CLAIMS ALSO<br>FAIL AS A MATTER OF LAW**

**A.    Plaintiff's claims for assault and battery fail as a matter of law**

Under New York law, "an 'assault' is an intentional placing of another person in fear of imminent harmful or offensive contact." <u>Girden v. Sandals Int'l</u>, 262 F.3d 195, 203 (2d Cir. 2001). Under New York Law, a "'battery' is an intentional wrongful physical contact with another person without consent." <u>Id</u>.  However, "[o]fficers executing a lawful arrest are privileged to commit any battery that is reasonably necessary to effect the arrest." <u>Johnston v. Port Auth. of N.Y. & N.J.</u>, No. 09-CV-4432 (JG) (CLP), 2011 U.S. Dist. LEXIS 82815, at *35-36 (E.D.N.Y. July 28, 2011) (granting summary judgment to defendants against plaintiff's claim of assault).  Additionally, to sustain a cause of action to recover damages for assault . . . there must be some evidence of force

---

[2]    https://www1.nyc.gov/assets/nypd/downloads/pdf/public_information/mass-demonstration-recommendations-status-12222021.pdf

exercised in excess of what is inherent in an arrest. <u>Sylvester v. City of New York</u>, 889 N.Y.S.2d 508, 2009 N.Y. Misc. LEXIS 1474, at *8-9 (Sup. Ct. N.Y. County 2009).  As discussed *supra,* because plaintiff's arrest was lawful, the officers are privileged to use the necessary force to effect the arrest.  Here, the videos clearly show no force was used that was in excess of what was reasonably necessary and inherent in effectuating plaintiff's lawful arrest.  Therefore, plaintiff's assault and battery claims must be similarly dismissed.

**B.    Plaintiff's claims for intentional and negligent infliction of emotional distress fail as a matter of law**

Claims for infliction of emotional distress are meant to address claims not specifically addressed by other available causes of action and are generally not allowed where a claim falls under more traditional tort liability.  <u>Moore v. City of N.Y.</u>, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution).  Furthermore, "public policy bars claims sounding in intentional infliction of emotional distress against a government entity." <u>Rivera v. City of N.Y.</u>, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005).  Here, both of plaintiff's emotional distress claims fail because the conduct claimed is encompassed by plaintiff's claims for assault and battery.

An intentional infliction of emotional distress claim has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and inquiry; and (iv) severe emotional distress. <u>Chanko v. Am. Broad. Cos.</u>, 27 N.Y.3d 46, 56 (N.Y. 2016).  Here, as discussed *supra,* plaintiff's allegations of extreme and outrageous conduct, i.e. that she was intentionally stripped nearly naked and forced to walk across the Brooklyn Bridge and stand there in the partial

nude (See FAC ¶136), are directly contracted by videos of the incident, and therefore this claim should be dismissed.

Under New York law, a plaintiff may establish a claim of negligent infliction of emotional distress in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory."  Under the "direct duty" theory, a plaintiff has a cause of action for negligent infliction of emotional distress if he suffers an emotional injury from defendant's breach of a duty which unreasonably endangered his own physical safety.  Kennedy v. McKesson Co., 58 N.Y.2d 500, 504 (1983).  The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society.  Johnson v. Jamaica Hosp., 62 N.Y.2d 523, 526-27 (1984).  Here, it is clear from the videos that plaintiff only told officers about her epilepsy after she was already cuffed and entering the transport van.  Therefore, plaintiff cannot prove that officers owed her any specific duty or that that duty was breached.  See Morgan v. County of Nassau, 720 F. Supp. 2d 229, 242-43 (E.D.N.Y. 2010).  Therefore, this claim must also be dismissed.

## POINT VII

### DEFENDANTS ARE ENTITLED TO REASONABLE COSTS

Pursuant to 28 U.S.C. § 1927, "any attorney or other person admitted to conduct cases in any court of the United States. . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  See Stewart Park & Reserve Coalition v. Slater, 352 F.3d 545, 561 (2d Cir. 2003).  This statute authorizes a district court to impose sanctions where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 258-59.  An award under this statute is appropriate when an attorney's actions are without merit so as to support a

conclusion that they must have been undertaken for an improper purpose such as delay. Olivieri v. Thompson, 803 F.2d 1265, 1274 (2d Cir. 1986). In assessing violations of § 1927, courts focus on a course of conduct rather than a pleading, motion, or other paper. United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1346 (2d Cir. 1991). Section 1927 applies in particular to a "continuing course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics." Id.

Sanctions are appropriate where, as here, counsel has unreasonably and vexatiously "multiplied" the proceedings. See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012) (per curiam) (recognizing that advancing arguments that are "utterly without merit" is a basis for sanctions); Bowler v. United States INS, 901 F. Supp. 597, 605 (S.D.N.Y. 1995) (sanctions warranted where attorney filed a baseless application for a stay which he continued to advocate improperly even after any reasonable inquiry would have led a practitioner acting in good faith to conclude that he or she had no legal or factual basis for their position).

Plaintiff counsel's dilatory conduct in the handling of this entire case has caused defendants, as well as the Court, to waste valuable time and resources. Plaintiff counsel did not seek leave to amend her complaint when the BWC videos were produced by the FOIL unit in September 2021 or by defendants in February 2022. Plaintiff counsel further did not seek leave to amend when defendants sent her the safe harbor letter and made her aware of the frivolousness of her claims. Plaintiff counsel similarly did not seek leave to amend when defendants filed the pre-motion conference letter or when the court granted defendants leave to file their motions. Instead, plaintiff's counsel has been fervently defending her non-meritorious claims at every junction. She

has forced defendants to waste valuable time and resources to bring and fully brief their first motion to dismiss; and only then did plaintiff's counsel withdraw her frivolous claims.

Indeed, it wasn't until July 21, 2022, that plaintiff's counsel filed her FAC and removed the frivolous allegations of sexual assault that she had perpetuated for over a year and a half, and that defendants have been telling her were frivolous since January 2022. Had plaintiff counsel actually watched the videos in September 2021 or in February 2022, or seriously investigated her client's claims based on defendants' safe harbor letter or pre-motion conference letter as she was required to do, the City would not have wasted already scarce time and resources making unnecessary motions.

Therefore, this Court therefore should impose sanctions against plaintiff's counsel pursuant to § 1927, for "multiplying" the proceedings unreasonably, see, e.g., Mahadi, 2003 U.S. Dist. LEXIS 8234 at *11-12, by delaying and causing defendants to bear unnecessary costs of this lawsuit by failing to investigate the allegations of the complaint, advancing claims that could not have been brought in good faith, and needlessly increasing defendants' litigation costs.  An award of attorneys' fees, expenses, and costs is appropriate where, as here, there is "clear evidence" that claims have been advanced and the litigation has been conducted in bad faith.  International Bhd. of Teamsters, 948 F.2d at 1345.

## <u>CONCLUSION</u>

For the foregoing reasons, the defendants' motion to dismiss should be granted in its entirety and plaintiff's First Amended Complaint dismissed with prejudice and defendants should be granted reasonable attorneys' fees, expenses, and costs incurred due to plaintiff's dilatory conduct.  Defendants will submit their application for fees and costs on request of the Court.

Dated:      New York, New York
              September 8, 2022

                            HON. SYLVIA HINDS-RADIX
                            Corporation Counsel of the
                              City of New York
                            Attorney for Defendants
                            100 Church Street, Room 3-196
                            New York, New York 10007
                            (212) 356-3519

                          By:    /s/ *Nadine Ibrahim*
                              Nadine Ibrahim
                              Senior Counsel