MAILA BEACH,

                    Plaintiff,

vs.

THE CITY OF NEW YORK, SERGEANT GERARD
DOWLING (TAX ID 915640), SERGEANT
ROBERTO DOMINGUEZ (TAX ID938384) and
POLICE OFFICERS JOHN DOES #1-10, in their
individual and official capacities,

                    Defendants.

21-cv-6737 (ALC) (SLC)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

The Aboushi Law Firm, PLLC
By: Tahanie A. Aboushi
*Attorneys for Plaintiff*
1441 Broadway, Suite 5036
New York, New York 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
Tahanie@aboushi.com
September 29, 2022

**Table of Contents**

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS.........................................................................................1

LEGAL STANDARD ...............................................................................................4

ARGUMENT...........................................................................................................5

    I. DEFENDANTS LACKED PROBABLE CAUSE TO ARREST PLAINTIFF……...……...5

        A.     The NYC DOT Traffic Rules Permit Plaintiff to use the roadway upon the lawful order of any law enforcement officer ………………………………………………….5

        B.     Defendants Dispersal Order Was Unlawful and Failed to Give Plaintiff a Reasonable Opportunity to Comply…...………………………………………….7

    II. PLAINTIFF SUFFICIENTLY PLED A CLAIM FOR EXCESSIVE FORCE…………...8

    III. THE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY………………11

        A.     The Individual Officers Are Not Entitled to Qualified Immunity on Plaintiff's False Arrest and First Amendment Retaliation Claims…………………………11

        B.     The Individual Officers Are Not Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim……..……………………………………..……………...14

    IV. PLAINTIFF SUFFICIENTLY PLED A CLAIM FOR FAILURE TO INTERVENE…...16

    V. PLAINTIFF'S MONELL CLAIMS ARE SUFFICIENTLY PLED…………...………..17

        A.     Plaintiff Plausibly Plead a Failure to Train and Supervise officers Regarding Dispersal Orders and Ensuring a Meaningful Opportunity to Comply Amounting to Deliberate Indifference ………………………………………………..………18

        B.     Plaintiffs Plausibly Plead a Widespread Custom and Practice of Excessive Force, False Arrests, and Infringement of Plaintiffs' First Amendment Rights ………20

    VI. PLAINTIFF'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF

EMOTIONAL DISTRESS ARE SUFFICIENTLY PLED……………………..……………….22

VII. DEFENDANTS SEEK TO IMPROPERLY REARGUE A MOTION PREVIOUSLY
DECIDED BY THE COURT …………..……….………………….……………...24

VIII. THE COURT SHOULD EXCLUDE BODY WORN CAMERA VIDEO FROM ITS
CONSIDERATION…………………………………………………………………...25

CONCLUSION.....................................................................................................................26

# Table of Authorities

## Cases

*Amore v. Novarro,* 624 F.3d 522 (2d Cir.2010) ........................................................12

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)........................................................17

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). ..............................................14

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, (2009).......................................4

*Ashcroft v. Iqbal*, 556 US 662 (2008) .............................................................................4

*Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107 (2d Cir.2004) .......14

*Baker v. City of New York,* 551 F. Supp. 3d 258 (S.D.N.Y. 2021)...............................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65 (2007.....4

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) ............................................................................................................................4

*Blackwell v. Town of Greenburgh*, 2017 WL 1157168 (S.D.N.Y. Mar. 27, 2017). ......15

*Brodeur v. City of New York*, 99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500 (S.D.N.Y. 2002) .......................................................................................................................................4

*Brown v. City of New York*, 798 F.3d 94 (2d Cir. 2015) .................................................9

*Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017). ...........................................16

*Bryan Cty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382  (1997)................................18

Cabral v. City of New York, No. 12-CV-4659 (LGS), 2014 WL 4636433 (S.D.N.Y. Sept. 17, 2014) ...............................................................................................................................9

*Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989). ....................................18

*Carney v. Bos. Mkt.*, No. 18 Civ. 713 (LGS), 2018 WL 6698444 (S.D.N.Y. Dec. 20, 2018). ......24

*Case v. City of New York*, 233 F. Supp. 3d 372 (S.D.N.Y. 2017). ...........................................6, 19

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ................................................................19

*Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350 (2011)................................................18

*Cugini v. City of New York*, 941 F.3d 604  (2d Cir. 2019). ..................................................10, 11

*Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588 (2004) ...................................................8

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010)................................................................7

*Dinler v. City of New York*, 2021 U.S. Dist. LEXI (SDNY Sept. 30, 2012)..............................10

*Dinler v. City of New York*, No. 04 Civ. 7921, 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012) ...........................................................................................................................................6

*Escalera v. Lunn,* 361 F.3d 737 (2d Cir.2004). .........................................................................11

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168 ( 2d Cir. 2004) ............................................................................................................................................4

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir.2004)………..........................................................................................................................4

*Felix v. City of New York*, 344 F. Supp. 3d 644 (S.D.N.Y. 2018) .............................................19

*Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982))............................................................................17

*Garcia v. Does*, 779 F.3d 84 (2d Cir. 2015)..............................................................................13

*Gavin v. City of New York,* 20-cv-08163 (JPO) (2020). ............................................................19

*Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). .................................................9

*Higginbotham v. City of New York*, 2015 WL 2212242 at *4 (SDNY May 12, 2015) ...............11

*Hishon v. King*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). ...................................5

*Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002) .............................................14

*Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, (2002)........................................................14

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir.2006)..............................................................................6

*Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501 (S.D.N.Y. 2008) ............................................17

*Jenkins v. City of New York*, 478 F.3d 76 (2dCir. 2007)............................................................19

*Jones v. City of Hartford*, 285 F. Supp. 2d 174 (D. Conn. 2003) ..............................................16

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006)......................................................................12, 14

<u>*Jones v. Parmley*</u>, 465 F.3d 46, 53 (2d Cir. 2006) ........................................................................15

*Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151 (2001). ......................................................................12

*Landy v. Irizarry*, 884 F. Supp. 788 (S.D.N.Y. 1995)). ............................................................15

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995). ............................................................................9

*Lennox v. Miller*, 968 F.3d 150 (2d Cir. 2020)..........................................................................16

Marom v. City of New York, No. 15-cv-2017,2016 WL 916424 (S.D.N.Y. Mar. 7, 2016). .......19

*Monell v. Department of Social Services*, 436 U.S. (1978),........................................................18

