**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MAILA BEACH,** | |
| *Plaintiff,* | **1:21-CV-06737 (ALC)** |
| -against- | |
| **CITY OF NEW YORK, et. al.,** | **OPINION & ORDER** |
| *Defendants.* | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Malia Beach brings this action alleging violations of federal and state law,

against the City Of New York, Sergeant Gerard Dowling, Sergeant Roberto Dominguez, Police

Officer Andy Collado, and Police Officers John Does #1-6, in their individual and official

capacities (collectively, "Defendants"). ECF No. 35-1, First Amended Complaint ("FAC").

Defendants now move for dismissal with prejudice of the FAC pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, judgment on the pleadings, and an application for costs under

28 U.S.C. § 1927. ECF No. 40. After careful review, Defendants' Motion, ECF No. 40, is

**DENIED** as to the motion judgment on the pleadings because the pleadings are not closed.

Defendants' motion to dismiss is **GRANTED**, and Defendants' application for costs under §

1927 is **DENIED**. The Court finds the individual officers are entitled to qualified immunity on

Plaintiff's false arrest, First Amendment retaliation, and excessive force claims.

## BACKGROUND

I.     **Statement of Facts**[1]

---

[1] For the purposes of this motion, the facts are drawn from the First Amended Complaint and presumed to be true.
The Court also cites to the officers' bodycam footage attached to Defendants' motion for judgment on the pleadings
and to their motion. ECF No. 40; ECF No. 41-1, AXON Body 2 Video 2021-04-24 2229 ("Exhibit A"); AXON
Body 2 Video 2021-04-24 2231 ("Exhibit B"); AXON Body 2 Video 2021-04-24 2242 ("Exhibit C"); AXON Body
2 Video 2021-04-24 2246 ("Exhibit D").

On April 24, 2021, at approximately 7:00 pm on the Brooklyn Bridge, Plaintiff participated in a protest. Police officers instructed the protestors to disperse and walk forward across the bridge towards Manhattan. FAC ¶¶ 16-17. "Defendants Dowling, Dominguez, Collado and Police Officer John Does #1-6 unlawfully detained and assaulted Plaintiff." *Id.* at ¶ 15. An officer pushed back on the protestors and instructed them to move back, in contradiction with another officer's instruction to walk forward. *Id.* at ¶ 17. Defendant Sergeant Roberto Dominguez then pepper sprayed the crowd, spraying Plaintiff at close range in her face, and threw Plaintiff to the ground. *Id.* at ¶¶ 18-19. Plaintiff claims she informed officers that she was epileptic prior to her arrest and assault. *Id.* at ¶ 19. The officers "assaulted plaintiff with their arms, hands, and batons and beat plaintiff about her head and body." *Id.* at ¶ 21. As the officers arrested her, Plaintiff moved her body and arms and an officer instructed her to "stop resisting." ECF No. 41-1, AXON Body 2 Video 2021-04-24 2231 ("Exhibit B") at 15:25. Plaintiff claims that officers pulled her shirt up and her pants down, exposing her stomach, bra, and buttocks as they arrested her and transported her into the NYPD van. *Id.* at ¶¶ 22, 24-26. The officers "deliberately tightened the flex cuffs to the point where plaintiff lost feeling in her fingers." *Id.* at ¶ 23.

## II.    <u>Procedural History</u>

Plaintiff filed her initial complaint on August 11, 2021 against the City of New York, Sergeant Gerard Dowling, Sergeant Roberto Dominguez, Police Officer Andy Collado, and Police Officers John Does #1-6, in their individual and official capacities (collectively, "Defendants"), alleging violations of various federal and state statutes. ECF No. 3. Plaintiff was granted leave to amend her complaint to address deficiencies, which she filed on July 21, 2022. FAC. On September 8, 2022, Defendants filed a motion for judgment on the pleadings and

dismissal with prejudice of the FAC, and attached the officers' bodycam footage to their motion. ECF No. 40; ECF No. 41-1.

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.Pro. 12(d). The complaint includes any attached "'exhibit or any statements or documents incorporated in it by reference.'" *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). "Moreover, 'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Id.* at 72 (quoting *Cortec*, 949 F.2d 42 at 47-48).

In this case, Defendants have attached Exhibits A-D to their motion. Plaintiff relied heavily on this footage in drafting her FAC. ECF No. 33 at 1 ("Plaintiff's First Amended Complaint will incorporate facts obtained from viewing all of the obtained BWC footage as provided for by Defendants"). The Court now considers Defendants' motion to dismiss.

