UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAILA BEACH,                                          )

             )      21-cv-6737 (ALC) (SLC)

      Plaintiff,                          )

             )

vs.                                                   )

THE CITY OF NEW YORK, SERGEANT GERARD      )

DOWLING (TAX ID 915640), SERGEANT          )

ROBERTO DOMINGUEZ (TAX ID 938384) and      )

POLICE OFFICERS JOHN DOES #1-10, in their  )

individual and official capacities,        )

             )

      Defendants.                         )

---

**<u>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RECONSIDERATION OF OPINION
AND ORDER DISMISSING EXCESSIVE FORCE CLAIM</u>**

The Aboushi Law Firm, PLLC
By: Tahanie A. Aboushi
Attorneys for Plaintiff
1441 Broadway, Suite 5036
New York, New York 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
Tahanie@aboushi.com
October 5, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iiii-iv

PRELIMINARY STATEMENT........................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 6

   I.   THE COURT ERRED IN RELYING ON FOUR BWC VIDEOS AS SUPPORT FOR ITS
DECISION TO GRANT DEFENDANTS' MOTION TO DISMISS THE EXCESSIVE
FORCE CLAIM IN THE FIRST CAUSE OF ACTION OF THE FIRST AMENDED
COMPLAINT ............................................................................................................... 6

      A.   The Factual Allegations In The FAC State A Claim of Excessive Force ........................ 7

      B.   The Court's Decision to Treat the Videos as Incorporated Should Also Be
Reconsidered. .................................................................................................................. 8

   II.   THE COURT ERRED IN FAILING TO ACCEPT ALL FACTUAL ALLEGATIONS IN
THE FAC AS TRUE AND TO DRAW ALL REASONABLE INFERENCES IN FAVOR
OF PLAINTIFF ............................................................................................................ 12

      A.   The Factual Allegations in the FAC State A Claim of Excessive Force ........................ 12

      B.   The Individual Defendants Are Not Entitled To Qualified Immunity On The Excessive
Force Claim .................................................................................................................... 17

   III.  EVEN IF IT WERE APPROPRIATE FOR THE COURT TO RELY ON THE FOUR
BWC VIDEOS, NEWLY DISCOVERED EVIDENCE CONFLICTS WITH THE
COURT'S INTERPRETATION OF THAT EVIDENCE, DEMONSTRATING THAT
DISMISSAL OF THE FAC WAS INAPPROPRIATE .................................................... 18

   IV.  IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO FILE AN AMENDED
COMPLAINT ............................................................................................................... 22

CONCLUSION.................................................................................................................... 23

## **TABLE OF AUTHORITIES**

### **Cases**

*Anwar v. Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548 (S.D.N.Y. 2012) ................................ 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................................................. 1, 6, 22

*Baker v. City of New York*, 551 F. Supp. 3d 258 (S.D.N.Y. 2021) ........................................ 16-17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 6

*Boyd v. J.E. Robert Co.*,
    No. 05-cv-2455 (KAM) (RER), 2013 WL 5436969 (E.D.N.Y. Sept. 27, 2013) ................... 20

*Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017) ....................................... 18

*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008) ........................................ 10

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................ 5, 8-9, 9

*Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) ..................................... 6

*Cruz v. Target Corp.*, 2014 U.S. Dist. LEXIS 174306 (S.D.N.Y. Dec. 16, 2014) ........................ 8

*Festa v. Local 3, International Brotherhood of Electrical Workers*,
    905 F.2d 35 (2d Cir. 1990) ................................................................ 7, 8

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ........................................ 23

*Garcia v. Doe*, 779 F.3d 84 (2d Cir. 2014), *opinion withdrawn*, 774 F.3d 168 (2d Cir. 2014) .... 10

*Gersbacher v. City of New York*, 134 F. Supp. 3d 711 (S.D.N.Y. 2015) ................................. 9, 10

*Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365 (S.D.N.Y. 1999) ................................. 20

*Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ....................................... 10

*Hyman v. Abrams*, 630 F. App'x 40 (2d Cir. 2015) ................................................... 1, 12, 13, 15

*In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566 (S.D.N.Y. 2005) ............................... 5

*Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005) ........................................ 8

*Marhone v. Cassel*, No. 16-CV-4733 (NSR), 2021 WL 142278 (S.D.N.Y. Jan. 14, 2021) ......... 19

*Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020) ..................... 19

*Mikol v. Barnhart*, 554 F. Supp. 2d 498 (S.D.N.Y. 2008) ..................................... 20, 21

*Nghiem v. United States Dep't of Veteran Affairs*, 451 F. Supp. 2d 599 (S.D.N.Y. 2006) ............ 8

*Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240 (S.D.N.Y. 2014) .......................... 10

## TABLE OF AUTHORITIES (cont'd)

*Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019) .......................................................... 16

*Pluma v. City of New York*, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134 ......................... 9

*Preterotti v. Lora*, Civ. Action No. 1:16-cv-91-jgm-jmc, 2016 U.S. Dist. LEXIS 159414 (D.
Vt. Oct. 6, 2016) (Mag's Rep. & Rec.), *adopted*, 2016 U.S. Dist. LEXIS 159979 (D. Vt.
Nov. 17, 2016) ....................................................................................................................... 9, 10

*Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81 (2d Cir. 2021) .................................... 7, 18

*Shrader v. CSX Transp.*, 70 F.3d 255 (2d Cir. 1995) ..................................................................... 6

*So. Westchester Realty Assocs., LLC v. Am. States Ins. Co.*,
No. 14-CV-8229 (ALC), 2018 WL 2947969 (S.D.N.Y. May 15, 2018) ............................... 20

*Trustees of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
843 F.3d 561 (2d Cir. 2016) ..................................................................................................... 6

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370 (2d Cir. 2001) ....................................... 18

