**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MAILA BEACH,

                    Plaintiff,                                21-cv-06737 (ALC)

      v.

THE CITY OF NEW YORK, SERGEANT GERARD
DOWLING (TAX ID 915640), SERGEANT
ROBERTO DOMINGUEZ (TAX ID 938384),
POLICE OFFICER ANY COLLADO (TAX ID
968336), and POLICE OFFICERS JOHN DOES #1-
10, in their individual and official capacities,

                    Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE OPINION**
**AND ORDER DISMISSING PLAINTIFF'S EXCESSIVE FORCE CLAIM**

---

                                HON. SYLVIA O. HINDS-RADIX
                      Corporation Counsel of the City of New York
                                    100 Church Street
                            New York, New York 10007
                                 *Counsel for the Defendants*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………………………….   1

STATEMENT OF FACTS………………………………………………………...   2

LEGAL STANDARD…………………………………………………………….   3

ARGUMENT………………………………………………………………...   4

       POINT I

       THE COURT SHOULD DENY PLAINTIFF'S
       MOTION BECAUSE PLAINTIFF RELIED UPON
       THE BWC FOOTAGE WHEN DRAFTING THE
       FIRST AMENDED COMPLAINT………………………………………   4

              a.   Plaintiff relied upon the BWC footage in
                   drafting the FAC and it was integral to
                   her claims…………………………………………………...   6

              b.   The Court did not err in determining that
                   the BWC footage does not support
                   Plaintiff's allegations…………………………………………   9

       POINT II

       THE COURT SHOULD DENY PLAINTIFF'S
       MOTION BECAUSE IT ACCEPTED ALL
       FACTUAL ALLEGATIONS IN THE FAC
       AS TRUE AND DREW REASONABLE
       INFERENCES IN FAVOR OF PLAINTIFF…………………………...   11

       POINT III

       THE COURT SHOULD DENY PLAINTIFF'S
       MOTION BECAUSE THE CCRB CHARGES
       ARE INCONSEQUENTIAL TO PLAINTIFF'S
       CLAIMS AND SUPPORT DISMISSAL OF THE FAC…………………   14

CONCLUSION…………………………………………………………………   16

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

<u>Arazi v. Cohen Bros. Realty Corp.</u>,
2022 U.S. Dist. LEXIS 56549 (S.D.N.Y. 2022)…………………………………..   15

<u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>,
684 F.3d 36 (2d Cir. 2012)…………………………………………………………..   4

<u>Barkai v. Mendez</u>,
629 F.Supp. 3d 166 (S.D.N.Y. 2022)………………………………………………..   6

<u>Berg v. Kelly</u>,
343 F. Supp. 3d 419 (S.D.N.Y. 2018)………………………………………………   4

<u>Brown v. City of New York</u>,
862 F.3d 182 (2d Cir. 2017)…………………………………………………………   13

<u>Cordova v Mike Bloomberg 2020, Inc.</u>,
2023 U.S. App. LEXIS 24758 (2d Cir. 2023)………………………………………   6

<u>Cortec Indus., Inc. v. Sum Holding L.P.</u>,
949 F.2d 42 (2d. Cir. 1991)…………………………………………………………   6, 9

<u>Drapkin v. Mafco Consol. Grp., Inc.</u>,
818 F. Supp. 2d 678 (S.D.N.Y. 2011)………………………………………………   3

<u>Gersbacher v City of New York</u>,
134 F Supp. 3d 711 (S.D.N.Y. 2015)………………………………………………..   8

<u>Hyman v. Abrams</u>,
630 Fed.Appx. 40 (2d Cir. 2015)……………………………………………………   10, 11, 14

<u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>,
62 F.3d 69 (2d Cir. 1995)……………………………………………………………   6

<u>Johnson v. City of New York</u>,
2020 U.S. Dist. LEXIS 102870 (S.D.N.Y. 2020)…………………………………   13

<u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust</u>,
729 F.3d 99 (2d Cir. 2013)………………………………………………………….   4

<u>McGarrell v. Arias</u>,
2019 U.S. Dist. LEXIS 34163 (S.D.N.Y. 2019)…………………………………..   13

