UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAILA BEACH, <br><br>　　　　　　Plaintiff, <br><br>vs. <br><br>THE CITY OF NEW YORK, SERGEANT GERARD DOWLING (TAX ID 915640), SERGEANT ROBERTO DOMINGUEZ (TAX ID 938384) and POLICE OFFICERS JOHN DOES #1-10, in their individual and official capacities, <br><br>　　　　　　Defendants. | 21-cv-6737 (ALC) (SLC) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RECONSIDERATION OF OPINION
AND ORDER DISMISSING EXCESSIVE FORCE CLAIM**

The Aboushi Law Firm, PLLC
By: Tahanie A. Aboushi
Attorneys for Plaintiff
1441 Broadway, Suite 5036
New York, New York 10018
Telephone: (212) 391-8500
Facsimile: (212) 391-8508
Tahanie@aboushi.com
November 10, 2023

i

Plaintiff, Maila Beach, submits this Reply Memorandum of Law in further support of her motion to reconsider this Court's August 28, 2023 Opinion & Order (ECF #51) dismissing with prejudice the First Cause of Action in the First Amended Complaint ("FAC") (ECF #35-1) for excessive force under 42 U.S.C. § 1983 and New York state law on substantive and qualified immunity grounds.

**PRELIMINARY STATEMENT**

Defendants' opposition to the motion does not get at the heart of why the Court should reconsider its decision — far from it. At the most basic level, Defendants' opposition falls into a classic logical fallacy: It conflates an absence of evidence for evidence of absence. Indeed, that is explicitly the leap when Defendants say:

> the Court's opinion and order is consistent with *Hyman* as the Court found that "[v]ideo **evidence does not support** Plaintiff's allegations" and "[*t*]here is no evidence that Defendants hit or kicked her as alleged…." These findings **confirm the video evidence contradicts** Plaintiff's allegations.

(ECF #64 at 10 "DMOL") (emphasis added). To get from the Court's more modest "evidence does not support" to the required standard that "evidence contradicts Plaintiff's allegations," Defendants ***must*** appeal to ignorance. *See, generally, e.g.,* Carl Sagan, The Demon Haunted World (1995).

Beyond that, Defendants fundamentally fail to grapple with the significance of the fact that the ***City itself*** found officers responsible for the same conduct the Court claimed was implausible. That finding, standing alone, is enough to cross the low bar of plausibility pleading on intent. Defendants' saber-rattling over sanctions does not cover up the basic problem: the Court found it implausible that officers had an ill-motive, and therefore dismissed the claims for wrongful sexual conduct (pled as a kind of excessive force); but the City itself found the conduct sufficiently

1

intended to recommend discipline.  Yet, Defendants do not address that conundrum, and in doing so, waive any opposition.

For these reasons, and those below, the Court should grant the motion.

I. Absence of Evidence is Not Evidence of Absence, and Therefore the Court Was Wrong to Disregard Well-Pled Facts.

In the opening papers (ECF #61) Plaintiff argued that the Court impermissibly held Plaintiff to a summary judgment standard.  Defendants do not seem to fundamentally disagree — indeed, they scold her for "[her] own failure" in not submitting evidence to oppose a motion to dismiss. They claim, essentially, that once extrinsic evidence comes into the record at all, the Court must require evidence of every pled fact.  But that is not the standard on a motion to dismiss, and Defendants fail to cite even a single case where a court disregarded well-pled facts in the absence of **blatant and clear contradictory video**.  Defendants do not once argue such video is what exists in this record.[1]

Instead, Defendants' argument that the Court was permitted to disregard the well-pled facts in the complaint runs something like this:

- "the Court [wa]s permitted to consider the BWC footage [Defendants submitted on the motion] because Plaintiff relied upon it when preparing the FAC[2]" (DMOL at 9);

- In viewing that video, "the Court found that 'video evidence ***does not support*** Plaintiff's allegations" and "***there is no evidence*** that Defendants hit or kicked her as alleged….'" (*Id.* at 10 (alterations adopted; emphasis added));

- The Court's finding that evidence "does not support" those allegations is somehow no different than a finding that "the video evidence ***contradicts*** Plaintiff's allegations" (DMOL at 10 (emphasis added));

---

[1] Put differently, Defendants respond to Plaintiff's argument that the Court should not have considered the video at all.  But they fail entirely to respond to the argument that the Court applied the wrong **standard** once it was looking at those videos.
[2] More on this issue in Point II, below.