*Peat v. City of New York*, No. 12 Civ. 08230 (S.D.N.Y.). ..........................................................20

*Philadelphia,* 409 F.3d 595 (3d Cir.2005). ................................................................................8

*Pluma v. City of New York*, No. 13 CIV. 2017 LAP, 2015 WL 1623828 (S.D.N.Y. Mar. 31, 2015)….......................................................................................................................................16

*Rizk v. City of New York*, 462 F. Supp. 3d 203 (E.D.N.Y. 2020). ................................................9

*Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007)………………………………………….25

*Sec. & Exch. Comm'n v. Medallion Fin. Corp.,* No. 21-CV-11125 (LAK), 2022 WL 3043224, at *1 (S.D.N.Y. Aug. 2, 2022)…………………………………………………………………...25

*Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, (2001); ....................................................14

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).............................4

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 40 L.Ed.2d 90 (1974 .........................................4

*Sillam v. Labaton Sucharow LLP*, 2022 WL 1036635, at *5 (S.D.N.Y. Apr. 5, 2022..............25

*Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588 (2004)....................................................7

*Tracy v. Freshwater*, 623 F.3d 90 (2d Cir.2010). .......................................................................16

*Triano v. Town of Harrison*, 895 F.Supp.2d 526 (S.D.N.Y. 2012 .............................................18

*Truman v. Brown*, 434 F. Supp. 3d 100 (S.D.N.Y. 2020). ...........................................................24

*United States v. Jones,* 432 F.3d 34 (1st Cir.2005).......................................................................8

*Vodak v. City of Chicago*, 639 F.3d 738 (11th Cir. 2011)...........................................................7

*Vodak v. City of Chicago*, 639 F.3d 738(7th Cir. 2011) ............................................................6

Zalaski v. City of Hartford, 723 F. 3d 382 (2d Cir. 2013) ..........................................................11

*Zellner v. Summerlin*, 494 F.3d 344, 368 ( 2d Cir 2007) ............................................................4

## **Statutes**

§4-03(a...........................................................................................................................................5

§4-07 ..............................................................................................................................................5

§4-12(o)..........................................................................................................................................5

28 U.S.C. §1927............................................................................................................................25

34 R.C.N.Y. §4-04(a) ..............................................................................................................5, 13

34 R.C.N.Y. §4-12(o)....................................................................................................................5

34 R.C.N.Y. §4-12(o)(1) ..............................................................................................................10

42 U.S.C. §1983............................................................................................................................11

## **Federal Rules**

Fed. R. Civ. P 11...........................................................................................................................25

Fed. R. Civ. P. 12(b)(6), .................................................................................................................4

Fed. R. Civ. P. 12(c)......................................................................................................5

Fed. R. Civ. P. 15 (a)(1)(B) ........................................................................................25

## PRELIMINARY STATEMENT

Plaintiff, Maila Beach, submits this Memorandum of Law and the accompanying Declaration of Tahanie Aboushi ("Aboushi Decl.") inclusive of exhibits attached thereto, in Opposition to Defendants' Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF FACTS

The crux of Defendants' Motion to dismiss rests upon defense counsel's interpretation of four body worn camera ("BWC") videos[1] that were carefully selected and produced from dozens of other BWC videos which Defendants continue to withhold. Defendants do not attack the pleading sufficiency of the FAC, with the exception of Plaintiff's *Monell* claim, as required under Fed. R. Civ. P. 12 (b). Instead, Defendants allege probable cause existed to arrest Plaintiff and detain her and that the officers were entitled to use reasonable force to take Plaintiff into custody. (Def. Mem. at 9, 10). The BWC videos are ambiguous and not properly before the court as dozens more have yet to be produced. The Parties do not dispute that on April 24, 2021 at approximately 7pm, Plaintiff was engaged in lawful First Amendment activity when she was protesting on the Brooklyn Bridge. (First Amended Complaint ("FAC"), Aboushi as Exhibit 1 ECF No. 35). While Plaintiff and other protesters were walking through the roadway of the Brooklyn Bridge, the New York Police Department ("NYPD") issued a dispersal order via a long-range acoustic device ("LRAD"). (FAC ¶16). The dispersal order directed the protestors to continue over the [Brooklyn] bridge into Manhattan. (FAC ¶16; Ibrahim Decl. Exh. A at 14:54). For the majority of the protest,

---

[1] Plaintiff responds to the contents of the BWC videos attached to the Declaration of Nadine Ibrahim as Exhibits A-D for the limited purpose of this motion and otherwise insists that all BWC video should be excluded from the court's consideration at this time. The videos attached in Aboushi Decl. Exh. 5a-m are offered for the sole purpose of establishing that BWC videos produced in response to a FOIL request were blurred and that Defendants failed to produce all BWC videos per the Court's Order issued on January 25, 2022.

NYPD officers escorted the group of protestors, which included Plaintiff, over the bridge. (Ibrahim Decl. Exh. A-D). As Defendants admit, Plaintiff abided by the dispersal order and was walking across the bridge towards Manhattan. (FAC ¶17; Ibrahim Decl. Exh. A at 15:07). While Plaintiff and the group of protestors were walking, a police officer picks up his bicycle and rams it into Plaintiff while simultaneously yelling "move back" in contradiction of the dispersal order issued. (FAC ¶17; Ibrahim Decl. Exh. A at 17:04 -17:07). The officer continues to repeatedly ram his bicycle into Plaintiff while yelling "move back" without clarifying where he wanted her or the group to go and while the LRAD repeatedly directed the group to continue walking towards Manhattan. (Ibrahim Decl. Exh. A at 17:08-17:18). As the officer was ramming his bicycle into the crowd, Defendant Dominguez indiscriminately sprayed oleorsin capsicum ("OC spray") into the crowd and sprayed Plaintiff with it in her face at close range thereby preventing Plaintiff from complying with the orders to continue walking to Manhattan. (FAC ¶18; Ibrahim Decl. Exh. A at 17:32).

Defendant-officers then grabbed and threw Plaintiff to the ground. (Ibrahim Decl. Exh. B at 15:02-15:06; FAC ¶19). Defendants assaulted Plaintiff with their arms, hands and batons and did so despite Plaintiff telling the officers that she was epileptic and prone to seizures. (FAC ¶19). Defendants pulled Plaintiff's shirt up exposing her stomach and her bra and she pleaded with officers to pull her shirt down. (Ibrahim Decl. Exh. B at 15:37-15:40; FAC ¶22). Defendants admit that at the time Plaintiff was on the ground her pants were completely on. (Def. Mem. at 4). While Plaintiff laid on her stomach with her hands behind her back, Defendants placed her in flexcuffs so tight that she lost feeling in her fingers and her hands became numb. (FAC ¶23).