## STANDARD OF REVIEW

### I.    Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II.      Federal Rules of Civil Procedure 12(c)

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard of review as a motion to dismiss under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). Thus, the Court accepts the nonmovant's allegations as true and draws all reasonable inferences in the nonmovant's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In essence, a grant of a motion pursuant to Rule 12(c) is proper if "from the pleadings, the moving party is entitled judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995) (per curiam). "On

a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).[2]

## DISCUSSION

### I.    False Arrest and First Amendment Retaliation Claims

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause . . . is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Under New York law, the elements of a false imprisonment claim are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, cert. denied, 423 U.S. 929 (1975)). The existence of probable cause to arrest is a defense to a false arrest claim. *Id.* The same is true for a First Amendment retaliation claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019).

Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993) (internal quotations and citations omitted). Defying a police order, on its own, does not give rise to probable cause. "A person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point

---

[2] Defendants' motion for judgment on the pleadings is **DENIED**. Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings is appropriate when the pleadings are closed, and in this case, Defendants have not filed an answer.

where it becomes a potential or immediate public problem." *People v. Weaver*, 16 N.Y.3d 123, 128, 919 N.Y.S.2d 99, 944 N.E.2d 634 (2011) (internal quotation marks and citation omitted). To determine if police have probable cause to arrest a person in defiance of a police order, courts consider 1) whether the order was communicated to the crowd; and 2) whether the protestors had "an opportunity to comply with those orders" and refused to do so. *Dinler v. City of N.Y.*, 04-CV-07921 (RJS) (JCF), 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012). Here, the officers repeatedly and emphatically ordered the protestors to disperse and move back because protestors were blocking the roadway of the bridge, impeding traffic.

The facts set forth by Plaintiff do not meet the elements required for a false arrest claim. In this case, Plaintiff committed a traffic violation when she protested on the roadway of the Brooklyn Bridge. See 34 R.C.N.Y. §4-12(o) (prohibiting the use of highways by pedestrians). Plaintiff certainly has a right to protest, but she cannot exercise this right while blocking the roadway of the bridge. Plaintiff argues the officers' repeated issuance of a dispersal order somehow gave Plaintiff permission to continue being present on the bridge, and as a result Defendants could not arrest Plaintiff without fair warning. Her argument is unavailing. Plaintiff's FAC lacks any allegations to support Plaintiff's argument that the police authorized her presence on the roadway. See *Boykin v. City of N.Y.*, 21-CV-1362 (DLC) (S.D.N.Y. Sept. 29, 2022) (dismissing a similar argument by a protestor on the highway). Plaintiff committed a prima facie traffic violation. Moreover, the officers gave notice when they repeatedly asked the protestors to move back, but Plaintiff refused, linked arms with others, and stood her ground. ECF No. 41-1, Exhibit A at 17:09-17:18. Plaintiff had ample opportunity to oblige. Although Plaintiff claims she could not oblige because she was pepper sprayed, police pepper sprayed her after she linked arms with other protestors and refused to comply with commands to move back. Because law

enforcement had probable cause to arrest her for the violation, Plaintiff's claims for false arrest and First Amendment retaliation are dismissed.

## II. Excessive Force Claims

A plaintiff alleging excessive force must show that an officer's actions were "objectively unreasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Maxwell v. City of N.Y.*, 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks omitted). "A plaintiff must establish that the deprivation alleged is sufficiently serious, or harmful enough, to reach constitutional dimensions[,]" and "a de minimis use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal citations and quotations omitted). To determine whether the amount of force applied to a plaintiff was unreasonable, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In this case, law enforcement had probable cause to arrest Plaintiff for blocking the Brooklyn Bridge roadway in violation of traffic laws, and failure to comply with officer demands to move back. Police could use reasonable force to effectuate the arrest. The officers directed Plaintiff and other protestors to move back, but they refused, stood their ground and continued linking arms, making it difficult for the officers to handcuff them. Exhibit A at 14:43, 16:57. The officers took Plaintiff to the ground in order to handcuff her. Plaintiff resisted arrest when she moved her body and arms around and an officer commanded her "stop resisting." Exhibit B at 15:25.

Video evidence does not support Plaintiff's allegations. There is no evidence that Defendants hit or kicked her as alleged, or that Plaintiff warned the officers at that time that she suffered from epilepsy.[3] Exhibit B at 15:16. Given the circumstances, Defendants' actions to effectuate Plaintiff's arrest were reasonable.

Plaintiff alleges the officers used excessive force when they pepper sprayed her prior to her arrest. The police pepper sprayed Plaintiff and other protestors when they linked arms and refused to comply with commands to move back. Exhibit A at 17:18-17:33. And, while Plaintiff's shirt and pants came unfastened during the encounter, there is no evidence that Defendants intended to unfasten her clothing, and they quickly re-adjusted Plaintiff's clothing. Exhibit B at 16:13; Exhibit D at 1:34-2:53, 4:49. The footage demonstrates Defendants did not intentionally remove Plaintiff's clothing at any time.