*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) .............................................................................. 7

## Rules

Fed. R. Civ. P. 6.3 ........................................................................................................................... 6
Fed. R. Civ. P. 12 ..................................................................................................................... 4, 6, 7
Fed. R. Civ. P. 15 ......................................................................................................................... 22
Fed. R. Civ. P. 56 ....................................................................................................................... 4, 7
Fed. R. Civ. P. 59 ........................................................................................................................... 6

## Statutes

42 U.S.C. § 1983 ................................................................................................................... 1, 2, 22

## PRELIMINARY STATEMENT

Plaintiff, Maila Beach, submits this Memorandum of Law in support of her motion to reconsider this Court's August 28, 2023 Opinion & Order (ECF #51) dismissing with prejudice the First Cause of Action in the First Amended Complaint ("FAC") (ECF #35-1) for excessive force under 42 U.S.C. § 1983 and New York state law on substantive and qualified immunity grounds.

To be clear, Plaintiff only seeks relief of a limited scope. Specifically, she seeks to have the Court reconsider the portion of its decision that dismissed the excessive force claims that "Defendants hit or kicked [Plaintiff] as alleged" and the claims based on either Defendants' stripping Plaintiff partially naked or failing to promptly and reasonably re-dress her (or allow her to re-dress). (ECF #51 at 8.) She does so for, essentially, two reasons:

> (1) First, because by adopting a quasi-summary judgment standard, the Court ultimately dismissed those claims based upon its conclusion that "[v]ideo evidence does not *support* Plaintiff's allegations" and that Plaintiff presented "*no evidence* that Defendants hit or kicked [Plaintiff] as alleged" (ECF #51 at 8 (emphasis added)). But that approach ultimately overlooks the Second Circuit's clear rule that video may only be used on a motion to dismiss to contradict a complaint where it "render[s] implausible" or simply "contradict[s]" allegations (*Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015)); and

> (2) Second, because since briefing was closed and very shortly before the Court issued its decision, the City itself concluded that precisely those facts the Court found implausibly pled were not only plausible, but well enough established to impose discipline.

Thus, for the reasons below, the court should reconsider its decision and reinstate the claims. Finally, in the alternative, while it was not available at the time she framed the operative complaint, Plaintiff is still within the statute of limitations, and seeks leave to amend her complaint to add the CCRB's conclusions that officer Liang and Garcia committed sexual misconduct and sexual humiliation. And indeed, surely the City itself reaching those conclusions is sufficient to "nudge [the relevant] claims across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)

1

## STATEMENT OF FACTS

This is an action for damages for excessive force, false arrest, assault and battery, and failure to intervene pursuant to 42 U.S.C. § 1983 and New York state law.  Defendants moved to dismiss all causes of action in the FAC (ECF #40 and #41), and, in further support, Defendants submitted footage from four Body Worn Cameras ("BWC") (ECF #42).  The gravamen of Defendants' argument on this front was that the Court could resolve factual disputes — and did not have to treat all allegations as well pled — because that video existed.  (ECF #41 at 7.)  The Court obliged, ultimately finding certain facts were not plausibly pled ***because*** "[v]ideo evidence does not ***support*** Plaintiff's allegations" and within the limited universe of body camera video produced, there was "***no evidence*** that Defendants hit or kicked [Plaintiff] as alleged." (ECF #51 at 8) (emphasis added).

The Declaration of Nadine Ibrahim, to which the BWC evidence was attached, identified each of the four videos by camera number, time, date, and event.  (ECF #42.)  However, there were "approximately" 14 BWC videos[1] relevant to the occurrence that is the subject of this suit, eight of which were produced to Plaintiff twice, once at the direction of the Court and once as part of videos that were turned over in response to a FOIL request.  (ECF #31 at 1.)  The Declaration does not explain how the four submitted BWC videos were selected among the videos produced to Plaintiff.  Nor does it even nominally assert that the submitted BWC videos represent all of the events alleged in the FAC, the names of the police officers from whose BWCs the footage was obtained, or whether they were named Defendants.

---

[1] In fact, as indicated in the Declaration of Tahanie Aboushi in opposition to Defendants' motion to dismiss, there were only 13 videos turned over in response to the FOIL request.  (ECF # 44 at ¶ 7.)

2

The FAC does not mention Body Worn Cameras or videos or allude to the fact that events were or might have been videorecorded or photographed by the police.  (ECF #35-1.)  Although Plaintiff's counsel advised the Court in a July 6, 2022 letter that the undersigned would "incorporate facts obtained from viewing *all* of the obtained BWC footage as provided by Defendants" in drafting Plaintiff's First Amended Complaint, she made that statement, as indicated in the letter, before she had viewed all of the videos.  (ECF #31 at 1) (emphasis added).  In fact, as indicated in Plaintiff's papers in opposition to the motion to dismiss, Plaintiff was unable to rely on the videos produced pursuant to the FOIL request specifically because they were blurred in relevant places.  (ECF #43 at 1, n.1; ECF #44 at ¶ 7.)  Moreover, the BWC ***does not cover all the events***.  For this reason and because Plaintiff was awaiting production of additional BWC videos, Plaintiff explicitly requested in her response to the motion to dismiss that the Court *not* consider the limited videos put forth by Defendants.  (EFC #43 at 1 and 25.)