Mittelman v. City of Rockland,
2013 U.S. Dist. LEXIS 46382 (S.D.N.Y. 2013)…………………………………..   13

Pluma v. City of New York,
2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. 2015)…………………………………..   8, 9

Preterotti v. Lora,
2016 U.S. Dist. LEXIS 159414 (Dist. Vt. 2016)…………………………………   8, 9

Salveson v. JP Morgan Chase & Co.,
663 Fed.App'x. 71 (2d Cir. 2016)…………………………………………………..   4

Shrader v. CSX Transp., Inc.,
70 F.3d 255 (2d Cir. 1995)…………………………………………………………..   4

Sigmon v. Goldman Sachs Mortgage Company,
229 F.Supp.3d 254 (S.D.N.Y. 2017)……………………………………………….   4

Svenningsen v. Ultimate Grounds Management, Inc.,
2017 WL 3105871 (S.D.N.Y. 2017)……………………………………..........   4

Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,
808 F. Supp. 2d 634 (S.D.N.Y. 2011)……………………………………………..   6

Walker v. Carter,
2016 WL 6820554  (S.D.N.Y. 2016)…………………………………..........   3

Xiu Feng Li v. Hock,
371 Fed. App'x 171 (2d Cir. 2010)………………………………………………..   4

Zappin v Comfort,
2023 US Dist LEXIS 160152 (S.D.N.Y. 2023)……………………………………   4

**Statutes**

F.R.C.P. 11…………………………………………………………………………...   3

F.R.C.P. 12(b)(6)…………………………………………………………………….   9

F.R.C.P. 12(d)………………………………………………………………………..   6

F.R.C.P. 56………………………………………………………………………...   9

iii

Defendants the City of New York, Sergeant Gerard Dowling, Sergeant Roberto Dominguez, and Police Officer Andy Collado respectfully submit this memorandum of law in opposition to Plaintiff's motion for reconsideration of the opinion and order dismissing Plaintiff's excessive force claim dated October 5, 2023.  See Docket No. 61.

## PRELIMINARY STATEMENT

Plaintiff moved the Court to reconsider its decision and order dismissing Plaintiff's excessive force claim[1] on the purported bases that 1) the Court erred by considering the BWC footage on dismissal; 2)  the Court erred by citing the BWC footage as grounds for dismissal; and 3) that Plaintiff discovered new evidence in the form of substantiated CCRB charges that validate her claims.  However, the extraordinary relief Plaintiff seeks is unsupported by both the governing law on the use of extrinsic evidence in support of a motion to dismiss and the facts in this case. The law permits video to be considered in support of a motion to dismiss when its contents are integral to the claims, and the plaintiff relied upon the video in preparing the complaint.  It is undisputed that the BWC footage depicts Plaintiff's interactions with law enforcement officers on April 24, 2021, including Plaintiff's arrest.  Indeed, Plaintiff requested leave to amend the original complaint in order to incorporate facts obtained from viewing the BWC footage.

Having sought leave to amend the original complaint—and now the First Amended Complaint ("FAC")—it is incumbent upon Plaintiff to show exceptional circumstances to support reconsideration.  However, Plaintiff's arguments are not novel—they do not uncover manifest injustice, clear error, or new or changing law.  Instead, Plaintiff's motion largely rehashes

---

[1] Plaintiff only seeks reconsideration of the excessive force claim, not the dismissal of Plaintiff's other claims.  Even the relief Plaintiff seeks for the excessive force claim is limited to the claims that Defendant hit or kicked Plaintiff and that Defendants stripped Plaintiff naked.  See Docket No. 61 at 1.  Plaintiff also seeks reconsideration of a claim for failing to promptly and reasonably re-dress Plaintiff.  This claim, however, was not alleged in the FAC and should not be considered by the Court on the instant motion.

arguments and issues that were already presented to the Court in response to Defendants' second motion to dismiss.  The only new element to Plaintiff's position, the substantiated CCRB charges, is nothing more than an ill-advised attempt to manufacture a manifest injustice.  It is a red-herring.