2

That final jump — from "does not support" to "contradicts" — is where Defendants' argument goes wrong. This is not some subtle point of doctrine and logic that Defendants have overlooked; indeed, it was Plaintiff's entire argument:

> The Court's finding that Plaintiff resisted arrest by moving her body and arms when Defendant officers took her to the ground to arrest her, at this procedural stage, would require the Court to find not just that there is support for that claim in the video, but that the video itself "render[s] implausible" and "contradicts" anything else.

(ECF #61 at 15 "PMOL"), *quoting Hyman v. Abrams*, 630 F. App'x 40 (2d Cir. 2015); *see, also, e.g., id.* at 12-13 ("it is simply not a Plaintiff's burden on a motion to dismiss to present 'evidence that Defendants' did what the complaint alleges they did'") (*quoting* the Order at 7-8). In fact, putting it in bold, Plaintiff said, "such a finding [that the video contradicts the allegations is] not possible from the video" and noted and indeed, that "it does not appear the Court made *that* finding." *Id.* at 15 (emphasis in original). Yet, Defendants provide no explanation for how they think the Court could have, or did, make a finding of contradiction: their argument is explicitly that an absence of evidence *is conclusive evidence of absence.* And Defendants' treatment of *Hyman* on this point is essentially to say that the Circuit didn't really *mean it* when it required use of video must "render implausible" the written allegations of the complaint if the Court intends to disregard those allegations (as the Court did here).

Defendants' absence of evidence argument does not work: to say otherwise, Defendants, as one district court put it in a different context, have "divined contradiction out of thin air, interpreting an absence of evidence as evidence of absence." *Virgen C. v. Berryhill*, No. 16-480 WES, 2018 U.S. Dist. LEXIS 168663, at *6 (D.R.I. Sep. 30, 2018). That forbidden alchemy is unambiguously what must happen between bullets two and three above for Defendants' argument

3

to work. Courts across many contexts repeatedly explain that "absence of evidence is not evidence of absence" — "[o]r, more formally, 'P ⊃ Q' does not mean '¬P ⊃ ¬Q'". *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 406 U.S. App. D.C. 371, 381 n.6 (D.C. Cir. 2013). And indeed, perhaps if, at summary judgment, Plaintiff has no evidence at all of her version of events, the story will be different. But this was a motion to dismiss. And a motion to dismiss is, as courts constantly reiterate, "not the time for asserting that Plaintiff's story is not true, or that things did not happen as Plaintiff described them, or for establishing that the police officers did nothing wrong." *Marlin v City of NY*, 2016 US Dist LEXIS 122426, at *4 (SDNY Sep. 7, 2016) (noting the "City['s …] lamentable habit of confusing" that standard, at least when qualified immunity is involved).

Likewise, Defendants' claim that "[i]t is difficult to fathom the Second Circuit establishing a rule without effect—clearly there are certain circumstances in which courts may consider extrinsic evidence when deciding motions to dismiss" runs headlong into the same fallacy. DMOL at 9-10. Of course, there are such circumstances — and that rule certainly did not start with video. Consider, for example, the Second Circuit's use of judicial notice on a motion to dismiss in *Kramer v Time Warner, Inc.*, 937 F2d 767, 774 (2d Cir. 1991). There, a complaint quoted public documents claiming they failed to comply with certain law — but did so misleadingly, omitting that they ***did*** include what was required — and the Circuit found it was correct to take notice of the full documents. This was not absence of evidence as evidence of absence: it was a clear, definitive contradiction of the allegation. So too with the cases Defendants cite. Indeed, one case Defendants cite involves video, and where the video did not directly show anything, the Court deferred to discovery — just as it should do here. *Barkai v. Mendez,* 629 F. Supp. 3d 166, 196 (S.D.N.Y. 2022).

4

Finally, given Defendants' papers, resolution of this issue largely dispenses with the need for the Court to get into the weeds of the rest of the motion. That is because Defendants fail to seriously engage with the actual argument Plaintiff made. Instead, Defendants inexplicably — but directly — claim that evidence that "does not support" an allegation is exactly the same thing as evidence that "contradicts" it. DMOL at 10. Since Plaintiff's moving papers unambiguously raised this issue (call it the "evidence of absence issue"), and Defendants failed to respond to it in any way, opposition is waived. *See, e.g., Gallagher v NY State Bd. of Elections*, 477 F Supp 3d 19, 48, n. 4 (SDNY 2020); *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225, 2012 U.S. Dist. LEXIS 141449, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (recognizing that a party "concedes through silence" to arguments by its opponent that it fails to address); *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 392-93 & n.116 (S.D.N.Y. 2002) (considering an argument not addressed in opposition brief to be waived). With that waiver, the Court can and should grant the motion without reaching the thornier questions of what exactly was integral to the complaint or how to handle the City's double speak over CCRB substantiation of the very claims that the Court dismissed.