Defendants then lifted Plaintiff off of the ground and took her to a police transport van while her shirt remain lifted. (FAC ¶24). While walking to the transport van, Plaintiff's stomach

remained exposed and she repeatedly told the officers escorting her and at least 6 other officers that were watching, that her pants were going to fall down and at this time her pants were still up and covering her legs and her buttocks. (Ibrahim Decl. Exh. D at 01:44). One of the escorting officers, Defendant Officer #5, pulled Plaintiff's pants down. (FAC ¶25; Ibrahim Decl. Exh. C at 06:23; Exh. D at 02:55). Plaintiff immediately yelled for the officers to pull her pants back up. (Ibrahim Decl. Exh. D at 01:48-02:14). Defendants ignored Plaintiff's plea. Id. One witness yelled for the officers to pull Plaintiff's pants back up. (Ibrahim Decl. Exh. D at 01:54). Another witness told the officers: "put her pants back on, you can't fucking do that." (Ibrahim Decl. Exh. D at 02:09). Defendants instead left Plaintiff standing nearly naked as she says "Really, you guys are going to leave me out here with my pants down? (Ibrahim Decl. Exh. D at 02:26-02:33). Plaintiff asked Defendants to at least pull her shirt down since they already took her pants off and exposed her to everyone. (Ibrahim Decl. Exh. C at 08:36-08:45). Defendants then haphazardly pulled Plaintiff's pants up. (Ibrahim Decl. Exh. D at 03:02). Plaintiff told Defendants that they did not properly pull her pants back up. (Ibrahim Decl. Exh. C at 08:58). An officer then directs Plaintiff to get into the transport van and as she does, her entire buttocks is exposed and recorded on the BWC in the presence of at least three police officers. (Ibrahim Decl. Exh. D at 04:53; Exh. C at 09:23). An officer attempts to push Plaintiff into the van and she told them again to watch her head because she has epilepsy. (Ibrahim Decl. Exh. D at 4:57). After placing Plaintiff in the transport van, an officer mocks Plaintiff and while laughing says "she fucking mooned the shit out of me." (Ibrahim Decl. Exh. D at 05:29). Defendant Dowling issued a criminal summons to Plaintiff pursuant to TR 4-12(o)(1)I on April 24, 2022 and said charge was later dismissed in Plaintiff's favor on February 18, 2022. (Aboushi Decl. Exh. 7 Certificate of Disposition and Exh. 6 NYC DOT Traffic Rules, FAC ¶¶27, 28).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007).

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court typically must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor." *Brodeur v. City of New York*, 99-CV-651 (WHP), 2002 U.S. Dist. LEXIS 4500, at *6 (S.D.N.Y. 2002) (internal citations omitted). So, the issue is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir.2004) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

To the extent there are any disputed facts related to probable cause or any other material matter, they are for a jury to decide. *See, e.g., Zellner v. Summerlin*, 494 F.3d 344, 368, 371 (2d Cir. 2007) (citing cases). As long as there is enough factual matter to 'nudge[ plaintiffs'] claims…'across the line from conceivable to plausible,'" the case should proceed to discovery. *Ashcroft v. Iqbal*, 556 US 662, 680 (2008), quoting *Twombly*, 550 U.S. at 570.While Defendants

move pursuant to Rule 12(b)(6), Defendants also seek a judgment on the pleadings although they do not cite to Fed. R. Civ. P. 12(c) and have not filed an Answer in this matter. Therefore, the pleadings are not closed and Defendants' motion should be denied. Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

## **ARGUMENT**

### I. DEFENDANTS LACKED PROBABLE CAUSE TO ARREST PLAINTIFF

### A. The NYC DOT Traffic Rules Permit Plaintiff to Use the Roadway Upon the Lawful Order of Any Law Enforcement Officer

Plaintiff was charged under the New York City Department of Transportation Traffic Rules Title 34 Chapter 4 of the Rules of the City of New York. Defendants focus only on 34 R.C.N.Y. §4-12(o) Use of Roadways which states that: Use of roadway: (1) Pedestrians, horses, bicycles and limited use vehicles prohibited. In order to provide for the maximum safe use of the expressways, drives, highways, interstate routes, bridges and thruways set forth in §4-07 subdivision (i) of these rules and to preserve life and limb thereon, the use of such highways by pedestrians, riders of horses and operators of limited use vehicles and bicycles is prohibited, unless signs permit such use. (Aboushi Decl. Exh. 6).

However, §4-12(o) cannot be read alone as the 34 R.C.N.Y. provides guidance as to the applicability and exceptions of the rules. 34 R.C.N.Y. §4-04(a) titled "Pedestrians" states that (a) Pedestrians subject to traffic rules, except as otherwise provided herein: Pedestrians shall be subject to traffic control signals and pedestrian control signals as provided in §§4-03(a) and 4-03(c) of these rules and **to the lawful orders and directions of any law enforcement officer**... Because 34 R.C.N.Y. permits Pedestrians to follow the lawful orders and directions of any law enforcement officer and Plaintiff was in fact following the NYPD's order to continue over the

bridge to Manhattan, she was permitted to use the roadway of the Brooklyn Bridge until she could fully comply with said order and thus her claims for false arrest and first amendment retaliation are properly pled and sufficient to survive a motion to dismiss.

## B. Defendants Dispersal Order Was Unlawful and Failed to Give Plaintiff a Reasonable Opportunity to Comply

Defendants do not deny that Plaintiff was following the order and directions of the NYPD when she used the roadway of the Brooklyn Bridge to continue into Manhattan along with the group of protestors. (Def. Mem. at 2, 3). Defendants focus on the point where an officer yelled "move back" then proceeded to ram his bicycle into the crowd. Defendants failed to clearly communicate the order and to give Plaintiff an opportunity to comply. "[W]hether the police had probable cause to arrest [Plaintiff] for defying a police order turns on two factors. The first is whether, and to what extent, the police communicated their orders to the entire crowd." *Dinler v. City of New York*, No. 04 Civ. 7921, 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012) (citing *Vodak v. City of Chicago*, 639 F.3d 738, 745 (7th Cir. 2011) ("[B]efore the police could start arresting peaceable demonstrators for defying their orders they had to communicate the orders to the demonstrators.")). "The second is whether the demonstrators were given an opportunity to comply with those orders—that is, whether they indeed refused to do so." Id.; *Case v. City of New York*, 233 F. Supp. 3d 372, 384 (S.D.N.Y. 2017).