Plaintiff's claim of tight handcuffing is also unavailing. When examining an allegation of unreasonable tight handcuffing, the Court will examine the degree of injury caused. *Cugini v. City of N.Y.*, 941 F.3d 604, 612-13 (2d Cir. 2019). "[T]here is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Johnson v. City of N.Y.*, No. 18-CV-5623 (ALC), 2020 U.S. Dist. LEXIS 102870, at *8-9 (S.D.N.Y. June 11, 2020). Plaintiff expressed discomfort when handcuffed and nothing more. Tight handcuffing in this case does not constitute excessive force. Therefore, Plaintiff's excessive force claims are dismissed.

### III.    Qualified Immunity

Even if the analysis in Sections I and II is incorrect, Defendants are entitled to qualified immunity. Qualified immunity "shields police officers acting in their official capacity from suits

---

[3] In the footage, Plaintiff stated she is epileptic, but she does so after her arrest and as she is climbed into the police van. Exhibit D at 4:46.

for damages ... unless their actions violate clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). A plaintiff seeking to defeat a qualified immunity defense must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 745 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Under New York law, "as is true of federal law, an officer's entitlement to qualified immunity . . . depends on the reasonableness of his actions. The only difference between the federal and state doctrines is that, under state law, the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution." *Bancroft v. City of Mount Vernon*, 672 F.Supp.2d 391, 401 (S.D.N.Y. 2009).

Defendants argue they are entitled to qualified immunity on Plaintiff's false arrest, First Amendment retaliation, and excessive force claims. A similar case of protestors on the Brooklyn Bridge is instructive. In that case, the protestors brought false arrest claims, and the Second Circuit rejected protestors' argument that law enforcement authorized their presence on the bridge. *Garcia v. Does*, 779 F.3d 84, 93-94 (2d Cir. 2015). The Court found the officers were entitled to qualified immunity because "no clearly established law would make it clear to a reasonable officer . . . that it would be unlawful to arrest individuals who were in prima facie violation of a straightforward statutory prohibition because those individuals may have believed, based on inferences drawn from ambiguous behavior by the police, that they were authorized to violate the statute." *Id.* at 96 (internal citations and quotations omitted). Because here Plaintiff committed a prima facie violation of traffic law, it was reasonable for the officers to arrest her.

The Court finds the individual officers in this case are entitled to qualified immunity on the false arrest and First Amendment retaliation claims.

The Court next analyzes the applicability of qualified immunity to Plaintiff's excessive force claim. "The dispositive question is whether the violative nature of particular conduct is clearly established." *Davila v. City of N.Y.*, 139 A.D.3d 890, 893, 33 N.Y.S.3d 306, 310 (2016) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citations and quotation marks omitted).

Here, Plaintiff challenges the officers' decision to pepper spray Plaintiff, then take her to the ground to arrest her as excessive. Defendants next took Plaintiff to the ground to arrest her, as she linked arms with other protestors and stood her ground. Defendants' conduct occurred in the context of arresting Plaintiff for noncompliance. In this case, officers used pepper spray against Plaintiff immediately prior to her arrest, after she refused to follow instructions to get off the roadway of the bridge. Exhibit A at 17:33. Plaintiff actively resisted arrest, and her actions posed a threat to public safety. *Graham*, 490 U.S. at 396. The Second Circuit has found the use of pepper spray against a noncompliant person during an arrest does not constitute excessive force. *Brown v. City of N.Y.*, 862 F.3d 182, 190 (2d Cir. 2017). Defendants have also shown that because Plaintiff linked arms with other protestors, it would be difficult for the officers to arrest Plaintiff while standing. Their use of force was reasonable and does not rise to the level of constitutional violation because Plaintiff was noncompliant to their demands, and Defendants' use of force was de minimis for the purpose of arresting Plaintiff.

The Court grants qualified immunity.

## IV.     Failure to Intervene Claim

"An officer may be liable for the preventable harm caused by his failure to intervene during a constitutional violation where the officer 'observes the [constitutional violation] and has sufficient time to act to prevent it.'" *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 601 (W.D.N.Y. 2019) (quoting *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)) (internal citation omitted)). At the threshold, a plaintiff must establish a constitutional violation to bring a failure to intervene claim. The Court finds law enforcement did not violate Ms. Beach's constitutional rights in effectuating her arrest. As such, Plaintiff's failure to intervene claim fails.