Nonetheless, the Court treated excerpts from the BWC footage (and really, Defendants' self-serving descriptions of that footage) submitted by Defendants as if they were exhaustive of complaint itself — or at least, applied a summary judgment standard as if Plaintiff had the benefit of discovery — apparently because "Plaintiff relied heavily on this footage in drafting her FAC" and referencing the aforementioned July 6, 2022 letter from Plaintiff's counsel to the Court in which counsel explained that the FAC would "incorporate facts obtained from viewing all of the obtained BWC footage." (ECF #51 at 3, incorporating by reference ECF #33 at 1).  To the extent the FAC alleged facts that conflicted with the Court's interpretation of Defendants' BWC video exhibits, the Court found "Plaintiff's claims [to be] wholly unsupported by the footage" and dismissed the FAC with prejudice (ECF #51 at 14.), without any finding that the footage ***contradicted*** the FAC.  Despite the fact that demanding each factual assertion be supported by

3

evidence is, essentially, a summary judgment standard, Court did not issue any notice under Fed. R. Civ. P. 56(f). *See, also, e.g.,* 1946 Comment to Fed. R. Civ. P. 12 ("It will also be observed that if a motion under Rule 12(b)(6) is thus converted into a summary judgment motion, the amendment insures that both parties shall be given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking a party by surprise through the conversion of the motion into a motion for summary judgment").

Compounding — or perhaps highlighting — that problem, new evidence produced to Plaintiff in July of this year in response to Plaintiff's FOIL request shows that on December 6, 2022[2] the Civilian Complaint Review Board ("CCRB") substantiated Plaintiff's July 15, 2021 complaint of police misconduct by two police officers in connection with her April 24, 2021 arrest. (A copy of the CCRB complaint is attached to the Declaration of Tahanie A. Aboushi as Exhibit A. Copies of the two CCRB letters are attached as Exhibit B-1 [Police Officer Eric Liang] and -2 [Police Officer Carlos Garcia].) The CCRB recommended that Police Officers Eric Liang and Carlos Garcia each receive Command Discipline-B specifically for Sexual Misconduct (Sexual Humiliation). That is, the exact thing the Court found implausible using the video — the allegations that "Defendants intended to unfasten [Plaintiff's] clothing" (ECF #51 at 8) — was substantiated based on the CCRB's investigation which presumably included interviewing the

---

[2] Had this been a summary judgment motion or the Court issued a notice under Rule 56(f), the City likely would have been under an ethical obligation to disclose this between December and July. Compare Defendants' statement "Plaintiff's pants are seen starting to inadvertently fall down on their own and no officer is seen pulling her pants down or touching them in any fashion. (Exhibit C at 6:23) (ECF #41 at 4)" with CCRB's specific finding of "***sexual misconduct*** (Sexual humiliation)" (Aboushi Decl. Exhibit A). But this was a motion to dismiss — and so, while that obligation would not necessarily exist in the same way, it highlights the problem with making any evidentiary determinations at all on a motion to dismiss.

officers.   In other words, discovery would have substantiated the well-pled allegation that Defendants intentionally and illegally humiliated Plaintiff by stripping her partially naked.

As indicated in the letters, this is the second most severe discipline the CCRB can recommend, after Charges and Specifications.  (Aboushi Dec., Exhibit B-1 and -2.)[3] What the CCRB record shows is that while the court thought Plaintiff's claims to be implausible, ***the City itself*** has concluded that Plaintiff's claims were founded, and has begun the process of disciplining the officers involved.  That leaves the Court's decision in a difficult place:  it has taken the City up on its October 2022 argument (ECF No. 45) that it was not remotely plausible that officers intended to strip Plaintiff, while the City itself turned around in December 2022 (without telling Plaintiff's counsel or the Court) and said not only was it plausible, but worthy of discipline after talking to the officers.

The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.,* 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted). A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Anwar v. Fairfield Greenwich Ltd.*, 891 F. Supp. 2d 548, 551 (S.D.N.Y. 2012). In short, if the City itself found these allegations not just plausible but discipline worthy, it cannot turn around here and say it is so implausible that the Court must bar discovery.

---

[3] Because this information was not in Plaintiff's possession in July 2022, when Plaintiff filed the FAC, or in September 2022, when Plaintiff submitted her response to Defendants' motion to dismiss, it was not included in either document and the Court did not consider the substance of Plaintiff's CCRB complaint (Aboushi Dec., Exhibit A) or the conclusions of the CCRB (Aboushi Dec., Exhibit B-1 and -2) in concluding that Plaintiff does not state a claim for excessive force.

## **LEGAL STANDARD**

Rule 59 of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules govern motions for reconsideration.  Relief on a motion for reconsideration is available if the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (cleaned up); *see, e.g.,* S*hrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir. 1995) ("a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided[, b]ut in light of CSXT's introduction of additional relevant case law and substantial legislative history, we cannot say that the district court's decision to reconsider its earlier ruling was an abuse of discretion.").  In this case, the Court should reconsider the decision dismissing the FAC in order to consider new evidence and to correct a clear legal error.

## **ARGUMENT**

### I.    THE COURT ERRED IN RELYING ON FOUR BWC VIDEOS AS SUPPORT FOR ITS DECISION TO GRANT DEFENDANTS' MOTION TO DISMISS THE EXCESSIVE FORCE CLAIM IN THE FIRST CAUSE OF ACTION OF THE FIRST AMENDED COMPLAINT

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court's focus must be on the factual allegations in the complaint, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff."  *Trustees of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt*., 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 582 U.S. 917 (2017).  To withstand dismissal, the plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

    **A.**    **The Factual Allegations In The FAC State A Claim of Excessive Force**

First, and most problematic, even if the Court was correct to look at the video, there was no basis to take that video as if it were the full summary judgment record at the close of discovery. That is, the Court's conclusion that claims must be dismissed was ***not*** because the right facts were not alleged, but because — in its own words — there was "no ***evidence***" (ECF #51 at 8 (emphasis added)) of those facts. *But see contra, Festa v. Local 3, International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir. 1990) ("the court's function on a Rule 12(b)(6) motion is not to weigh the evidence…"); *Walker v. Schult*, 717 F.3d 119, 128 (2d Cir. 2013) ("In dismissing Walker's complaint, the district court improperly assayed the weight of the evidence") (cleaned up). As the Second Circuit has said time and again, the role of a motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 81-82 (2d Cir. 2021).