Contrary to Plaintiff's arguments, the CCRB substantiated charges were for "Sexual Miscon (Humiliation: Failure to Cover)." See Docket No. 60 at Exhibit A.  Therefore, it has no effect on the Court's prior decision, and cannot be a "new fact" that supports a basis for the Court to reconsider its decision.  Instead, Plaintiff alleges in her FAC that she was intentionally stripped naked. The Court correctly noted that the footage demonstrates that the Defendants did not intentionally remove Plaintiff's clothing at any time, contradicting Plaintiff's allegations made in the FAC.  As such, Plaintiff fails to meet the legal standard for reconsidering an opinion and order, and fails to show a need for the Court to grant leave to amend the complaint a second time. The Court should see Plaintiff's motion for what it is—an attempt to present new theories and take a second bite of the apple.

Accordingly, the Court should deny Plaintiff's motion to reconsider its August 28, 2023 opinion and order dismissing Plaintiff's complaint in its entirety.

## STATEMENT OF FACTS

For the sake of brevity, Defendants recite the facts as they relate only to the procedural posture of this case.  Defendants incorporate by reference and respectfully refer the Court to the memorandum of law filed in support of the Defendants' second motion to dismiss for a complete recitation of the factual circumstances underlying Plaintiff's claims.  See Docket No. 41.

On August 11, 2021, Plaintiff filed her initial complaint against the Defendants alleging violations of various federal and state statutes.  See Docket No. 3.  On January 25, 2022, Defendants informed the Court at a Court Conference that BWC footage rendered Plaintiff's

claims meritless. During the conference, the Court ordered Defendants to produce the BWC footage to Plaintiff, which Plaintiff subsequently received pursuant to the Court's order and a FOIL request of the NYPD.

On July 1, 2022, Defendants filed motions for Rule 11 sanctions and to dismiss Plaintiff's complaint. See Docket Nos. 26-30. On July 5, 2023, Plaintiff opposed Defendants' motions and sought leave to amend. See Docket No. 31. On July 6, 2022, Plaintiff informed the Court that she believed her claims were "clear and viable" after viewing the BWC footage. See Docket No. 33 at 1. Plaintiff further informed the Court that the amended complaint would reflect information obtained from viewing the BWC footage and would incorporate facts obtained from the BWC footage. Id. On August, 17, 2022, the Court granted Plaintiff leave to amend the complaint in order to address its deficiencies and permitted Defendants an opportunity to file a new motion to dismiss. See Docket No. 37.

On July 21, 2022, Plaintiff filed the FAC, changing the facts and claims she previously alleged. See Docket No. 35-1. On September 8, 2022, Defendants filed a motion to dismiss with prejudice of the FAC, attaching the BWC footage. See Docket Nos. 40 and 41-1. On August 28, 2023, the Court granted Defendants' motion to dismiss with prejudice. See Docket No. 51.

## LEGAL STANDARD

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Walker v. Carter, 2016 WL 6820554, *2 (S.D.N.Y. Feb. 4, 2016) (citing Drapkin v. Mafco Consol. Grp., Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011)). "A court will grant such a motion in only three circumstances: where the party seeking reconsideration identified (1) an intervening change of controlling law; (2) the availability of new law; or (3) the need to correct a clear error or prevent manifest

injustice." <u>Zappin v Comfort</u>, 2023 US Dist LEXIS 160152, at *3-4 [SDNY Sep. 11, 2023, No. 18-CV-1693 (ALC)]; <u>citing</u> <u>Berg v. Kelly</u>, 343 F. Supp. 3d 419, 424 (S.D.N.Y. 2018) (<u>citing</u> <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust</u>, 729 F.3d 99, 104 (2d Cir. 2013)). "It is not simply an opportunity for the moving party to present 'the case under new theories' or otherwise take a 'second bite at the apple.'" <u>Zappin</u> at *3-4; citing <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012); <u>see</u> <u>also</u> <u>Svenningsen v. Ultimate Grounds Management, Inc.</u>, 2017 WL 3105871, *1 (S.D.N.Y. July 20, 2017).