II.   The Body Worn Camera Footage Was Neither Integral to Plaintiffs' Complaint Nor Did She Solely Rely on it in Drafting The Complaint.

While, in light of Point I, the Court need not reach this argument, Defendants are wrong about the BWC's status vis-à-vis the actual complaint. Of the thirteen BWC videos submitted to Plaintiff in response to her FOIL request, ten were completely blurred rendering its content indiscernible. Of the FOIL BWC videos that were discernible, majority of the videos were blurred and none of them captured the moment when Plaintiff was assaulted by NYPD Police officers. (ECF #44 Aboushi Dec. Exhibit 7 at i, j and m.) Indeed, in the initial complaint, prior to viewing

5

the FOIL BWC, Plaintiff alleged that defendants "unlawfully detained, assaulted and stripped Plaintiff nearly naked". (ECF #3 at ¶11.) Plaintiff further alleged that "defendant Officers threw Plaintiff to the ground and attacked Plaintiff with their arms, hands and batons and beat Plaintiff about her head and body. (*Id.* at ¶13.) Plaintiff alleged that "while assaulting Plaintiff, Defendant Officers, including Defendant Dowling, pulled Plaintiff's shirt over her head exposing her stomach and bra" (*Id.* at ¶15.) Plaintiff alleged "As Plaintiff was walking across the bridge with her shirt lifted over her head, Defendant Officers then pulled her pants down to her ankles exposing Plaintiff's buttocks and genitals." (*Id*. at ¶17.) Plaintiff also alleged that "Immediately after beating Plaintiff, they restrained her using excessively tightened zip ties. Defendants deliberately tightened the zip ties to the point where Plaintiff lost feelings in her fingers. She asked the officers to loosen the zip ties and they refused." (*Id.* at ¶14.) Plaintiff maintained all of these allegations in the First Amended Complaint. (ECF #35 at ¶¶1, 21, 22, 23, 25 and 26.) Critically, the source of said allegations was Plaintiff herself and not BWC — and therefore, that they cannot be seen on the BWC is neither here nor there.

Defendants mistakenly rely on *Cordova v. Mike Bloomberg 2020, Inc., No*. 22-1023, 2023 WL 6119448 (2d Cir. Sept. 19, 2023). In *Cordova* the Plaintiffs alleged that Defendants recruited them to the job by promising employment through November 2020, but reneged on that promise when the Campaign dismissed Plaintiffs shortly after Bloomberg withdrew from the race in March of 2020. *Id* at 1. The district court considered offer letters and the employee handbook (including the accompanying acknowledgement forms recognizing receipt), both of which Plaintiffs had signed but did not include with their complaint and because Plaintiffs' complaint was that Defendants were to guarantee their employment, said documents were integral to the complaint. *Id.* at 2*.* Thus, only '[W]hen a plaintiff chooses not to attach to the complaint or incorporate by

6

reference a [document] **upon which it solely relies** and which is **integral to the complaint**,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Id.* In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of plaintiff's claim—was not attached to the complaint. *Cordova v. Mike Bloomberg 2020, Inc.*, No. 22-1023, 2023 WL 6119448, at *2 (2d Cir. Sept. 19, 2023) *(quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers,* 282 F.3d at 152–53). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.* DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). Indeed, the subject matter of the BWC videos considered by the court is in dispute as Defendants completely deny assaulting Plaintiff, pulling her shirt over her head and pulling her pants down. Therefore, the court erred in considering BWC videos.

While Defendants attempt to disregard *Hyman v. Abrams, 630 F. App'x 40, 42 (2d Cir. 2015),* the court there based its decision to not consider footage of the incident because "the ACCF

7

video footage does not contradict or render implausible Hyman's allegations". The Court here did not find that the videos contradicted Plaintiffs claims or that it rendered her claims implausible. Rather, the Court held that "there is no evidence that Defendants' hit or kicked her as alleged". (*See* ECF #51 at 8.) The Court here erred in considering the BWC because it took all of the BWC produced by Defendants in support of their motion as the totality of the events and therefore, anything not captured by the BWC essentially meant that it never happened. The Court further erred in concluding that Defendants did not intentionally pull Plaintiff's pants down while Defendants denied being involved with the removal of her pants and instead claimed "Plaintiff's pants are seen starting to inadvertently fall down on their own and no officer is seen pulling her pants down or touching them in any fashion. (*See* ECF #41- Def. MOL at 4.) Thus, the BWC did not contradict Plaintiff's claims and at best was evidence of material issues of fact in dispute warranting discovery.