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir.2006) (internal quotation marks omitted). Probable cause is based on the facts warranting arrest and not the statute pursuant to which a plaintiff was charged. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d

537 (2004) (finding that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Jaegly*, 439 F.3d at 153 ("The [Supreme] Court [has] rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense 'closely related' to the offense invoked by the arresting officer...."). *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

Here, Defendants admit that the NYPD issued a dispersal order directing the group of protestors to continue walking over the roadway of the Brooklyn Bridge into Manhattan. (Def. Mem. at 3; Ibrahim Decl. Exh. A at 14:54). For the entirety of the protest, NYPD officers on bicycles, foot and in vehicles, followed the protestors over the roadway towards Manhattan without effectuating any arrest because of the dispersal order given. (Ibrahim Decl. Exh. A-D). Therefore, Defendants lacked probable cause to arrest plaintiff without fair warning, after having escorted and facilitated the protest of a prolonged period of time. "The Fourth Amendment does not permit the police to say to a person go ahead and march and then, five minutes later, having revoked the permission for the march without notice to anyone, arrest the person for having marched without police permission." *Dinler*, 2012 US Dist. LEXIS 141851 at *33-34, quoting *Vodak v. City of Chicago*, 639 F.3d 738, 746-47 (11th Cir. 2011). The *Dinler* court made clear that, where police actually or apparently facilitate or otherwise allow a protest to continue that might otherwise be prohibited police must give fair notice before taking enforcement actions, such as making arrest.

Defendants contend that Plaintiff essentially walked to slow and locked arms with other protestors warranting an officer to shove his bike into Plaintiff while yelling move back. (Def. Mem. at 3). However, Defendant Officer John Doe #1without warning or reason, rammed his bicycle into Plaintiff and the group while simultaneously ordering the group to "move back" while the NYPD directed protestors to continue over the bridge into Manhattan. (FAC ¶17). Immediately

thereafter, Defendant Dominguez indiscriminately sprayed OC spray at the crowd, including Plaintiff. (FAC ¶18). Quite contrary to Defendants docile version of events, BWC video clearly shows that Defendants did not clearly communicate the order to move back to the group of protesters then assaulted Plaintiff with bicycles and deployed OC spray thereby not giving Plaintiff a chance to comply. (Ibrahim Decl. Exh. A at 17:04-17:07).

The Supreme Court recently held that the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). The Court thus rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense "closely related" to the offense invoked by the arresting officer, and stated that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.; see also United States v. Jones,* 432 F.3d 34, 41 (1st Cir.2005) ("[T]he probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest."); *Wright v. City of Philadelphia,* 409 F.3d 595, 603–04 (3d Cir.2005). Thus, Defendants did not have probable cause to arrest Plaintiff as they were aware that NYPD officials had permitted Plaintiff to continue over the bridge to Manhattan.

## II.    PLAINTIFF SUFFICIENTLY PLEAD A CLAIM FOR EXCESSIVE FORCE

Defendants make sweeping conclusory statements to justify assaulting and stripping Plaintiff based upon defense counsel's interpretation of a carefully selected few BWC videos. Defendants then fill in material gaps of the defense by alleging that the BWC videos produced do not depict officers assaulting Plaintiff or that she informed them of her epilepsy condition. (Def. Mem. at 11). However, simply because Defendants have not produced all BWC pertaining to this

incident in violation of the court's January 25, 20222, it cannot be concluded that Plaintiff did not inform Defendants of her condition or that no BWC video exist depicting the same.

"[E]xcept for § 1983's requirement that the tort be committed under color of state law, the elements for a claim of assault and battery against law enforcement officers under New York law and a claim of excessive force under §1983 are the same." *Cabral v. City of New York*, No. 12-CV-4659 (LGS), 2014 WL 4636433, at *10 (S.D.N.Y. Sept. 17, 2014) (quotation marks and citation omitted), *aff'd*, 662 F. App'x 11 (2d Cir. 2016). <u>Rizk v. City of New York</u>, 462 F. Supp. 3d 203, 229 (E.D.N.Y. 2020).

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). A police officer's use of force is "excessive" in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances known to the officer. *Lennon v. Miller*, 66 F.3d 416, 425–26 (2d Cir. 1995). To determine whether the amount of force applied to a plaintiff was unreasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865.

Here, Defendants do not allege that Plaintiff posed a threat or attempted to evade arrest. Defendants allege that force was reasonable because Plaintiff was locked arms with protestors around her and it would have been unreasonable for officers to simply arrest Plaintiff standing up. (Def. Mem. at 11). What Defendants essentially claim is a theory of group probable cause which has been rejected by courts because each arrest requires individual probable cause. *Dinler v. City*

*of New York*, 2021 U.S. Dist. LEXIS 141851 (SDNY Sept. 30, 2012). *Dinler* considered whether NYPD members had probable cause to engage in "mass arrests" of protesters at two different arrest locations based on a theory of "'group probable cause'" under which police asserted they had authority "to arrest an entire group of individuals 'where it reasonably appears to the police that a large group is engaging in unlawful conduct.'" *Id.* at 8-9, 14-15. The *Dinler* Court rejected Defendants' proposition there was any such thing as "group probable cause". Here, Defendants badly allege, that "protestors were interfering with arrests by physically pulling each other from officers to avoid arrest" and therefore it was "reasonable for officer to believe the same would have happened with the arrest of plaintiff". (Def. Mem. at 11). While also false, these claims do not justify Plaintiff's arrest and Defendants' use of excessive force which included pepper spraying her in the face, slamming her to the ground, assaulting her and removing her clothing. (FAC ¶¶ 17-19, 21-27). Noticeable missing from Defendants position is justification for removing Plaintiff's pants and lifting her shirt, and forcing her to remain with her pants down until she arrived at the police station for processing. A reasonable jury could find that Defendants' actions were objectively unreasonable in light of the minor nature of the plaintiff's alleged crime, [a misdemeanor offense of unlawful eviction], the circumstances of her arrest, and the fact that the plaintiff posed no apparent risk of flight or physical threat to the police or others. Defendant was also reasonably made aware of the plaintiff's pain, both as a result of her signs of distress—her repeated audible, if not verbal, expressions of pain—and because the unreasonableness of the force used by the defendant was apparent under the circumstances. *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019).