## V.    Monell Claim

A plaintiff seeking municipality liability under 42 U.S.C. § 1983 must show: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." *Aquino v. City of N.Y.*, 16-CV-1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *8 (S.D.N.Y. Jan. 25, 2017). Monell "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 199)). At the threshold, Plaintiff has not identified with any specificity the alleged policy or practice at play which led to her injuries. Rather, Plaintiff merely pleads the NYPD had a policy "where they encouraged their officers to use excessive force" and this conclusory allegation is insufficient. FAC at ¶60. A municipality is liable when its "failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Similarly, Plaintiff has not properly demonstrated

that a specific deficiency in the City's failure to train officers actually caused her alleged injuries. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).

"It is well-settled that a Monell claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation." *Mastromonaco v. Cty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (citing *City of L.A. v. Heller*, 475 U.S. 796, 799 (1986)). Plaintiff's Monell claim is dismissed.

## VI. State Law Claims

In New York an assault is defined as "an intentional placing of another person in fear of imminent harmful or offensive contact[,]" and battery is defined as "an intentional wrongful physical contact with another person without consent." *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001). "When assault and battery claims are brought against law enforcement personnel who had probable cause to arrest, 'assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest.'" *Rizk v. City of N.Y.*, 462 F. Supp. 3d 203, 228–29 (E.D.N.Y. 2020) (quoting *Tianshu Li v. United States*, No. 05-CV-6237 (NRB), 2009 WL 3321014, at *1 n.2 (S.D.N.Y. Oct. 8, 2009). Dismissal of a battery claim is proper when "probable cause for the arrest [exists] . . . absent any evidence that the force used to effect the arrest was excessive." *Akande v. City of N.Y.*, 275 A.D.2d 671, 672, 713 N.Y.S.2d 341, 343 (2000).

As previously found, Defendants had probable cause to arrest Plaintiff, and lawfully used de minimis force against her to do so. Because probable cause is a defense to assault and battery claims, these claims must be dismissed.

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a

substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Howell*, 81 N.Y.2d at 122 (internal quotations and citation omitted). No such conduct is present here. Defendants did not intentionally lift Plaintiff's shirt up or her pants down. Nor did they hit her. Moreover, Plaintiff's emotional distress claims fail because the conduct at issue is encompassed by the claims assault and battery. See *Moore v. City of N.Y.*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (dismissing an IIED claim when it was encompassed by plaintiff's assault and battery claims).

Similarly, "Under New York law, a plaintiff may establish [a claim for negligent infliction of emotional distress] in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996). Under the "bystander" theory, "a defendant's conduct is negligent as creating an unreasonable risk of bodily harm to a plaintiff and such conduct is a substantial factor in bringing about injuries to the plaintiff" when the plaintiff witnesses "serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family." *Bovsun v. Sanperi*, 61 N.Y.2d 219, 473 (1984). That theory is inapplicable in this action. Under the "direct duty" theory, a plaintiff's emotional distress is caused by "defendant's breach of a duty which unreasonably endangered [plaintiff's] own physical safety." *Mortise*, 102 F.3d at 696. Plaintiff seems to allege she was owed a special duty by Defendants because she warned the officers that she suffered from epilepsy. But, because this warning was delivered long after her arrest, the officers owed her no specific duty.

13

All of Plaintiff's state law claims are dismissed.

**VII.    Defendants Reasonable Costs**

Defendants request reasonable costs under 28 U.S.C. § 1927, alleging Plaintiff "unreasonably and vexatiously" "multiplie[d]" the proceedings by bringing frivolous claims of sexual assault, despite video evidence to the contrary. *Stewart Park & Reserve Coalition v. Slater*, 352 F.3d 545, 561 (2d Cir. 2003). Although Plaintiff didn't withdraw the claims at the earliest possible date, Plaintiff has withdrawn the claims in question. The Court **DENIES** Defendants' request.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 40, is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. Plaintiff was granted leave to amend the deficiencies in her Complaint, but fatal substantive flaws persist. Plaintiff's claims are wholly unsupported by the footage, and she has not requested leave to amend. "[D]ismissal with prejudice is appropriate when 'the flaws in pleading are incurable.'" *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)). The Court finds Defendants are entitled to qualified immunity on Plaintiff's claims. Here, dismissal with prejudice is warranted.

Defendants' motion for judgment on the pleadings is **DENIED**. Under Fed. R. Civ. P. 12(c), a motion for judgment on the pleadings is appropriate when the pleadings are closed, and in this case, Defendants have not filed an answer. Defendants' request for reasonable costs under 28 U.S.C. § 1927 is **DENIED**.

**SO ORDERED.**

**Dated: August 28, 2023**
**New York, New York**

_____
       **ANDREW L. CARTER, JR.**
       **United States District Judge**