Thus, in faulting Plaintiff for submitting "no ***evidence***" — and discounting certain allegations because ""[v]ideo evidence does not ***support*** Plaintiff's allegations" (ECF #51 at 8 (emphasis added) — the Court essentially converted this motion into a summary judgment motion. But it did not provide any notice of its intent to do so. Had the Court formally converted it and provided the opportunities required under Rule 56(f), Plaintiff would have sought discovery ***like*** the interviews that apparently persuaded the City itself that to substantiate charges against two officers for "sexual misconduct" — and even specifically for "Humiliation: fail to cover" — under

7

Rule 56(d), as well as the CCRB report itself (since, at that time, Plaintiff did not have it yet). Aboushi Ex. A at 1-2.

Likewise, Plaintiff would have submitted her own affidavit and testimony specifically setting out how that she was punched and kicked, and the details of how she was stripped and left partially naked for an unnecessary and humiliating amount of time. And because the rule is that a Court is constrained, except in genuinely "extraordinary cases," to accept plaintiff's testimony as sufficient in the summary judgment context" to preclude dismissal. *Cruz v. Target Corp.*, 2014 U.S. Dist. LEXIS 174306, at *18 (S.D.N.Y. Dec. 16, 2014); *cf., e.g.,* J*effreys v. City of N.Y.,* 426 F.3d 549, 555 (2d Cir. 2005) (even on summary judgment, the Court can only disregard a Plaintiff's testimony if it is "so replete with inconsistencies and improbabilities" that no reasonable juror could ever believe it). Put differently, the video does not conclusively rebut what Plaintiff would have testified to, had the Court given notice it intended to weigh and assay "evidence" on the motion — and would ultimately fault Plaintiff for submitting "***no evidence***" (ECF #51 at 8 (emphasis added). *See, e.g., Festa*, 905 F.2d at 37; *Nghiem v. United States Dep't of Veteran Affairs*, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006).

Finally, as further set out below, Plaintiff would have — in July — supplemented that summary judgment record with the CCRB report, which corroborates her version of events. Thus, had the Court provided notice intended to weigh evidence, Plaintiff would have balanced that scale.

## B.    The Court's Decision to Treat the Videos as Incorporated Should Also Be Reconsidered.

The Second Circuit Court of Appeals has acknowledged that in certain circumstances it may be appropriate for the court to read the complaint more broadly to include "'documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which

judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)) (internal punctuation in original).  However, the appellate court has cautioned: "Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original). Such reliance "renders the document 'integral' to the complaint." *Id.* (quoting *International Audiotext Network v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

This rule has been extended to include video evidence, but the same restriction applies, that is, the plaintiff must have relied on the video in drafting the complaint.  *See, e.g.*, *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719 (S.D.N.Y. 2015) ("Because Gersbacher did not rely upon the videos in drafting the complaint, they are not integral to the complaint and cannot be considered in this Court's evaluation of the motion to dismiss."); *Pluma v. City of New York*, 13 Civ. 2017 (LAP), 2015 U.S. Dist. LEXIS 48134, *6 (S.D.N.Y. March 31, 2015) (declining the City's request that the Court consider a transcript of Plaintiff's 50-h deposition and a publicly-available video depicting scenes from Occupy Wall Street in Zuccotti Park on December 31, 2011 "[b]ecause neither was referenced in the Complaint or apparently relied upon in bringing this suit").  The mere attachment of a video to the complaint does not establish that the plaintiff relied on it in drafting the complaint if, in fact, the video is unrelated to the complaint.  In *Preterotti v. Lora*, Civ. Action No. 1:16-cv-91-jgm-jmc, 2016 U.S. Dist. LEXIS 159414 (D. Vt. Oct. 6, 2016) (Mag's Rep. & Rec.), *adopted*, 2016 U.S. Dist. LEXIS 159979 (D. Vt. Nov. 17, 2016), for example,

9

the Magistrate did not consider three DVDs attached to the pro se complaint on a motion to dismiss because the complaint referred to a body cavity search as depicted in a State Police Barracks video, but the attached DVDs contained unrelated footage from a police cruiser.  2016 U.S. Dist. LEXIS 159414, *10-*12.

"[W]here courts *have* considered video evidence in conjunction with 12(b)(6) motions, the video has either been offered by the plaintiff as part of its pleadings or the plaintiff has incorporated the video by reference after the defendant introduced the video."  *Gersbacher*, 134 F. Supp. 3d at 720 (emphasis in original).  *See, e.g.*, *Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 244 (S.D.N.Y. 2014) ("The plaintiff relied on the surveillance footage in his Amended Complaint and made the surveillance video part of the record on this Motion to Dismiss."); *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 498 n.1 (S.D.N.Y. 2013) (court considered video footage submitted by defendant in support of motion to dismiss, since plaintiff had referred to video in complaint and stated that the video was incorporated by reference in motion to dismiss briefing); *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 449 n.1 (S.D.N.Y. 2008) (on motion to dismiss claims of invasion of privacy and trademark infringement, court considered videos submitted by defendants at oral argument because they were referred to in the complaint and were deemed incorporated therein by reference); *see also Garcia v. Doe*, 779 F.3d 84, 87 (2d Cir. 2014) (on appeal of dismissal of claims for false arrest under 42 U.S.C. § 1983, appellate court considered five video excerpts and nine still photographs attached to the Second Amended Complaint, as well as videos submitted by defendants and conceded by plaintiffs to have been similarly incorporated into the Complaint by reference), *opinion withdrawn*, 774 F.3d 168 (2d Cir. 2014).