"The standard for granting such a motion is strict, and the decision to grant or deny a motion for reconsideration is one committed to the discretion of the district court." <u>Zappin</u> at *3-4; <u>citing</u> <u>Salveson v. JP Morgan Chase & Co.</u>, 663 Fed.App'x. 71, 75 (2d Cir. 2016); <u>also</u> <u>citing</u> <u>Sigmon v. Goldman Sachs Mortgage Company</u>, 229 F.Supp.3d 254, 257 (S.D.N.Y. 2017). "In general, any decision to grant a motion for reconsideration is one supported by a showing of exceptional circumstances, such as controlling decisions or data that the court overlooked." <u>Zappin</u> at *3-4; citing <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (exceptional circumstances include matters "that might reasonably be expected to alter the conclusion reached by the court."); <u>Xiu Feng Li v. Hock</u>, 371 Fed. App'x 171, 175 (2d Cir. 2010).

## <u>ARGUMENT</u>

### POINT I

### THE COURT SHOULD DENY PLAINTIFF'S MOTION<br>BECAUSE PLAINTIFF RELIED UPON THE BWC FOOTAGE<br><u>WHEN DRAFTING THE FIRST AMENDED COMPLAINT</u>

Plaintiff argues that the Court erred by relying on the BWC footage when deciding to dismiss the excessive force claim. <u>See</u> Docket No. 61 at 6. In support, Plaintiff argues "there was no basis to take that video as if it were the full summary judgment record at the close of discovery."

Id. at 7.   Plaintiff also attempts to base her arguments on two assertions, albeit unsupported by the record: 1) that the BWC footage was not integral to the FAC (it was); and 2) that she did not rely on it when drafting the FAC (she did).  Id. at 11.

At the outset, these arguments fail because they do not meet the standard for a reconsideration motion as they constitute nothing more than a recycling of arguments made in opposition to Defendants' second motion to dismiss.  Simply, Plaintiff does not show that there is an intervening change of controlling law; the existence of a new law; the need to correct an error; or the need to prevent a manifest injustice.  Instead, Plaintiff concludes the Court's decision was an error, citing to the same legal principles as the Court—without distinguishing them or showing how they were misapplied—while not following their reasoning.  Plaintiff attempts to support her argument that she did not rely on the BWC to prepare the FAC by pointing to how she responded to Defendants' second motion to dismiss: "Plaintiff did not submit the footage in support of her response in opposition to the motion to dismiss,…"  See Docket No. 61 at 11.  This argument is unavailing, however, because one has nothing to do with the other.   How Plaintiff choses to respond to Defendants' motion to dismiss doesn't negate the fact that Plaintiff sought leave to amend the complaint "to incorporate facts obtained from viewing the footage." See Docket No. 33 at 1.

Notwithstanding Plaintiff's failure to meet the standard on reconsideration, these arguments fail because (a) Plaintiff relied upon the BWC footage in drafting the FAC, which was integral to her claims; and (b) the Court did not err in determining that the BWC footage does not support Plaintiff's allegations.

a. **Plaintiff relied upon the BWC footage in drafting the FAC and it was integral to her claims.**

Plaintiff argues that she did not rely upon the BWC footage in drafting the FAC. Additionally, Plaintiff argues that the BWC footage was not integral to her claims. Defendants maintain that Plaintiff admitted to relying upon the BWC footage to prepare the FAC and demonstrated that it was integral to her claims.

"When a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Cordova v Mike Bloomberg 2020, Inc., 2023 U.S. App. LEXIS 24758, at *3-4 (2d Cir. 2023); quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d. Cir. 1991). "When specific interactions give rise to claims, recordings thereof are often deemed integral to the complaint." Barkai v. Mendez, 629 F.Supp. 3d 166, 176 (S.D.N.Y. 2022). "This is particularly true where the claims at issue are brought under § 1983." Id.

Here, Plaintiff focused on the requirements provided in Rule 12(d) instead of the circumstances in which the Circuit permits courts to consider extrinsic documents when deciding motions to dismiss. Those circumstances, discussed *supra*, are present in this § 1983 case. As such, the Court need not convert Defendants' motion into a motion for summary judgment. See e.g., Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 808 F. Supp. 2d 634, 636 n.4 (S.D.N.Y. 2011) ("[B]ecause [the defendant's] unauthorized audio recording of the call, submitted in support of its motion to dismiss, is 'integral' to the complaint, I may consider both in ruling on the motion to dismiss without converting it to one for summary judgment.").