   III.   The CCRB's Findings, if Plaintiff's Allegations Were Not Already There, Nudge Allegations of Intent Across the Line from Conceivable to Plausible.

Defendants do not meaningfully oppose Plaintiff's request for the Court to consider the CCRB findings of "Sexual Misc[onduct]" and fail to contest the elements required for relief from a judgment on the grounds of newly discovered evidence. Instead, Defendants simply throw allegations of counsel misconduct around.

In any event, Defendants' argument is not entirely clear.  It seems Defendants are arguing exclusively about whether the newly discovered evidence would have changed the outcome on the motion to dismiss, since (Defendants say) the Court "addressed these allegations" (Def. MOL.at 15).  But of course, the Court did not.  The Court addressed what was in the complaint, true, but it demanded evidence from Plaintiff.  And Plaintiff did not have that evidence, since it was a motion

8

to dismiss. Indeed, the emergence of the CCRB report as evidence of Defendants' intent is a useful illustration of the limits of the absence of evidence approach Defendants advocate for video. The report itself, as well as the interviews and investigation that lead to it, must show some degree of intent — otherwise the CCRB would have marked the case unsubstantiated.

In that regard, Defendants' argument about the significance of the CCRB report is fundamentally misguided. The significance is that it shows *some* evidence that Defendants had malicious intent in both pulling down Plaintiff's pants initially, and in leaving her naked for a long period as she was being arrested. Yet, Defendants argue that the CCRB substantiation for "Sexual Miscon (Humiliation: fail to cover) has no bearing on Defendants' intent simply because Plaintiff's claim is that she was intentionally stripped naked. (Def. MOL at 15.) First, that shrinks Plaintiff's claim: Plaintiff also demanded that her pants be pulled back up, and the complaint seeks redress for that misconduct too. (ECF #35-1 at ¶25.) And on that point, Defendants *intentionally* failing to pull her pants back up was presumably the basis for the substantiated charge of failing to cover. But what Defendants never address is that whatever statement and evidence supported *that* intent, i.e., the intent to leave Plaintiff naked and "humiliate[ed]" in the street as the CCRB framed it, could be read — by a reasonable jury — to infer the initial intent to strip her naked.

At this stage, as the motion noted — and Defendants do not contest — all that is necessary is to plead facts that nudge a claim across the line from conceivable to plausible. And if the City itself has said officers intentionally refused to pull Plaintiff's pants back up — that they engaged in "Sexual Miscon[duct]" that was aimed at "Humiliation," it is plausible Plaintiff has stated a claim that that whole suite of conduct was illegal and tortious.

Put simply, Defendants removing Plaintiff's clothing —- including refusing to pull them back up — is the crux of a material claim made by Plaintiff but denied by Defendants. (*See* ECF

9

#41- Def. MOL at 4.) And on the motion to dismiss (again, relying on the video as if this were a summary judgment motion—which it should not have done for the reasons in the moving papers), the Court concluded that while Defendants *did* pull Plaintiff's pants down, she did not sufficiently allege that action was intentional. Here again, Defendants do not contest the court's interpretation that Defendants pulled Plaintiff's pants down. Likewise, Defendants offer no reason to discredit the CCRB's conclusion that Defendants engaged in *some* misconduct related to Plaintiff being forced to be naked in public by Defendants. As a simple matter of common sense, this newly discovered evidence is substantial as the CCRB's investigation would have to have included exploration of how Plaintiff's pants were pulled down, by whom, and why they were not pulled back up. Ultimately, the CCRB recommended serious discipline against Defendants because across all of those facts, Defendants intentionally failed to cover her. Plaintiff's claim here is the same: Defendants took her pants off, and then refused to cover her. That was an impermissible use of force and abuse of her status an arrestee.

Any further questions about exactly what each Defendant was thinking when they pulled Plaintiff's pants down are best left for discovery and should not be reached at the Motion to Dismiss stage.

## **CONCLUSION**

Based upon the foregoing, as well as in the arguments set forth in Plaintiff's Memorandum of Law in Support of this motion, Plaintiff respectfully requests that the Court grant her motion for reconsideration and, upon reconsideration, reinstate the excessive force claim set forth in the First Cause of Action of the FAC or permit Plaintiff to file a Second Amended Complaint that incorporates the CCRB's findings.

Dated: November 10, 2023
New York, New York

Respectfully submitted,

THE ABOUSHI LAW FIRM, PLLC

_____/s/_____
By: Tahanie A. Aboushi
1441 Broadway, Fifth Floor
New York, New York 10018
Telephone: (212) 391-8500
Email: Tahanie@aboushi.com