Applied here, the charge at issue is not a crime but a traffic infraction: 34 R.C.N.Y. §4-12(o)(1), a relatively minor one. Plaintiff also verbally told Defendants that she had epilepsy before

they arrested and assaulted her. (FAC ¶19). After she was handcuffed, Plaintiff complained that the handcuffs were too tight and that they caused her to lose feeling in her fingers and he hands became numb. (FAC¶23). On an excessive force claim involving handcuffing, "a plaintiff asserting a claim for excessive force need not always establish that [the plaintiff] alerted an officer to the fact that [the] handcuffs were too tight or causing pain," and the operative inquiry is "whether an officer reasonably should have known during handcuffing that [the officer's] use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). A plaintiff satisfies this threshold if either "the unreasonableness of the force was apparent" or the plaintiff signaled his distress "verbally or otherwise, such that a reasonable officer would have been aware of [the plaintiff's] pain." "Baker v. City of New York, 551 F. Supp. 3d 258, 266 (S.D.N.Y. 2021). Based upon the foregoing, Defendants' use of force was excessive, unreasonable and sufficient to establish claims under both 42 U.S.C. §1983 and State law claims for assault and battery.

## III. THE OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

### A. The Individual Officers Are Not Entitled to Qualified Immunity on Plaintiff's False Arrest and First Amendment Retaliation Claims

On "a motion to dismiss, …a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle…' and is usually not successful.'" *Higginbotham v. City of New York*, 2015 WL 2212242 at *4 (SDNY May 12, 2015) (internal citations omitted). An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had "arguable probable cause" to arrest the plaintiff. *Zalaski v. City of Hartford,* 723 F. 3d 382, 390 (2d Cir. 2013) (internal quotation marks omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.,* quoting *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004). "In deciding whether an

officer's conduct was objectively reasonable ..., we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir.2010) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It is well established there is neither probable cause, nor arguable probable cause, to arrest a person for refusing to comply with a dispersal order where "the dispersal orders given were neither sufficiently communicated nor followed by an opportunity to comply," *Case I*, 233 F.Supp.3d at 384-85, citing *Dinler*, 2012 US Dist. LEXIS141851, at *34-36; accord, *Case II*, 408 F.Supp.3d at 322 (denying summary judgment where "[t]estimony regarding…whether orders to disperse were adequately communicated before" the arrest was made was "sharply disputed").

In the protest context, the Supreme Court has already well articulated the contours of the right and made clear that the police may not interfere with demonstrations unless there is a "clear and present danger" of riot, imminent violence, interference with traffic or other immediate threat to public safety. *Jones v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006). Here, Defendants do not allege clear and present danger of riot, imminent violence, interference with traffic or other immediate threat to public safety. None of the BWC videos attached to the Ibrahim Declaration shows any interference with traffic even for the portions of the bridge where the protest had passed through. The BWC videos do show dozens of police officers on bicycles and NYPD cruisers and transport vans littered across the roadway of the bridge starting from the entrance on the Brooklyn side and continuing to where the protestors had reached. Furthermore, protestors could be seen telling

officers that they are walking and pleaded with officers to not assault them. (Ibrahim Decl. Exh. A at 15:12).

Defendants erroneously rely on *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) in support of their argument for qualified immunity. In *Garcia,* protestors entered the roadway of the Brooklyn Bridge and an officer announced through a bullhorn that those on the roadway would be arrested for disorderly conduct and the plaintiffs were in fact charged with disorderly conduct. The plaintiffs there alleged that they had apparent and actual permission from NYPD for the march to proceed based upon, in part, the officers' having followed along the course of the march before the arrival at the Bridge without interfering with, and occasionally facilitating, minor breaches of traffic rules. *Id.* at 90. However, the court found that although officers escorted those plaintiffs over the roadway of the Brooklyn bridge, that alone did not carry the burden since those plaintiffs did not allege that any officer explicitly stated that the marchers would be permitted to advance along the vehicular lanes of the Bridge. Here, Defendants gave Plaintiff explicit permission to advance along the roadway of the Brooklyn bridge per the initial dispersal order. The Defendant Officers were also certainly aware that an official had expressly authorized the protesters to cross the Bridge via the roadway. By issuing the specific order to continue through the roadway into Manhattan, Defendants made Plaintiff's actions lawful and waived the enforcement of any traffic regulation. *Garcia*, 779 F.3d at d95. Moreover, 34 R.C.N.Y. §4-04(a) states that pedestrians are subject to the traffic rules and to the lawful orders and directions of any law enforcement officer. Thus, the facts here establish a defense as a matter of law and that such defense was so clearly apparent to the officers on the scene, that any reasonable officer would have appreciated that there was no legal basis for arresting Plaintiff because crossing the roadway of the Brooklyn Bridge was affirmatively authorized by the police.

**B. The Individual Officers Are Not Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim**

The Supreme Court has established a two-part inquiry to determine when a district court should hold that the doctrine of qualified immunity bars a suit against government officials: (1) the court must first consider whether the facts alleged, when taken in the light most favorable to the party asserting the injury, demonstrate a violation of a constitutional right, *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); and (2) the court must then consider whether the officials' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known," *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). *Jones v. Parmley*, 465 F.3d 46, 55 (2d Cir. 2006). Finally, we are mindful that the right at issue in a qualified immunity case need not be limited to the specific factual situation in which that right was articulated. Indeed, "the Supreme Court has declined to say that 'an official action is protected by qualified immunity unless the very action in question has previously been held unlawful,' and has, instead, chosen a standard that excludes such immunity if 'in the light of pre-existing law the unlawfulness [is] apparent.' " *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 129 (2d Cir.2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002). "The very action in question [need not have] previously been held unlawful," *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 640 (1986). Rather, "in the light of pre-existing law[,] the unlawfulness must [have been] apparent and "does not require a case directly on point." *Id.*

Defendants severely misstate the issue of force in this case. Defendants claim that the officers' use of OC spray to subdue plaintiff prior to her arrest, and then subsequently taking her to the ground and arresting her is not a violation of the Fourth amendment because precedent exist permitting the use of OC spray on an uncooperative subject. What Defendants actually did was

use OC spray on Plaintiff and the group based upon the assumption that other protestors would try to interfere with Plaintiff's arrest. Defendants then beat Plaintiff about her head and body, pulled her pants down exposing her buttocks to dozens of officers and other protestors, lifted her shirt exposing her to stomach and bra to dozens of officers and other protestors then falsely arrested for use of the roadway knowing police gave explicit authorization for her to use the roadway. Defendants do not allege that Plaintiff resisted arrest or caused a danger to others. Furthermore, defendants' order to "move back" was made at the same time the officer rammed his bicycle into the crowd multiple times, as another officer pepper sprayed the group causing complete chaos and panic.