The Court committed error in considering the curated BWC video evidence submitted by Defendants — or the least, in considering it as if were dispositive of the entire universe of possible

10

facts — because Plaintiff did not rely on that evidence in drafting the FAC and the videos were not integral to the FAC. That video evidence was not referred to or in any way incorporated into the FAC, and the operative complaint itself governs for this purpose. Plaintiff did not submit the footage in support of her response in opposition to the motion to dismiss, except to demonstrate that the footage was blurry and could not be relied on (ECF #43 at 1, n.1; ECF #44 at ¶ 7). To the extent that following the July 6, 2022 letter from Plaintiff's undersigned counsel the Court was under the impression that Plaintiff would rely on the BWC footage in drafting the FAC (ECF #51 at 3, incorporating by reference ECF #33 at 1), the Court should have credited Plaintiff's statements in response to the motion to dismiss that the video footage was too blurry for her to rely on in drafting the FAC and by her explicit request that the video evidence *not* be considered at the pre-discovery stage of the proceedings. (ECF #43 at 1, n.1, and 25; ECF #44 at ¶ 7.)

But even if the Court were correct to ignore Plaintiff's statement that she ultimately did *not* rely on the BWC videos in drafting the FAC, in favor of her attorney's statement prior to viewing the videos that Defendants had produced that the FAC would "incorporate facts obtained from viewing all of the obtained BWC footage" (ECF #51 at 3, incorporating by reference ECF #33 at 1), there was no basis for concluding that in stating the *intent* to rely on "all" the videos Plaintiff's undersigned counsel actually signaled Plaintiff was incorporating whatever selection of videos Defendants happened to choose to present in the future. Put differently, Plaintiff's forward-looking statement she intended to "incorporate facts obtained from viewing" the BWC still left open the possibility — as turned out to be true — that no facts would ultimately be so obtained.

Accordingly, on this record it was improper for the Court to conclude that the BWC video footage was the exclusive source of the factual allegations in the FAC.

11

## II. THE COURT ERRED IN FAILING TO ACCEPT ALL FACTUAL ALLEGATIONS IN THE FAC AS TRUE AND TO DRAW ALL REASONABLE INFERENCES IN FAVOR OF PLAINTIFF

### A. The Factual Allegations in the FAC State A Claim of Excessive Force

In its decision, the Court concluded that the BWC video evidence submitted by Defendants supported conclusions that Plaintiff resisted arrest, that Defendants pepper-sprayed Plaintiff and other protestors because they linked arms and refused to comply with commands to move back, and that Defendants did not intend to unfasten Plaintiff's pants and shirt, or intend to leave them removed.  By contrast, the Court found that the videos did not support allegations that Defendants hit or kicked Plaintiff or that she warned them she suffered from epilepsy.  (ECF #51 at 7-8.)  For the reasons discussed in Point I, *supra*, it was inappropriate for the Court to be evaluating what the video **supported** at all.

Beyond that, however, evidence exclusively held by City virtually the entire time the motion was pending shows that the CCRB ultimately substantiated Plaintiff's claims and concluded that two officers involved in Plaintiff's arrest each should be subjected to serious discipline for their misconduct, *see infra* Point III.  Thus, for motion to dismiss purposes, a reasonable jury could clearly reach the same conclusion and decide that individual Defendants used excessive force and illegally engaged in sexual misconduct in effectuating her arrest.

What led to this strange situation — where the City itself has said the officers violated Plaintiff's right through the CCRB, while having convinced the Court that same conclusion was not even plausible — was that the Court did not sufficiently heed the Second Circuit's caution that, where "the angle and quality of the video footage make details of the incident difficult to discern and in need of testimonial interpretation," grant of a motion to dismiss is improper.  *Hyman*, 630 F. App'x at 42.  In other words, it is simply not a Plaintiff's burden on a motion to dismiss to present

12

"evidence that Defendants" did what the complaint alleges they did.  The Court, however, held Plaintiff to such a standard.  (*See* ECF #51 at 7-8.)

Further, even if it were appropriate for the Court to consider the video evidence along with the allegations in the FAC, there is no reason for the Court to have considered that evidence as if it were an exhaustive summary judgment record.  That is, it was improper for the Court to infer that the four videos offered by Defendants constitute a complete record of what transpired during Plaintiff's arrest, such that anything that did not appear in the video could never have happened. Indeed, Defendants themselves made no such assertion.  Outside the papers, Defendants turned over 13 videos, not just four.  While Plaintiff found these videos to be unhelpful in drafting the FAC, as previously discussed, the number of videos indicates that even Defendants themselves acknowledge there is more evidence to be had — and it is hard to see how ***intent*** could be inferred from those videos one way or another (and, indeed, the CCRB reached the opposite conclusion the Court did, after creating a more full evidentiary record).  Accordingly, it was improper for the Court, at the motion to dismiss stage, to determine that the incomplete video evidence precluded an excessive force claim.

Moreover, it was incumbent upon the Court to view the evidence in the light most favorable to Plaintiff.  That is, the ***only*** way the video should have precluded reliance on the complaint itself was if it was so clear and exhaustive that it wholly "contradict[ed] or render[ed] implausible" the allegations.  *Hyman*, 630 F. App'x at 42.  But here, much as in *Hyman,* the BWC videos were ambiguous and blurred, the Court necessarily had to weigh the evidence in determining that Defendants acted reasonably in arresting Plaintiff and in pepper-spraying her.  Except in extraordinary cases, that is a matter for the jury.  And a reasonable jury could find — as ***the City***

***itself did*** in the CCRB proceeding — that the video evidence cited by the Court simply does not depict what the Court found.