The BWC footage are integral to the complaint because they depict the interactions between Plaintiff and law enforcement at the time of the alleged incident. While Plaintiff elected not to attach the BWC footage to the FAC or incorporate it by reference, she relied heavily upon them. Indeed, Plaintiff represented to the Court when seeking leave to amend the complaint that the BWC footage would be used to prepare the FAC—in effect establishing Plaintiff's reliance on the BWC. See Docket No. 33. Those admissions are as plain as they are probative and include the following:

> [M]y office did in fact receive physical copies of BWC videos. However, the videos were never uploaded to our filing system. As a result, until this afternoon, I had no knowledge of their existence and had not viewed them. Nevertheless, from what Plaintiff has viewed thus far, <u>we believe that Plaintiff's claims are clear and viable</u>. As a result, <u>Plaintiff seeks leave to amend the complaint to incorporate facts obtained from viewing the footage</u>….
>
> Plaintiff filed a motion for leave to amend the complaint to reflect information obtained after viewing some of the BWC footage. If granted leave to amend, <u>Plaintiff's First Amended Complaint will incorporate facts obtained from viewing all of the obtained BWC footage as provided for by Defendants</u>. Should the Plaintiff be granted leave to amend, the First Amended Complaint will obviate the pending Motions because they will not relate to the operative pleading.

Id. at 1-2 (emphasis added).

These statements also show that Plaintiff not only knew about the BWC footage prior to preparing the FAC, but also received the footage, viewed it, and premised her opposition to Defendants' first motion to dismiss and on seeking leave to amend her complaint to incorporate facts obtained from viewing the footage. The importance of the BWC footage for Plaintiff did not end at opposing Defendants' motion to dismiss. For Plaintiff the footage not only served as grounds to amend the complaint but was also integral to validating her claims. Indeed, Plaintiff believed her claims were "clear and viable" after viewing the BWC footage. Id. Moreover,

Plaintiff made a record that the FAC would incorporate facts obtained from the BWC footage. Within this context, it is apparent that the BWC footage was integral and Plaintiff relied upon it to prepare the FAC.

Try as Plaintiff must, she has gone to great lengths to walk back and spin these admissions. For example, the suggestion that Plaintiff only "intended" to rely on the BWC footage but "ultimately did not rely" on the footage is a construct of semantics cut from whole cloth. See Docket No. 61 at 11. Similarly, Plaintiff's argument that the BWC footage could not be relied upon because it was blurry contradicts the representation Plaintiff made to the Court about finding her claims to be "clear and viable" after viewing the footage. Compare Docket No. 61 at 11 with Docket No. 33 at 1. Far from meritorious, these loose arguments strain credulity and highlight the specious grounds in which Plaintiff seeks reconsideration.

Additionally, Plaintiff misapplies Gersbacher v City of New York, 134 F Supp. 3d 711 (S.D.N.Y. 2015). There, the District Court found that the videos were not integral to the complaint and could not be considered on summary judgment because the plaintiff there did not rely upon it in drafting the complaint. Id. at 719. Moreover, in Gersbacher, the videos were two and three steps removed from the complaint, and the plaintiff there stated during a status conference that the videos were not utilized in drafting the complaint. Id. at 718-719. Whereas here, the interactions captured in the BWC footage is the entire incident underlying Plaintiff's claims, and Plaintiff acknowledged to relying on the footage in preparing the FAC.

Likewise, Plaintiff's reliance on Preterotti v. Lora, 2016 U.S. Dist. LEXIS 159414 (Dist. Vt. 2016) and Pluma v. City of New York, 2015 U.S. Dist. LEXIS 48134 (S.D.N.Y. 2015) is misplaced. The Courts in both Preterotti and Pluma declined to consider videos because, unlike

in this case, the plaintiffs did not rely upon the videos when preparing their complaints.  See
Preterotti at * 11; see Pluma at * 6.