The Second Circuit has never held that serious injury is required to prevail on a Fourth Amendment excessive force claim. *Blackwell v. Town of Greenburgh*, 2017 WL 1157168, at *11 (S.D.N.Y. Mar. 27, 2017). "In excessive force cases generally, 'the fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide.'" *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995)). Defendants violently taking Plaintiff to the ground without warning or provocation constitutes excessive force and Plaintiff has pled injury as a result thereof. (FAC ¶¶67, 78, 86, 101, 108-109, 132, 141, 151, 159). Since at least 2006, it has been clearly established in this Circuit that taking a non-resisting suspect violently to the ground without warning or provocation constitutes excessive force. <u>See</u> <u>Jones v. Parmley</u>, 465 F.3d 46, 53, 63 (2d Cir. 2006) (denying qualified immunity where officers, "without provocation," "warning, or justification," "threw several plaintiffs to the ground" during protest).

Plaintiff did not resist arrest but AS Defendants admit, "Plaintiff is heard mentioning something about her shirt several times" (Def. Mem. at 4; Ibrahim Decl. Exh B at 15:25). Using force against an arrestee who is not actively resisting constitutes excessive force. "It was ... clearly

established by [Second] Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting." *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020) 157 (citing *Jones*, 963 F.3d at 225; *Brown v. City of New York*, 862 F.3d 182, 191 (2d Cir. 2017)). Thus, no officer of reasonable competence would have concluded that Defendants' conduct herein was proper.

Defendant Dominguez's indiscriminate use of OC spray upon the group of protestors constitutes excessive force in violation of the Fourth Amendment. The Court of Appeals for the Second Circuit has recognized that pepper spray "constitutes a significant degree of force" with "a variety of incapacitating and painful effects," which supports the notion that its infliction alone may constitute a restraint. *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir.2010). Indeed, several courts outside this Circuit have acknowledged more specifically that the implementation of pepper spray absent an arrest constitutes a restraint cognizable under the Fourth Amendment. *Pluma v. City of New York*, No. 13 CIV. 2017 LAP, 2015 WL 1623828, at *4 (S.D.N.Y. Mar. 31, 2015). It is undisputed that Defendant Dominguez deployed OC spray prior to the initiation of any arrest.

Defendants' removal of Plaintiff's pants and lifting her shirt in an attempt to humiliate and harass her constitutes excessive force in violation of the Fourth Amendment. In *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 181 (D. Conn. 2003), the plaintiff alleged that the arresting officer took off his belt, and then ripped off and allegedly pulled down plaintiff's pants and underwear. *Id.* at 181 The defendant there, as Defendants herein do, admitted that the plaintiff's pants fell down. *Id.* The court concluded that plaintiff had clearly alleged sufficient facts to establish a violation of his Fourth Amendment rights. *Jones v. City of Hartford*, 285 F. Supp. 2d 174, 181 (D. Conn. 2003). Thus, the individual Defendant officers are not entitled to qualified immunity.

## IV.    PLAINTIFF SUFFICIENTLY PLED A CLAIM FOR FAILURE TO INTERVENE

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used ...; (2) that a citizen has been unjustifiably arrested ...; or (3) that any constitutional violation has been committed by a law enforcement official ...." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill,* 839 F.2d at 11–12; *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982)). Such liability attaches "only when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11–12).

Defendants do not meaningfully move to dismiss Plaintiff's failure to intervene claim and provide no argument in support of what is essentially a header. Plaintiff has clearly established the violation of her constitutional rights as argued throughout her opposition. None of the officers standing around intervened to prevent the assault of Plaintiff and the exposure of her body. Defendant Officer John Doe #6, was present when Defendant Officer #5 pulled Plaintiff's pants down and failed to intervene to prevent that harm knowing her constitutional rights under the Fourth Amendment were being violated. Plaintiff was made to walk with her pants down in the presence of dozens of other officers as she screamed for Defendant Officers #5 and #6 to pull her pants back up and other arrestees and witnesses screamed for the same. Yet no officer intervened to prevent the harm although having had a reasonable opportunity to do so.

## V. PLAINTIFF'S MONELL CLAIMS ARE SUFFICIENTLY PLED

Plaintiff adequately pleads three theories of Monell liability, based upon (1) Defendants' customs, practices, and policies; (2) Defendants' failure to train; and (3) Defendants' failure to supervise, investigate, and discipline all of which resulted in violation of her constitutional rights.

In support of Plaintiff's municipal liability claims brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the FAC cites and relies on three government reports (FAC ¶¶ 32-35, 49, 55-59; Aboushi Decl. Exh. 2-4) as well as a number of other federal civil rights lawsuits arising from the NYPD's treatment of protests during the same time period (FAC ¶¶ 37-40,54, Aboushi Decl. Exh. 8, 9) and lawsuits and reports arising from past NYPD protest policing policies, practices, and customs, which the FAC connects to the development of the protest policies, practices, and customs Plaintiff challenges in this lawsuit. (FAC ¶¶35, 38, 4245, 56-57).

To establish a municipal policy or custom, a plaintiff must allege that: (1) "a particular municipal action itself violates federal law, or directs an employee to do so," *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); (2) an "authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right," *id.* at 405, 117 S.Ct. 1382; (3) unconstitutional "practices [are] so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); or (4) a municipality's failure to train its employees "about their legal duty to avoid violating citizens' rights" amounts to "deliberate indifference," *id.* Moreover, "there must be a 'direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation.'" *Triano v. Town of Harrison*, 895 F.Supp.2d 526, 531 (S.D.N.Y. 2012) (quoting City of *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

## A. Plaintiff Plausibly Plead a Failure to Train and Supervise officers Regarding Dispersal Orders and Ensuring a Meaningful Opportunity to Comply Amounting to Deliberate Indifference

Although "the inadequacy of police training may serve as a basis for § 1983 liability," such liability arises "only where the failure to train amounts to deliberate indifference to the

rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). The Second Circuit has established three requirements for showing deliberate indifference: (1) "the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2dCir. 2007). Marom v. City of New York, No. 15-cv-2017,2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016).