Consider some examples.  The Court points to Defendants' Exhibit A (ECF #42) at 14:43 and 16:57 as support for a finding that Plaintiff and other protestors refused to move back when ordered to do so by the police, instead standing their ground and linking arms, making it difficult to handcuff them.  (ECF #51 at 7.)  But footage starting at 14:19 through 17:25, when the camera moves away from Plaintiff, actually shows:

- Two police officers on bicycles riding into the crowd while a voice, presumably a police officer, repeatedly yelled, "move back";

- Plaintiff is first seen in this footage at about 14:42 (a white woman with long red hair wearing a dark t-shirt with a picture on it and dark pants);

- While other briefly stood still, quickly they began to move back, as instructed, at about 15:42, and continued moving back;

- Plaintiff continued moving back when she linked arms with other protestors at about 16:58.

Faced with this evidence — to say nothing of the testimony that would accompany it, or what other undisclosed videos might show and clarify — a jury could well conclude that Plaintiff did everything she could to comply, especially since there was no directive *not* to link arms and no announcement that anyone would be arrested.  Thus, it is unclear why the Court presumed that the police had an unqualified and totally unquestionable right to handcuff Plaintiff at that point.  In fact, the video evidence shows Plaintiff continued moving back ***even when*** it appears that a police bicycle rammed into her at about 17:04.   Also, the court does not cite to any video evidence in concluding that "police pepper sprayed her after she linked arms with other protestors and refused

14

to comply with commands to move back". (ECF #51 at 6.) In fact, the BWC video does not capture the moment pepper spray was deployed and whether plaintiff refused or was prevented from complying due to pepper spray and being rammed with by a police bike is a factual dispute requiring discovery.

The Court's finding that Plaintiff resisted arrest by moving her body and arms when Defendant officers took her to the ground to arrest her, at this procedural stage, would require the Court to find not just that there is support for that claim in the video, but that the video itself "render[s] implausible" and "contradicts" anything else. *Hyman*, 630 F. App'x at 42. But not only is such a finding not possible from the video (and indeed, it does not appear the Court made ***that*** finding), it is not even really supported in the first place by Defendants' Exhibit B at 15:25 (EDF #42), because multiple officers were on top of Plaintiff and blocking the view of the camera.

Specifically, at 15:17 Plaintiff is seen clearly not resisting arrest while lying on her stomach with her hands were held behind her back by an officer. At 15:24, Plaintiff is heard yelling "pull down my shirt" and in response an officer says "stop resisting," seeming to condition dignity on ceasing (non-existent) resistance. The video, by simply looking before, after, and at 15:16 certainly does not categorical bar a conclusion that officers assaulted Plaintiff as the video is not clear and fails to capture the interaction or show that Plaintiff resisted arrest in any way.

By contrast, the well-pleaded FAC specifically alleges that arresting officers beat Plaintiff about her head and body.  (ECF #35-1, ¶ 21.)  Likewise, while it cannot be determined from the video whether Plaintiff said anything about epilepsy while she was on the ground, the FAC alleges that Plaintiff advised the arresting officers that she was epileptic and subject to seizures and that she took medication for her condition.  (ECF #35-1, ¶ 19.)  The BWC video evidence does not "render implausible" that allegation.  *Hyman*, 630 F. App'x at 42.  Quite the opposite:  as the Court

acknowledged in a footnote (ECF #51 at 8, n.3), Plaintiff can be heard telling officers that she has epilepsy as she is being placed in a police vehicle after her arrest. (ECF #42, Exhibit D at 4:56.)

Finally, the video evidence clearly shows that Plaintiff's shirt was pulled up and her pants were pulled down as she was lifted from the ground, that she continued to complain to officers about her pants as she was being taken to a police vehicle, and that bystanders yelled for the police to pull up her pants. (ECF #42, Exhibit B at 16:13-17:06; Exhibit D at 1:26-3:00.) She also asked that the officer pull her shirt down. (ECF #42, Exhibit D at 4:00-4:20.) Only when she was placed in the police vehicle did an officer pull up her pants. (ECF #42, Exhibit D at 4:48.) It is difficult to determine from the video footage how her shirt came to be pulled up and her pants pulled down. In any event, whether or not Defendants *intended* to pull down Plaintiffs' pants necessitated a weighing of credibility, but "credibility determinations [are] not permissible at any stage before trial." *Palin v. New York Times Co*., 940 F.3d 804, 812 (2d Cir. 2019) (district court erred in granting newspaper's motion to dismiss defamation suit by public figure based on finding that author of allegedly defamatory editorial was a credible witness).

The Court did not point to video evidence to support its decision to dismiss Plaintiff's claim that Defendants used excessive force in handcuffing her. However, it overstepped its authority on a motion to dismiss in finding that Plaintiff suffered only temporary discomfort from the tight handcuffing. However, the FAC does not allege that she suffered only temporary discomfort. It asserts that "Defendants deliberately tightened to the point where Plaintiff lost feeling in her fingers and her hands became numb." (ECF #35-1, ¶ 23.) "A plaintiff satisfies [the] threshold [for a claim of excessive force in handcuffing] if either 'the unreasonableness of the force was apparent' or the plaintiff signaled his distress 'verbally or otherwise, such that a reasonable officer would have been aware of [the plaintiff's] pain.'" *Baker v. City of New York*, 551 F. Supp. 3d 258, 266

16

(S.D.N.Y. 2021) (quoting *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019)).  In the video footage just discussed, Plaintiff can be heard complaining that "you're hurting me."  Furthermore, she asserted in her CCRB complaint (Aboushi Dec., Exhibit A), discussed in Point III, *infra*, that the arresting officers acknowledged that she had barely any blood circulation in her hand as a consequence of the cuffing.  Viewed in the light most favorable to Plaintiff, the allegations and available evidence support a claim for excessive force in the use of handcuffs.