   **b. The Court did not err in determining that the BWC footage does not support
   Plaintiff's allegations.**

   Plaintiff makes the argument that the Court essentially converted the motion to dismiss into
a summary judgment motion, without providing Plaintiff an opportunity to seek discovery, by
"faulting Plaintiff for submitting 'no evidence' and discounting certain allegations because 'video
evidence does not support Plaintiff's allegations.'"  Id. at 7.  Plaintiff further argues that she would
have submitted an affidavit and CCRB interviews to support her opposition.  Id. at 7-8.  Plaintiff's
arguments are flawed because the Court's consideration of the BWC footage is permitted in this
Circuit.

   The Second Circuit has permitted courts to consider documents outside of the complaint in
deciding a motion to dismiss "because plaintiff should not so easily be allowed to escape the
consequences of its own failure."  Cortec at 47 (2d. Cir. 1991).  "Where plaintiff has actual notice
of all the information in the movant's papers and has relied upon these documents in framing the
complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely
dissipated."  Id. at 48.

   Here, Plaintiff focuses her arguments on the Court's statements that "[v]ideo evidence does
not support Plaintiff's allegations" and "[t]here is no evidence that Defendants hit or kicked
Plaintiff as alleged."  See Docket No. 51.  However, the Court is permitted to consider the BWC
footage because Plaintiff relied upon it when preparing the FAC.  As such, the need to convert the
motion to dismiss to a Rule 56 motion has dissipated.  Thus, determining that the BWC footage
does not support Plaintiff's allegations was within the province of the Court.  Arguing otherwise,
as the Plaintiff does, would render the entire body of case law that permits extrinsic evidence

pointless.  It is difficult to fathom the Second Circuit establishing a rule without effect—clearly there are certain circumstances in which courts may consider extrinsic evidence when deciding motions to dismiss.

Plaintiff also misconstrues Hyman v. Abrams, 630 Fed.Appx. 40, 42 (2d Cir. 2015) by arguing the Second Circuit established a bright line rule that video "may only be used on a motion to dismiss to contradict a complaint where it renders implausible or simply contradicts allegations."  See Docket No. 61 at 1 (internal quotations omitted).  There, the Second Circuit established no such rule, but only determined that the video footage would not change its conclusion that the complaint should not be dismissed stating "the ACCF video footage does not contradict or render implausible [plaintiff's] allegations." Hyman at 42.  In any event, the Court's opinion and order is consistent with Hyman as the Court found that "[v]ideo evidence does not support Plaintiff's allegations" and "[t]here is no evidence that Defendants hit or kicked her as alleged…."  See Docket No. 51 at 8.  These findings confirm the video evidence contradicts Plaintiff's allegations.

Similarly, the authority Plaintiff cites to for the general proposition that courts should not weigh evidence when deciding a motion to dismiss is not in conflict with the catalogue of cases that permit courts to consider extrinsic evidence on motions to dismiss under certain circumstances.  This is clear from the several Second Circuit cases that either stand for or cite to the proposition that courts are permitted to consider extrinsic evidence on a motion to dismiss.

Accordingly, the Court should deny Plaintiff's motion for reconsideration because the BWC footage is integral to the FAC, and Plaintiff relied upon the footage in drafting the FAC.

**POINT II**

**THE COURT SHOULD DENY PLAINTIFF'S
MOTION BECAUSE IT ACCEPTED ALL FACTUAL
ALLEGATIONS IN THE FAC AS TRUE AND DREW
REASONABLE INFERENCES IN FAVOR OF PLAINTIFF**

Next, Plaintiff argues that the Court erred because it failed to both accept all factual allegations in the FAC as true and draw reasonable inferences in favor of Plaintiff. See Docket No. 61 at 12. In support, Plaintiff cites—for the first time—to CCRB records of substantiated charges against members of the NYPD.[2] Id. Plaintiff also argues that the BWC footage cited by the Court does not depict what the Court found, specifically the Court's reliance on the BWC footage contained in Exhibit A to the motion to dismiss. Id. at 14.

Plaintiff's arguments are mired by the same lack of support and legal foundation discussed in opposition to Plaintiff's argument concerning the Court's error in relying on BWC footage. Plaintiff essentially recycled the same argument here as well. It is worth noting that the Court stated that it accepted Plaintiff's allegations as true and drew all reasonable inferences in Plaintiff's favor. See Docket No. 51 at 4. That the Court considered evidence that in effect renders Plaintiff's allegations meritless does not mean the Court neglected to accept Plaintiff's allegations as true or failed to draw inferences in Plaintiff's favor. See Hyman at 42.