It is undeniable that NYPD officers will encounter and attempt to disperse protests. *See City of Canton*, 489 U.S. at 390 n.10 (limiting moral-certainty analysis to whether police will encounter the specific policing circumstance at issue, not a police department's likelihood of violating rights in that circumstance); accord *Felix v. City of New York*, 344 F. Supp. 3d 644, 660 (S.D.N.Y. 2018). It is similarly apparent that rights violations will occur if NYPD officers order protesters to disperse, provide protesters with no opportunity to disperse, and then begin enforcing the dispersal order. *Marom*, 2016 WL 916424, at *22 ("It is plausible to infer from the[complaint], and is a matter of general common sense, that . . . NYPD officers mishandling large protests could cause constitutional deprivations"). *Gavin v. City of New York,* 20-cv-08163 (JPO) (2020).

Defendants practice of falsely arresting protestors for engaging in First Amendment activity, based on inadequate dispersal orders and resulting in charges for decades proceeded the complaint at hand. *Case v. City of New York*, 233 F. Supp. 3d 372, 407–08 (S.D.N.Y. 2017). The NYPD has made dispersal announcements without providing sufficient time or a path of egress as

members of the scooter task force blocked the protesters' path of egress. *Peat v. City of New York*, No. 12 Civ. 08230 (S.D.N.Y.). (FAC ¶37). The policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies, "concern the lawfulness and adequacy of the NYPD's dispersal orders and probable cause determinations, and bear a plausibly direct connection to Plaintiffs' false arrest and First Amendment claims. *Case v. City of New York*, 233 F. Supp. 3d 372, 407 (S.D.N.Y.).

The Court in *Case* further held, that based on the dozens of lawsuits and decade of litigation over these incidents, Plaintiffs plausibly allege that the City knew or should have known that these policies and practices led to unconstitutional results. Plaintiffs have set forth sufficient allegations to support their claim that the City failed to properly train its officers to ensure that similar constitutional violations would not be repeated, and this failure is the same training failure that led to Plaintiffs' constitutional deprivations. *Case v. City of New York*, 233 F. Supp. 3d 372, 407–08 (S.D.N.Y. 2017). Applied here, Plaintiff sufficiently pleads that the City's practice and policies of failing to issue proper dispersal orders and providing a meaningful opportunity to comply led to violations of her constitutional rights based upon the cases cited in the FAC.

## B. Plaintiffs Plausibly Plead a Widespread Custom and Practice of Excessive Force, False Arrests, and Infringement of Plaintiffs' First Amendment Rights

The FAC detailed allegations of Defendants' policy and custom of excessive force and unlawful arrests at protests, and their failure to train to prevent such unlawful conduct, states a municipal-liability claim. Plaintiff has more than sufficiently alleged a persistent, settled municipal custom and practice of which policymakers had constructive knowledge sufficient for *Monell* liability— including by alleging hundreds of individual incidents of unconstitutional policing at dozens of mass protests unfolding over many months; hundreds of Civilian Complaint Review

Board (CCRB) complaints about the NYPD's protest response; dozens of reports indicating real-time municipal awareness of and involvement in that response; the personal presence of high-level. (FAC ¶¶47-68, Aboushi Decl. Exh. 2-4,12, 13).

Plaintiff alleged misconduct that goes beyond a single isolated incident and established a pattern, practice and policy in place well before the matter at hand and cites to substantial ongoing matters pending that addressing the same issues including *People of State of New York v. City of New York et al.,* 21 -cv-0322 (CM)(GWG) and *Payne v. City of New York et al.,* 21 -cv-08942 (CM)(GWG) (FAC ¶¶40, 54, Aboushi Decl. Exh. 8, 9) wherein numerous incidents of indiscriminate use of pepper spray and excessive force was used against protestors including ramming bicycles into protestors causing chaos and injury as well as a detailed history of the NYPD pattern, policy and practice of engaging in this conduct in violation of constitutional rights.

Furthermore, Plaintiff includes reports released by the City Department of Investigation and Corporation Counsel and by Human Rights Watch (FAC ¶¶32-35, 39, 54-59) that describe the same or similar additional incidents as do the FAC and the *Payne* and *People* complaints, that document Defendants' awareness of prior litigation and CCRB complaints raising similar claims in the years preceding the 2021 protest (FAC ¶¶62), arising out of numerous demonstrations including protests during the Republican National Convention in 2004, and Occupy Wall Street in 2011.

"An obvious need may be demonstrated through proof of repeated complaints of civil rights violations" and "may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of N.Y.,* 72 F.3d 1040, 1049 (2d Cir. 1995). Plaintiff sufficiently alleged that the City has long been aware of repeated complaints of unlawful policing at protests—including complaints of excessive force,

unlawful arrests, and First Amendment restrictions—through hundreds of CCRB complaints, lawsuits, and reports. Defendants and the City's DOI have further acknowledged that the NYPD implemented no training regarding appropriate policing at large-scale protests before this lawsuit, notwithstanding the long history of complaints. Defendants admit these problematic practices, policies and customs of the NYPD as documented in at least the Department of Investigation report. (Def. Mem. 21).

This same history of unaddressed misconduct also satisfies the second prong for a failure-to-train based *Monell* claim, by demonstrating "a history of employees mishandling" policing of large protests. *See Jenkins*, 478 F.3d at 94. And there is no serious dispute "that the wrong choice" by future officers policing protests "will frequently cause the deprivation of a citizen's constitutional rights"—because that has been the case again and again in the past. *See id.*

As this Court and others have repeatedly concluded, allegations of a history of complaints and reports such as those in the complaints here easily suffice to state a *Monell* claim at the motion to dismiss stage. *See, e.g., Medina*, 2020 WL 7028688, at *8 (denying motion to dismiss failure to-train-or-supervise claim where plaintiff cited to "CCRB reports and numerous lawsuits, along with the news reports detail[ing] a pattern of NYPD officers improperly escalating encounters through the unlawful use of excessive force"); *Marlin v. City of N.Y.*, 2016 WL 4939371, at *19-21 (S.D.N.Y Sept. 7, 2016) (McMahon, J.) (same where plaintiff cited DOI and other reports of excessive force at prior protests and substantiated CCRB complaints).