Therefore, for the reasons just stated, as well as those set forth in Point II of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (ECF #43 at 8-11), the Court should have found that the First Cause of Action of FAC states a claim for excessive force.

### B.    The Individual Defendants Are Not Entitled To Qualified Immunity On The Excessive Force Claim[4]

The Court's finding that the individual Defendants were entitled to qualified immunity was based entirely upon the Court's analysis of the BWC evidence — and seems to flow from its decision to find nothing improper happened in the first place.  This was improper for the reasons set forth in Points I and II(A), *supra*.  Moreover, the one piece of video evidence that the Court points to show that Defendant officers reasonably used pepper spray on Plaintiff "immediately prior to her arrest" because she refused to follow directions to get off the bridge, Defendants' Exhibit A at 17:33 (ECF #42) does not show Plaintiff or anyone else being pepper-sprayed, and,

---

[4] The Court's qualified immunity analysis appears primarily concerned with whether a constitutional violation took place in the first instance, rather than whether the right to be free of excessive force and a humiliating stripping and failure to allow Plaintiff to dress was well-established.  Thus, this memorandum proceeds likewise — analyzing the constitutional violation prong of qualified immunity.

as discussed in Point II(a), *supra*, the evidence shows that Plaintiff, in fact, followed police directions and was walking off the bridge.

It should also be noted that *Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017), the case upon which the Court relied for the proposition that the use of pepper spray against a noncompliant person during an arrest does not constitute excessive force (ECF #51 at 10), was decided on summary judgment, indicating the need for some fact development in determining whether qualified immunity applies. Where, as here, the BWC video evidence was blurred and ambiguous, it was improper for the Court to interpret it and find that it outweighed the allegations in the FAC. For the reasons stated in Point III(B) of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (ECF #43 at 14-16), the Court should have found that the First Cause of Action of FAC is not barred by qualified immunity.

## III. EVEN IF IT WERE APPROPRIATE FOR THE COURT TO RELY ON THE FOUR BWC VIDEOS, NEWLY DISCOVERED EVIDENCE CONFLICTS WITH THE COURT'S INTERPRETATION OF THAT EVIDENCE, DEMONSTRATING THAT DISMISSAL OF THE FAC WAS INAPPROPRIATE

Reconsideration on the basis of newly-discovered evidence is appropriate if that evidence was in existence at the time of the dispositive proceeding and the party relying on that evidence was "justifiably ignorant" of that information in spite of due diligence. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (cleaned up). In light of the fact that the Court did not provide notice it was going "to assay the weight of the evidence which might be offered" at all (*Schafer*, 845 F. App'x at 81-82), Plaintiff asks the Court to re-weight the evidence in light of the CCRB determination.

To prevail on a motion for relief from a judgment on the grounds of newly discovered evidence, a party must establish that: (1) the newly discovered evidence was of facts that existed

at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching. *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 146–47 (2d Cir. 2020). In the instant case, although the recommendation of the CCRB existed at the time the Court issued its decision dismissing the FAC, the recommendation had not been made at the time Plaintiff filed her FAC and submitted her response to the motion to dismiss and, thus, could not have been relied on at that time.  Furthermore, although the CCRB letter states it was mailed to Plaintiff on December 06, 2022, Plaintiff was no longer living at that address and was instead houseless. (Aboushi Declaration ¶ 6). Nonetheless, Plaintiff showed due diligence and made a FOIL request concerning the resolution of her CCRB complaint, but did not obtain the results until July 2023, after the motion had been submitted to the Court. Accordingly, Plaintiff was justifiably ignorant of this newly discovered evidence and asks that the Court address it on reconsideration of the motion to dismiss.

Although CCRB responded to the FOIL request before the court issued its decision, the substance of the decision and its determination is of such importance that it impacts the Court's decision on Plaintiff's excessive force claim. "In order to prevail on a motion for relief from a judgment on the grounds of newly discovered evidence, a party must also establish that "the evidence [is] admissible and of such importance that it probably would have changed the outcome." *Metzler Inv.*, 970 F.3d at 147 (citing *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001)); *Marhone v. Cassel*, No. 16-CV-4733 (NSR), 2021 WL 142278, at *3 (S.D.N.Y. Jan. 14, 2021). Here, the investigation and recommendation of the CCRB is admissible and probably would have changed the outcome because it addressed the claims raised in Plaintiff's

19

complaint regarding the Defendant Officers' removal of her clothing during the interaction. Likewise, the fact that ordinarily evidence is not weighed at all on a motion to dismiss is part of why Plaintiff did not force forward her FOIL earlier, or file a copy of the CCRB report immediately upon counsel receiving it. So, while the Court (implicitly) found the claims to be implausible, the fact that investigative body conducted its own investigation[5] and concluded that based on the facts presented, at least two officers engaged in misconduct warranting discipline which would further put their entitlement to qualified immunity at issue.

The decision to grant or deny a motion for reconsideration is committed to the sound discretion of the district court, but, in exercising that discretion, the court "must be mindful that a motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances." *Boyd v. J.E. Robert Co.*, No. 05-cv-2455 (KAM) (RER), 2013 WL 5436969, at *2 (E.D.N.Y. Sept. 27, 2013) (quoting *Nakshin v. Holder*, 360 Fed. App'x 192, 193 (2d Cir. 2010)) (internal quotation marks omitted), *aff'd*, 765 F.3d 123 (2d Cir. 2014); *So. Westchester Realty Assocs., LLC v. Am. States Ins. Co.*, No. 14-CV-8229 (ALC), 2018 WL 2947969, at *1 (S.D.N.Y. May 15, 2018). Alternatively, a movant can prevail on a motion for reconsideration if he demonstrates "'the need to correct a clear error or prevent manifest injustice.'" *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) (quoting *Fruit of the Loom, Inc. v. Am. Mktg. Enters., Inc.*, 1999 WL 527989, at *1 (S.D.N.Y. July 22, 1999)); *Mikol v. Barnhart*, 554 F. Supp. 2d 498, 502 (S.D.N.Y. 2008).