Plaintiff's arguments uncover no error that would clearly effect the treatment of Plaintiff's claims in a different way. There was no error in the Court's application of the BWC footage to Plaintiff's claims. Any discrepancy (there are none) contained within the footage that Plaintiff points to is superficial. For example, Plaintiff argues she complied with NYPD directives because

---

[2] For efficiency, Defendants will address Plaintiff's arguments about the CCRB charges in Point III.

a directive not to link arms and warnings of impending arrests were not heard on the BWC footage. See Docket No. 61 at 14.  In making this argument, Plaintiff cites to no legal authority that sheds light on how these purported facts would effect the reasonableness of the force Defendants used during the arrest of Plaintiff.  Rather, Plaintiff invents a new standard that requires police to have an "unqualified and totally unquestionable right" to handcuff Plaintiff.

Additionally, Plaintiff's argument fails to address the excessive force claims (the hitting, kicking, and stripping claims) she seeks to reconsider in any substantive or credible way.  In fact, the BWC footage that Plaintiff cites to (Defendants' Exhibits A and B) buttresses the Court's decision to dismiss the FAC, and Defendants' contention that Plaintiff's claims are meritless.  See Docket No. 61 at 14-16.  Specifically, the portions of Exhibit A to Defendants' motion to dismiss that Plaintiff cites to clearly shows Plaintiff interlocking her arms, refusing instructions to leave the roadway, standing still, and being placed under arrest by officers.  See Docket No. 41-1, Exhibit A at 14:40 – 17:36.  Additionally, the parts of Exhibit B to Defendants' motion to dismiss that Plaintiff cites clearly show Plaintiff flailing her arms during her arrest and a law enforcement officer instructing her not to resist.  See Docket No. 41-1, Exhibit B at 15:24-15:26.  Furthermore, the parts of Exhibits B and D that Plaintiff cites to do not show law enforcement officers removing or unfastening Plaintiff's clothing, or stripping her as alleged in the FAC.  See Docket No. 41-1, Exhibit B at 15:32-16:35 and Exhibit D at 4:50-4:57.

With respect to Plaintiff's argument about handcuffing, we note that it is beyond the limited scope of the relief Plaintiff seeks.  See Docket No. 61 at 1.  Nowhere in Plaintiff's motion does she seek reconsideration of the opinion and order based on excessive force for handcuffing. Nevertheless, Plaintiff's argument that the "Court overstepped its authority on a motion to dismiss in finding that Plaintiff suffered only temporary discomfort from the tight handcuffing" is

unsupported by the case law.  See Docket No. 61 at 16.  Plaintiff's claim fails because she does

not allege in the FAC that her injuries were sufficiently severe.  See Johnson v. City of New York,

2020 U.S. Dist. LEXIS 102870 *8-9 (S.D.N.Y. 2020).   Indeed, Plaintiff only alleges that the

handcuffing caused numbness and loss of sensation, not some injury beyond temporary

discomfort.  See Mittelman v. City of Rockland, 2013 U.S. Dist. LEXIS 46382 * 13 (S.D.N.Y.

2013).  Plaintiff also does not allege that the handcuffing caused her pain lasting for an extended

period of time, or that it was more than *de minimis*.  See McGarrell v. Arias, 2019 U.S. Dist. LEXIS

34163 *4 (S.D.N.Y. 2019).  As such, the Court was correct in dismissing Plaintiff's excessive

force claim based on handcuffing.

Concerning qualified immunity, Plaintiff's argument fails to meet the standard for

reconsideration.  Plaintiff argues that the Court's granting of qualified immunity was improper

because it was based on an analysis of the BWC footage.  As discussed *infra*, the Court was correct

in considering the BWC footage.  In addition, Plaintiff's argument that the BWC footage does not

show pepper spray or Plaintiff refusing to follow instructions is belied by the footage.  See Docket

No. 41-1, Exhibit A at 14:40 – 17:36.  Directions to move back and off the roadway can be heard

throughout the incident.  Id.  Plaintiff interlocked arms with other demonstrators and did not leave.