## VI. PLAINTIFF'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ARE SUFFICIENTLY PLED

It is well established that a plaintiff may plead alternative theories of liability. See Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). The Second Circuit allows a party to proceed even at summary judgment with

"inconsistency" in claims, "either in the statement of the facts or in the legal theories adopted." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994). The elements of a claim for intentional infliction of emotional distress are nearly identical to a claim for negligent infliction of emotional distress. *See Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F.Supp.2d 122, 134 (E.D.N.Y.2010). The intentional infliction of emotional distress claim differs only in that it includes the element of intent to cause emotional distress. Id. ("Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. *Regeda v. City of New York*, No. 09-CV-5427 KAM VVP, 2012 WL 7157703, at *12 (E.D.N.Y. Sept. 7, 2012), report and recommendation adopted, No. 09-CV-5427 KAM VVP, 2013 WL 619567 (E.D.N.Y. Feb. 19, 2013).

"The Second Circuit has looked to New York state courts for guidance as to what conduct rises to the level of IIED, and has found that IIED claims are only sustained when they involve 'some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, permanent loss of employment, or conduct contrary to public policy.'" *Mestecky v. New York City Dep't of Educ.*, No. 13-CV-4302 (CBA) (VMS), 2018 WL 10509483, at *9 (E.D.N.Y. Sept. 7, 2018) (quoting *Stuto v. Fleishman,* 164 F.3d 820, 828 (2d Cir. 1999) 828 (surveying New York state court IIED cases)). Here, Defendants stripping Plaintiff nearly naked in public was extreme and outrageous conduct and contrary to public policy. Defendants intended to cause severe emotional distress and even mocked Plaintiff stating, "she moon the shit out of me". Dozens of officers witnessed the public humiliation of Plaintiff and only after multiple witnesses yelled for them to pull her pant back up, did Defendants even attempt to pull her pants back up, albeit haphazardly. Even then, as Plaintiff was ordered to get into the

transport van, her entire buttocks was exposed in the presence of multiple officers. As a result, Plaintiff suffered severe emotional distress.

Under the direct duty theory for a claim of Negligent Infliction of Emotional Distress, a plaintiff must allege that "she suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered her own physical safety." *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). The direct duty theory also requires "an objective inquiry turning on whether a plaintiff's physical safety was actually endangered, not a subjective evaluation dependent on the plaintiff's state of mind." *Carney v. Bos. Mkt.*, No. 18 Civ. 713 (LGS), 2018 WL 6698444, at *3 (S.D.N.Y. Dec. 20, 2018). *Truman v. Brown*, 434 F. Supp. 3d 100, 123 (S.D.N.Y. 2020). Plaintiff informed Defendants that she was epileptic at the time they grabbed her from the group of protestors thereby create a special duty owed by Defendants to Plaintiff. (FAC ¶19). Defendants disregarded Plaintiff's condition and continued to beat her about her head and body. (FAC ¶21). Defendants' only defense here is that Plaintiff's communication was not captured on the limited BWC video it provided to the court. Thus, Plaintiff has sufficiently established Defendants' conduct was extreme and outrageous and Defendants' owed Plaintiff a special duty considering her medical condition and the reasonable expectation that her clothes would not be removed.

## VII. DEFENDANTS SEEK TO IMPROPERLY REARGUE A MOTION PREVIOUSLY DECIDED BY THE COURT

Defendants seek to improperly re-argue Plaintiff's motion for leave to file an amended complaint as a matter of course pursuant to Fed. R. Civ. P. 15 (a)(1)(B), which was granted by the court on August 17, 2022. (Dkt. No. 37). In granting Plaintiff's motion, the court permitted the filing of the First Amended Complaint. (Dkt. Nos. 35, 27). By granting Plaintiff motion for leave to file an amended complaint, Defendants' first motion to dismiss and frivolous motion for sanctions were moot. The Court also permitted Defendants to decide whether they would rely upon

their first motion to dismiss or prefer to file a second motion. Counsel for Defendants informed the court that she would be filing a second motion to dismiss instead. (Dkt. No. 39). Defendants' decision further rendered their motions moot. Defendants also seek to improperly argue for sanctions without complying with the notice requirements required pursuant to Fed. R. Civ. P 11. Defense counsel fails to identify any order of the court the undersigned has violated indeed because no such order exists.

## VIII.   THE COURT SHOULD EXCLUDE BODY WORN CAMERA VIDEO FROM ITS CONSIDERATION

The BWC videos are not integral to the First Amended Complaint because Plaintiff did not rely on these in pleading her claim nor have any videos been referenced in the FAC. Moreover, Defendants have not produced all BWC as ordered by the Court. Courts in this circuit "may consider the full text of documents that are ... incorporated by reference in, or 'integral' to the complaint." (quoting *Sillam v. Labaton Sucharow LLP*, 2022 WL 1036635, at *5 (S.D.N.Y. Apr. 5, 2022) (internal citation omitted)). The Court should exclude from consideration on this motion all materials outside the first amended complaint under principles recently summarized in *SEC v. Medallion Financial Corp.*, No. 2 l-cv-11125 (LAK), 2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022) and decline to convert this motion into one for summary judgment. *See* Fed. R. Civ. P. 12(d). Motions to Dismiss are not occasions for arguing cases on contested facts, occasions which arise later in the course of the lawsuits. *Sec. & Exch. Comm'n v. Medallion Fin. Corp.,* No. 21-CV-11125 (LAK), 2022 WL 3043224, at *1 (S.D.N.Y. Aug. 2, 2022). Moreover, even documents that may be considered on a motion to dismiss normally should not be considered for the truth of any statements made therein. *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). This makes sense given that the Court should not find facts by weighing competing inferences on a motion to dismiss. *Sec. & Exch. Comm'n*, 2022 WL 3043224, at *2.

**CONCLUSION**

Based upon the foregoing, Plaintiff respectfully requests that the Court deny Defendants'

motion to dismiss in its entirety, and for other such relief as the Court deems proper.


Dated: September 29, 2022
      New York, New York

                                         Respectfully Submitted,
                                         THE ABOUSHI LAW FIRM, PLLC

                                               /s/
                                         By: Tahanie A. Aboushi
                                       1441 Broadway Suite 5036
                                       New York, New York 10018
                                       Telephone: (212)391-8500
                                       Email: Tahanie@aboushi.com