---

[5] CCRB's production response to Plaintiff's FOIL request included the determination letters, the Complaint Report, Activity Logs and the Summons issued to Plaintiff. The CCRB did not include statement made by the officers, notes of the investigation or any other information in the CCRB's position, all of which should be explored in discovery to gain facts as to why the officers took certain actions versus assuming by interpreting the body worn camera videos at this stage.

In *Mikol*, an action for judicial review of the unfavorable final decision of the Social Security Administration, the plaintiff moved for reconsideration of the court's decision denying the plaintiff's motion for judgment on the pleadings and granting the Commissioner of Social Security's cross-motion to dismiss the complaint after he received a subsequent favorable decision from an Administrative Law Judge, finding him disabled. The court held that while the subsequent favorable decision was not newly discovered evidence, "failure to consider the impact of the subsequent decision finding plaintiff disabled one day after the date on which the earlier decision found him no longer disabled could effect a manifest injustice. Given the possibility that the subsequent favorable decision might have an effect on the earlier unfavorable decision upon remand, and the consequences if this Court does not reconsider the motion for judgment on the pleadings in light of that decision, the Court finds that reconsideration of the May 25, 2007 Opinion is warranted." *Id.* at 503.

The CCRB evidence is critical to the motion to dismiss *as decided*, not because it provides proof of exactly what happened at the time of Plaintiff's arrest; that is not the standard on a motion to dismiss. Rather, the newly discovered evidence is relevant, more importantly, because it demonstrates that it is simply not the case that "no evidence" exists of Plaintiff's version of events; rather, another body reviewed the evidence of Plaintiff's arrest—some of which Defendants submitted to the Court—and substantiated the allegations in Plaintiff's CCRB complaint (Aboushi Dec., Exhibit A), reaching the conclusion that at least two officers committed serious police misconduct. Significantly, the allegations in the CCRB complaint are the same as those in the FAC. The CCRB decision shows that the blurred and ambiguous BWC videos along cannot rule out a claim for excessive force or the related humiliation and sexual misconduct claim; there is much more evidence of what occurred to Plaintiff on April 24, 2021 that can be fleshed out only

21

by discovery.  Moreover, the CCRB letters name the two officers against whom Plaintiff's CCRB was substantiated, who previously had been known to Plaintiff only as John Does.  Defendants have not identified which officers the BWC belonged to and whether or not BWC for officer's Liang and Garcia were among those produced. For this reason, the Court should reconsider its decision to dismiss the FAC with prejudice and upon reconsideration should deny the motion to dismiss Plaintiff's claims for excessive force under 42 U.S.C. § 1983 and New York state law to prevent manifest injustice.

## IV.    IN THE ALTERNATIVE, PLAINTIFF SEEKS LEAVE TO FILE AN AMENDED COMPLAINT

Finally, in the alternative, Plaintiff seeks leave to amend her complaint to add the details of the CCRB report — which she did not have at the time she opposed the motion — in order to shore up the plausibility of her claims.  This path, perhaps, provides a way for the Court not to wade into the waters of reconsideration, and instead simply apply the much more generous leave to amend standard, particularly given that the Court's previous conclusion that the Complaint's "flaws … are incurable" relied in part on the conclusion that "Plaintiff's claims are wholly unsupported by the footage" and other evidence.  (ECF #51 at 14.)  With that leave, Plaintiff can add the fact that the CCRB has, in fact, disciplined officers for what happened — and therefore, on a more full factual record, found the very "evidence that Defendants intended to unfasten [Plaintiff's] clothing" the Court found lacking.  ECF No. 51 at 8.  At a minimum, the fact that the City itself reached that factual conclusion should be a fact that "nudge[s] [Plaintiff's] claims across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680.

With regard to motions for leave to amend a pleading, the U.S. Supreme Court has stated:

> Rule 15(a) declares that leave to amend "shall be freely given when justice
> so requires"; this mandate is to be heeded. *See generally*, 3 Moore, Federal Practice

22

(2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given" Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

At the time Plaintiff opposed the motion, she did not have the CCRB finding. Now she does. And that CRRB finding is material to Plaintiff's claims. Likewise, the underlying interviews with officers, notes from investigations, recorded testimony and additional BWC would provide exactly that evidence the Court found lacking. Thus, amending the complaint to include the CCRB's finding of sexual misconduct and humiliation further buttresses Plaintiff's complaint, all of which has not been challenged by Defendants as facially insufficient on their own — but instead, simply not sufficiently ***shown*** by the BWC. Defendants will not be prejudiced by this request as they have had the CCRB decision in their possession during the pendency of this action and the motion, yet failed to disclose it.

## CONCLUSION

Based upon the foregoing, as well as in the arguments set forth in Points II and III(B) of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (ECF #43 at 8-11, 14-16), Plaintiff respectfully requests that the Court grant her motion for reconsideration and, upon reconsideration, reinstate the excessive force claim set forth in the First Cause of Action of the FAC or permit Plaintiff to file a Second Amended Complaint that incorporates the CCRB's findings.

23

Dated: October 5, 2023
       New York, New York

Respectfully submitted,

THE ABOUSHI LAW FIRM, PLLC

_____/s/_____

By: Tahanie A. Aboushi
1441 Broadway, Fifth Floor
New York, New York 10018
Telephone: (212) 391-8500
Email: Tahanie@aboushi.com

24