Id. at 16:55 – 17:28.  The deployment of pepper spray was also captured in the footage.  Id. at

17:18-17:33.  Additionally, Plaintiff was shown to be standing still on the roadway.  Id. at 17:33.

Moreover, Plaintiff's questioning of the Court's reliance on Brown v. City of New York,

862 F.3d 182 (2d Cir. 2017) is misplaced as the Court cited to Brown for the general proposition

that pepper spray can be deployed against noncompliant persons during an arrest.  The fact Brown

was decided on a motion for summary judgment and not a motion to dismiss bears no weight on

that proposition of law.  It is a procedural distinction that has no significance to granting qualified

immunity in circumstances where pepper spray is deployed against noncompliant people during an arrest.

Similarly, Plaintiff's reliance on <u>Hyman</u> is misplaced as the Court's reasoning here is consistent with that case. There, the Second Circuit found that qualified immunity should not have been granted because the video footage "does not contradict or render implausible" the plaintiff's allegations. <u>Id</u>. at 42. In this case, the Court found that Defendants' use of force was reasonable stating that the "[v]ideo evidence does not support Plaintiff's allegations." <u>See</u> Docket No. 51 at 8.

Accordingly, Plaintiff's motion should be denied in its entirety because the Court accepted all factual allegations as true and drew reasonable inferences in favor of Plaintiff.

**POINT III**

**THE COURT SHOULD DENY PLAINTIFF'S MOTION
BECAUSE THE CCRB CHARGES ARE INCONSEQUENTIAL TO
<u>PLAINTIFF'S CLAIMS AND SUPPORT DISMISSAL OF THE FAC</u>**

Plaintiff makes the argument that reconsideration is appropriate because newly discovered evidence, in the form of substantiated CCRB charges, conflicts with the Court's interpretation of the evidence and demonstrates that dismissal of the FAC was inappropriate. <u>See</u> Docket No. 61 at 17-19.

This argument is flawed and is a red-herring. The substantiated CCRB charges do not pertain to Plaintiff's motion for reconsideration of the Court's decision. Indeed, the substantiated charges for "Sexual Miscon (Humiliation: fail to cover)" that Plaintiff relies upon, have no effect on the Court's prior decision, and support Defendants' argument that Plaintiff is only attempting to present new theories and take a second bite of the apple.

The substantiated charges for "Sexual Miscon (Humiliation: fail to cover)" are inapplicable to Plaintiff's motion for reconsideration since her allegation in the FAC is that she was intentionally stripped naked.  <u>See</u> Docket No. 35-1 at ¶¶ 71, 73, 91, 98, 103, 153, and 154.  The Court addressed these allegations finding that "the footage demonstrates Defendants did not intentionally remove Plaintiff's clothing at any time." <u>See</u> Docket No. 51 at 8.

Under these circumstances, Plaintiff strays dangerously close to the realm of frivolous conduct by relying on these CCRB documents.  They firmly establish a failure by Plaintiff to meet the standard for making a reconsideration motion, and clearly suggest that Plaintiff is either attempting to confuse the Court or impermissibly plead her claims for a third time.

With respect to Plaintiff's request for leave to amend, "a plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." <u>Arazi v. Cohen Bros. Realty Corp.</u>, 2022 U.S. Dist. LEXIS 56549 at * 51 (S.D.N.Y. 2022).  Given that Plaintiff has failed to prove the merits of her reconsideration motion, her request for leave to amend should be denied.  <u>Id</u>. ("The Court denies Plaintiffs leave to amend their complaint because further amendments would be futile.")  Amending would be futile because the BWC footage is an objective view of the Plaintiff's interaction with law enforcement officers and is inconsistent with Plaintiff's allegations.  There is no amendment Plaintiff could make to cure the deficiencies in her complaint or give her a viable cause of action.

## <u>CONCLUSION</u>

For the proceeding reasons, Defendants respectfully request the Court deny Plaintiff's motion to reconsider the Court's opinion and order dated August 28, 2023.

Dated: November 2, 2023
       New York, New York

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the City of New York


/s/ Peter Scutero
100 Church Street
New York, New York 10007
(212) 356-2410
pscutero@law.nyc.gov
*Counsel for the Defendants*